# EXHIBIT A

Case 1:20-cv-03191-MKB-PK Document 34-4 Filed 12/03/21 Page 2 of 18 PageID #: 148

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

--------------------------------------------------------------------X

FRED LEE and ANN LEE,

        Plaintiffs,

   -against-

UNION MUTUAL FIRE INSURANCE COMPANY,

        Defendant.

--------------------------------------------------------------------X

Index No.

Date Filed:

**SUMMONS**

Plaintiff(s) designate QUEENS County. The basis of the venue designated is residence of plaintiff(s).

Plaintiff(s) address:
45-54 193rd Street
Flushing, New York 11358

**TO THE ABOVE-NAMED DEFENDANT(S):**

  **YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiff(s) attorney an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Great Neck, New York
   June 5, 2020

        Yours, etc.

        **GREENBLATT & AGULNICK, P.C.**,

        By: _____
         Scott E. Agulnick, Esq.
        Attorney for Plaintiff(s)
        **FRED LEE and ANN LEE**
        55 Northern Boulevard, Suite 302
        Great Neck, New York 11021
        Tel:  (718) 352- 4800
        Fax: (718) 732- 2110

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 3 of 18 PageID #: 149

Defendant's Address:

UNION MUTUAL FIRE INSURANCE COMPANY
P.O. Box 158
Montpelier, VT 05601

Case 1:20-cv-03191-MKB-PK Document 34-4 Filed 12/03/21 Page 4 of 18 PageID #: 150

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------X
FRED LEE and ANN LEE,

                                       Index No.

                 Plaintiffs,

           -against-                     **VERIFIED COMPLAINT**

UNION MUTUAL FIRE INSURANCE COMPANY,

                                  Defendant.
-------------------------------------------------------------------X

         Plaintiff(s), **FRED LEE and ANN LEE**, by their attorneys, **GREENBLATT &**

**AGULNICK, P.C.,** for their Verified Complaint against the Defendant UNION MUTUAL FIRE

INSURANCE COMPANY, alleges as follows:

         1.       Plaintiffs FRED and ANN LEE are husband and wife and residents of the State of

New York with a residence located at 45-54 193rd Street, Flushing, New York in the County of

Queens**.**

         2.       That Defendant UNION MUTUAL FIRE INSURANCE COMPANY (hereinafter

referred to as "UNION" or "Insurance Company") is a corporation duly organized and existing

under the laws of the State of Vermont with its principle offices for the conduct of business located

at P.O. Box 158, Montpelier, Vermont 05601.

         3.       UNION, its subsidiary, broker and/or agent is an insurance company licensed,

admitted, engaging in, and/or authorized to engage in the business of liability and casualty

insurance within the State of New York, with offices for the transaction of business located within

the State of New York.

         4.       At all times hereinafter alleged, Plaintiffs owned and had an insurable interest the

real property commonly referred to as 39-11 27th Street, Long Island City, New York in the County

Case 1:20-cv-03191-MKB-PK Document 34-4 Filed 12/03/21 Page 5 of 18 PageID #: 151

of Queens and State of New York (hereinafter referred to as the "Property").

5.      At all times hereinafter alleged, Plaintiffs owned and/or had an insurable interest in the building, contents, fixtures, furniture, and completed additions located at the Property.

6.      That UNION, its subsidiary, and/or agent, for good and valuable consideration and a premium paid, issued and/or reissued to Plaintiff a Commercial insurance policy, including endorsements and amendments thereto which became a part of said policy, bearing the policy number 314PK-49300-03 (the "Policy"), whereby it insured the Property against all risks of loss to certain specified perils in the limits contained therein, including, *inter alia,* physical loss from fire damage.  The policy was signed by the authorized agents of the Defendant, its subsidiary, and/or agent and in effect on the date of the Loss.

7.      Pursuant to the policy, the Defendant UNION, its subsidiary, and/or agent agreed to insure the Plaintiffs for a term of one (1) year, and in effect on March 2, 2020, against loss of property caused by *inter alia* physical loss from fire damage. The Defendant, its subsidiary, and/or agent, during the policy term, agreed to indemnify the Plaintiffs against loss or damage sustained by *inter alia* physical loss from fire damage.

8.      On or about March 2, 2020, while the insurance policy was in full force and effect, a fire in the second floor occurred which caused, resulted in extensive damages to building, improvements and contents therein.

9.      By reason of the above-mentioned occurrence, Plaintiffs sustained physical loss to the Property, in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00).

10.     The Plaintiffs notified the Defendant insurance company, its subsidiary, its employees or agents of the fire damage and resulting damage at the aforementioned property and of the loss sustained thereby, as soon as was practicable after the loss.

11.     The Plaintiffs have submitted to the Insurance Company's requests for a complete examination of all the facts and circumstances surrounding the loss, to the extent that such was requested by Defendant.

12.     That Plaintiffs have satisfied all conditions precedent to the instant suit.

13.     At all times mentioned, the Plaintiffs have not obtained any other insurance upon the described property.

14.     In response to the Loss and insurance claim, Insurance Company has wrongfully denied coverage, refused to make payment and rescinded the commercial policy in bad faith, by way of letter dated May 19, 2020 (the "Denial Letter"), a copy of which is annexed hereto and incorporated by reference as EXHIBIT A.

15.     That the Denial Letter is predicated upon conclusory and unsupported assertions of misrepresentation by the insureds as to the number of "apartment units" at the insured location.

16.     That the subject location was properly described as having two apartment units.

17.     The Plaintiffs made no such material misrepresentations as the Subject Property contains only two dwelling units, apartments, or units, regardless of the verbiage utilized.

18.     That the term "apartment unit" is undefined in the policy and subject to multiple interpretations and thus ambiguous.

19.     That Defendant's description of the "full basement apartment" is inaccurate and misleading, as such a description is belied by the black letter laws and regulations in the City of New York.

20.     That the space in the basement is not as a matter of law an "apartment unit".

21.     That the basement was never intended or permitted for occupancy by the Plaintiffs, nor was the basement ever occupied by any tenant, guest, or otherwise.

22.     That the space in the basement has never been used as a dwelling or apartment, nor does the basement legally constitute either a dwelling, apartment, or unit.

23.     That the space in the basement is not legally habitable as an apartment, dwelling, unit.

24.     That no room therein is legally habitable as a "bedroom", nor does it qualify as a "bedroom" under the law.

25.     That the basement space contains no legal kitchen or kitchenette, used for cooking or otherwise.

26.     That the basement space contains no legal living room.

27.     That §27–2004 of the Housing Maintenance Code of the City of New York sets forth:

> Definitions:
> *Apartment shall mean one or more living rooms, arranged to be occupied as a unit separate from all other rooms within a dwelling, with lawful sanitary facilities and a **lawful kitchen or kitchenette** for the exclusive use of the family residing in such unit.*

28.     That the basement space did not have a lawful kitchen or kitchenette.

29.     That the basement had no cooking facilities.

30.     That the basement contained no refrigerator.

31.     That the basement contained no stove.

32.     That the basement contained no oven.

33.     That the basement contained no microwave.

34.     That the basement contained no cooking gas connection.

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 8 of 18 PageID #: 154

35. That the basement contained no exterior exhaust or ventilation or "kitchen" window.

36. That further, for example, §27–2087 states:

*Occupancy of cellars and basements in one- and two-family dwellings.*

*a. Cellar occupancy:*

*No room in the cellar of a one- or two-family dwelling shall be rented and no member of the family or families occupying the dwelling shall use such room for sleeping, eating or cooking purposes, except that a secondary kitchen for accessory cooking may be located in the cellar.*
*b. Use of basement by occupants of the dwelling:*

*A room in the basement of a one- or two-family dwelling may be occupied for living purposes by members of the family or families in conjunction with their occupancy of the dwelling if the following conditions are met:*

*(1) Such room complies with all of the requirements of this code for rooms which are not located in the cellar or basement; except that the minimum ceiling height required in one family dwellings shall be seven feet.*

*(2) Whenever the department determines that the subsoil conditions on the lot so require, the basement or other lowest floor and all exterior walls as high as the ground level shall be dampproofed and waterproofed.*

37. That no room in the basement space at the insured location was permitted to be rented or occupied for sleeping, eating, or cooking purposes, nor was the basement space used or same.

38. That the presence of cabinets or a sink makes not an "apartment unit", as many basements contain sinks.

39. That the presence of cabinets or a sink makes not an "apartment unit" as the law is clear that a secondary kitchen may be located in the basement.

40. That the basement space does not comply with the requirements of the code for rooms which are not located in the basement.

INDEX NO. 706947/2020
RECEIVED NYSCEF: 06/08/2020
Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 9 of 18 PageID #: 155

41.     That the basement space does not contain windows in compliance with the law which is a condition precedent to occupancy or habitability, and does not comply with natural light requirements, or provide for egress.

42.     That the subject premises has only two electric meters.

43.     At all relevant times herein, the basement space was used for storage at all times.

44.     That the basement space was as close to an "apartment" as a table is to a chair, in that while they both have four legs and a platform, only one may be acceptably used for sitting, and only one may be properly referred to as a chair.

45.     That the basement was described only as a "finished basement" in the listing when purchased and has always been used solely as a finished basement by the Plaintiffs.

46.     That a finished basement is not an apartment unit, but rather a finished basement.

47.     That the instant claim should have been a routine and covered claim, but for the pattern and practice of the Insurance Company and its agents to first deny claims, regardless of the specious and incredulous nature of the denials and attempted rescission.

48.     That Plaintiffs reject the Defendant's attempt to rescind and have not cashed the premium check tendered.

49.     That furthermore, upon information and belief, Defendant was aware of the physical condition of the house and the basement at or about the time the Policy was issued as a result of an inspection of the Property.

50.     That Insurance Company has failed to and/or refused to indemnify the Plaintiffs for their total loss in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00), although a demand has been made.

Case 1:20-cv-03191-MKB-PK Document 34-4 Filed 12/03/21 Page 10 of 18 PageID #: 156

51.     By reason of Insurance Company's contractual undertaking to Plaintiffs pursuant to the Policy to properly evaluate and pay claims thereunder to the extent of Plaintiffs' loss up to the limits prescribed by the Policy, Insurance Company owed and continues to owe Plaintiffs the duties of good faith and fair dealing in connection with the parties' contractual relationship.

52.     In accordance with the aforesaid duties of good faith and fair dealing, Insurance Company was and is prohibited from undertaking any act which would have the effect of injuring or destroying Plaintiffs' rights deriving from their contractual relationship with Insurance Company under the Policy.

53.     By failing to pay Plaintiffs under the Policy to the full extent of Plaintiffs' loss up to the limits of the Policy, despite legal precedent, statutory authority, and/or contractual obligations, and by citing illogical, factually inaccurate, unsupported, and conclusory grounds for denial, by neglecting a proper investigation of the claim, by retaining and relying upon an outside claims adjuster with little interest or inclination to properly assess and adjust claims, by wrongfully rescinding the commercial policy, Insurance Company acted in bad faith and breached the duties of good faith and fair dealing owed to Plaintiffs.

54.     Furthermore, Insurance Company, and its agents, servants and/or employees, are governed by the regulations promulgated by the Superintendent of Insurance of the New York State Insurance Department as set forth in 11 NYCRR § 216.

55.     The New York Insurance Law prohibits and/or requires certain actions by insurers, their agents, and representatives and conduct by insurers, their agents and representatives; deviating from the following is deemed unfair claim settlement practice thereunder:

        (a) Insurers may not engage in failing to acknowledge with reasonable promptness pertinent communications as to claims arising under their policies.

(b) Insurers may not fail to adopt and implement reasonable standards for the prompt investigation of claims arising under their policies.

(c) Insurers may not fail to attempt in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear.

(d) Insurers may not compel policyholders to institute suits to recover amounts due under their policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

56. Plaintiffs have duly demanded payment of their loss under the Policy and have submitted the supporting proofs of loss, to the extent that same was demanded.

57. Insurance Company's actions toward Plaintiffs are part of a pattern and practice by Insurance Company to sell insurance policies to property owners, and then subsequently take the position, that, under its latest interpretation, there is no coverage under the circumstances without sufficient factual basis or logical explanation, and with a disregard for Insurance Company's burden and well settled law, effectively denying or hindering the processing of legitimate claims.

58. Insurance Company regularly denies otherwise legitimate claims setting forth frivolous grounds for the denial, contrary to fact, common sense, and causation.

59. Insurance Company's outrageous actions demonstrate that degree of bad faith evincing a disingenuous, dishonest failure to carry out a contractual obligation.

60. The Defendant has failed to and/or refused to indemnify the Plaintiffs for their total Loss in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00), although a demand has been made.

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 12 of 18 PageID #: 158

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT AGAINST
## UNION MUTUAL FIRE INSURANCE COMPANY

61.    Plaintiffs repeat and re-allege all allegations set forth in the complaint as if more fully and completely set forth herein.

62.    By failing to pay Plaintiffs under the Policy to the full extent of Plaintiffs' loss, Defendant UNION has breached its obligation under the Policy with regard to the loss caused by fire damage at the Property.

63.    As a result of Defendant UNION's breach, Plaintiffs have been damaged in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00), plus appropriate interest of nine percent (9%) from the date of the Loss.

64.    As a further result of Insurance Company's breach and bad faith, Plaintiffs have suffered additional consequential damages in an amount to be determined at the time of trial, and pursuant to the *Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York* line of cases, but believed to be in excess of one hundred thousand dollars ($100,000.00).

65.    That consequential damages were at all times foreseeable, in that it is foreseeable that an insured will suffer additional losses when the defendant denies a claim in bad faith.

66.    That was both expected and foreseeable that Plaintiffs will sustain damages including the loss of use and enjoyment of the property, loss of business income, inability to make repairs thus lowering the value of the property, the need to procure alternative funds, opportunity costs, and additional living expenses.

## AND AS FOR A SECOND CAUSE OF ACTION
## VIOLATION OF GENERAL BUSINESS LAW § 349 AGAINST
## UNION MUTUAL FIRE INSURANCE COMPANY

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 13 of 18 PageID #: 159

67.     Plaintiffs repeat and re-allege all allegations set forth in the instant Verified Complaint as if more completely and fully set forth herein.

68.     Insurance Company, and its agents, servants and/or employees, are governed by the regulations promulgated by the superintendent of insurance of the New York State Insurance Department as set forth in 11 NYCRR § 216.

69.     In addition, Insurance Company, and its agents, servants and/or employees, are prohibited from engaging in deceptive acts and practices pursuant to General Business Law § 349 of the State of New York.

70.     Moreover, General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York and making such acts and practices unlawful.

71.     Insurance Company, through its agents, servants and/or employees, has engaged in deceptive acts and practices in violation of General Business Law § 349 of New York by way of its sham and cursory investigation of the Loss.

72.     To that end, despite being advised as to the actual observations of the Plaintiffs with regard to the manner in which the Loss took place, Defendant's retained adjuster interposed his own unqualified determination as to the manner in which the Loss took place, without undertaking any further investigation, engineering analysis, or other steps which would indicate a meaningful and proper investigation and coverage analysis.

73.     That this type of sham analysis is not unique to the Plaintiffs' Loss, but is a pattern and practice of the Insurance Company, particularly with those claims handled by Roundhill Express, LLC.

74.     That the sham investigations by Insurance Company which result in such unsupported and conclusory denials, without the benefit of an engineering opinion, and predicated upon the unqualified opinion of an adjuster of Roundhill Express, LLC are calculated to avoid payments to insureds and deter such insureds from pursuing their proper claims further.

75.     Insurance Company, through its agents, servants and/or employees, has engaged in deceptive acts and practices in violation of General Business Law § 349 of New York, as is evidenced by the foregoing conduct and deceptive claims handling.

76.     The aforementioned actions, policies, patterns of conduct, and failures by UNION have not only caused injury to Plaintiffs, but have the potential to harm the public at large, and every insured of UNION.

77.     Furthermore, the aforesaid further affects the public at large by virtue of the fact that UNION is an association consisting of all insurers authorized to write and engaged in writing within this state, on a direct basis, fire and extended coverage insurance, including insurers covering such perils in homeowners and commercial multiple peril package policies.

78.     Insurance Company's outrageous actions demonstrate that degree of bad faith evincing a disingenuous, dishonest failure to carry out a contractual obligation, arising to a criminal indifference to its civil obligations.

79.     As a result of the aforesaid violations of General Business Law § 349 of the State of New York, Plaintiffs have been damaged in an amount to be determined at trial but believed to be in excess of five hundred thousand dollars ($500,000.00), plus appropriate interest, along with consequential damages in an amount to be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00).

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 15 of 18 PageID #: 161

80.     As a further result of Insurance Company's violations of General Business Law §

349 of the State of New York, Plaintiffs are entitled to attorneys' fees.

81.     Further, due to the willful and wanton nature of Insurance Company's conduct and

the need to deter same to prevent public harm and injury, Plaintiffs demand punitive damages

pursuant to General Business Law § 349.

**WHEREFORE**, Plaintiff FRED LEE and ANN LEE demand judgment against Defendant

UNION MUTUAL FIRE INSURANCE COMPANY as follows:

a.      Under the FIRST Cause of Action as against UNION MUTUAL FIRE

INSURANCE COMPANY, in an amount to be determined at trial but believed to be in excess of

five hundred thousand dollars ($500,000.00), plus appropriate interest along with additional

consequential damages in an amount to be determined at trial but believed to be in excess of one

hundred thousand dollars ($100,000.00).

b.      Under the SECOND Cause of Action as against UNION MUTUAL FIRE

INSURANCE COMPANY, in an amount to be determined at trial but believed to be in excess of

five hundred thousand dollars ($500,000.00), along with consequential damages in an amount to

be determined at trial but believed to be in excess of one hundred thousand dollars ($100,000.00);

punitive damages; and reasonable attorneys' fees; and

c.      Appropriate interest, the costs and disbursements of this action, and such other and

further relief as the Court deems just and proper.

Dated:      Great Neck, New York
            June 5, 2020

                        Yours, etc.,

                        GREENBLATT & AGULNICK, P.C.

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 16 of 18 PageID #: 162

By: _____

      Scott E. Agulnick

Attorneys for Plaintiff

**FRED LEE and ANN LEE**

55 Northern Boulevard, Suite 302

Great Neck, New York 11021

Tel: (718) 352- 4800

Fax: (718) 732-2110

Case 1:20-cv-03191-MKB-PK   Document 34-4   Filed 12/03/21   Page 17 of 18 PageID #: 163

## ATTORNEY VERIFICATION

The undersigned, an attorney admitted to practice law in the State of New York, affirms

the following to be true under penalty of perjury:

I have read the foregoing SUMMONS AND COMPLAINT and, upon information and

belief, believe the contents thereof to be true.  The basis of my belief is a review of the file

maintained in my office.  The reason I make this verification is because my client does not reside

within the county in which I maintain my office.

Dated:          Great Neck, New York
                June 5, 2020

————————————————
          SCOTT E. AGULNICK, ESQ.

Case 1:20-cv-03191-MKB-PK Document 34-4 Filed 12/03/21 Page 18 of 18 PageID #: 164

Index No:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

FRED LEE and ANN LEE,

Plaintiffs,

-against-

UNION MUTUAL FIRE INSURANCE COMPANY,

Defendant(s).

## SUMMONS AND VERIFIED COMPLAINT

### GREENBLATT & AGULNICK, P.C.

*Attorneys for PLAINTIFF(s)*
*Office and Post Office Address, Telephone*
55 Northern Boulevard, Suite 302
Great Neck, New York 11021
Tel:    (718) 352- 4800
Fax:    (718) 732- 2110

### "WE DO NOT ACCEPT SERVICE BY ELECTRONIC TRANSMISSION (FAX)"

To:
Attorney(s) for DEFENDANT(S)

### Certification pursuant to 22 NYCRR 130-1.1(a)

It is hereby certified that, to the best of the undersigned's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the paper and/or the contentions herein are not frivolous as defined in section 130-1.1(c).

06/05/2020
Dated                                           SCOTT E. AGULNICK, ESQ.

Service of a copy of the within                          is hereby **admitted**

.........................................................................
Attorney(s) for