# EXHIBIT D

JAMES LAMBERT

1

1

2      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF NEW YORK

3      - - - - - - - - - - - - - - - - - - - - - - -x

4      FRED LEE and ANN LEE,

5                                    Plaintiffs,

6                                           Civil Case No.:
                                            1:20-cv-03101

7                         -against-

8      UNION MUTUAL FIRE INSURANCE COMPANY,

9                                    Defendant.

10     - - - - - - - - - - - - - - - - - - - - - -x

11

12                         May 4, 2021
                           1:00 p.m.

13

14

15              EXAMINATION BEFORE TRIAL of JAMES

16     LAMBERT, a witness on behalf of the defendant in

17     the above-entitled action, held via Zoom

18     videoconferencing equipment, pursuant to Notice,

19     taken before JoAnn O'Loughlin, a Notary Public of

20     the State of New York.

21

22

23                         *    *    *

24

25

JAMES LAMBERT

2

```
 1

 2     A P P E A R A N C E S:


 3


 4         GREENBLAT & AGULNICK, P.C
               Attorneys for Plaintiffs
 5             55 Northern Boulevard
               Great Neck, New York 11021
 6
           BY:  SCOTT E. AGULNICK, ESQ.
 7


 8

 9         HURWITZ & FINE, P.C.
               Attorneys for Defendant
               1300 Liberty Building
10             Buffalo, New York 14202

11         BY:  ERIC T. BORON, ESQ.

12


13         ALSO PRESENT:  VICTORIA DeMARCO, ESQ.

14

15

16
                         *    *    *
17

18

19

20

21

22

23

24

25
```

JAMES LAMBERT

3

1

2                    F E D E R A L   S T I P U L A T I O N S

3

4

5          IT IS HEREBY STIPULATED AND AGREED by and

6     between the attorneys for the respective parties

7     herein that the sealing, filing and certification

8     of the within deposition be waived; that the

9     original of the deposition may be signed and sworn

10    to by the witness before anyone authorized to

11    administer an oath, with the same effect as if

12    signed before a Judge of the court; that an

13    unsigned copy of the deposition may be used with

14    the same force and effect as if signed by the

15    witness, 30 days after the service of original & 1

16    copy of the same upon counsel for the witness.

17

18          IT IS FURTHER STIPULATED AND AGREED that all

19    objections except as to form, are reserved to the

20    time of trial.

21

22

23                    *      *      *      *

24

25

JAMES LAMBERT

4

1
2          THE COURT REPORTER:  My name is JoAnn

3     O'Loughlin, a New York State notary public and

4     court reporter.

5          This deposition is being held via Zoom

6     videoconferencing equipment.  The witness and

7     reporter are not in the same room.  The

8     witness will be sworn in remotely, pursuant to

9     agreement of all parties.

10          The parties stipulate that the

11     testimony is being given as if the witness was

12     sworn in in person.

13          MR. AGULNICK:  So stipulated.

14          MR. BORON:  So stipulated.

15     J A M E S   L A M B E R T, the witness herein,

16     having first been remotely sworn by the Notary

17     Public, was examined and testified as follows:

18     EXAMINATION BY MR. AGULNICK:

19          Q.     What is your name?

20          A.     James Lambert.

21          Q.     What is your address?

22          A.     P.O. Box 611, Ardsley, New York 10522.

23          Q      Good afternoon, Mr. Lambert.  My name

24     is Scott Agulnick and I'm a partner of the law firm

25     of Greenblatt & Agulnick and we represent Fred and

1

2      Ann Lee with regard to an action that's been

3      brought against Union Mutual.

4              We're going to ask you a series of

5      questions here today and those questions pertain to

6      a date of loss of March 2, 2020 with regard to a

7      property location at 39-11 27th Street in Long

8      Island City, New York.

9              None of my questions are designed to

10     trick you or deceive you.  If you do not understand

11     one of my questions, please just let me know and I

12     will rephrase it.

13             You are represented by counsel here

14     today.  If you would like a break, to consult with

15     your attorney or for any other reason, to stretch

16     your legs or to have a bite to eat, just let us

17     know and we'll accommodate you.

18             We ask that if there is a question

19     pending, you provide a response to the pending

20     question and then we can take a break.

21             The court reporter cannot take down any

22     type of gestures or head nods, so please, to the

23     best of your ability, make sure she hears all of

24     your responses.  She is the most important person

25     in the virtual room here, okay?

JAMES LAMBERT

6

1

2              Do you understand my instructions, sir?

3       A      Yes.

4       Q      Mr. Lambert, I'm going to take a wild

5  guess and assume that you've testified in

6  depositions before.

7       A      Yes.

8       Q      Approximately how many depositions have

9  you testified in?

10      A      Probably approaching two dozen.

11      Q      Was some portion of those two dozen

12 cases with reference to Union Mutual claims?

13      A      Yes.

14      Q      Were they all for Union Mutual claims?

15      A      No.

16      Q      By whom are you employed?

17      A      RoundHill Express, LLC.

18      Q      What is the nature of RoundHill

19 Express' business?

20      A      RoundHill Express is an appointed agent

21 for Union Mutual Fire Casualty Company and

22 underwrites a book of Metropolitan New York City

23 landlord-tenant policies.

24      Q      When you say that they underwrite a

25 book of landlord policies, can you explain what it

JAMES LAMBERT

7

1

2       means to underwrite a book of business?

3               A       RoundHill Express has the authority to

4       bind policies on behalf of Union Mutual and the

5       extent of that authority is limited to buildings

6       owned by landlords within a geographical area

7       around New York City with apartments up to ten

8       units.  So small buildings occupied by residential

9       tenants.

10              Q       Is this agency pursuant to a contract

11      between Union Mutual and RoundHill?

12              A       Yes.

13              Q       In addition to underwriting roles, does

14      RoundHill play a role in claims adjustment or

15      claims investigation?

16              A       Yes.

17              Q       What role does RoundHill play on behalf

18      of Union Mutual for claims adjustment and claims

19      investigation?

20              A       We handle and adjust and pay claims

21      arising on the policies that we issue on behalf of

22      Union Mutual.

23              Q       How is RoundHill compensated to handle

24      the adjustment and payment of claims on behalf of

25      Union Mutual?

JAMES LAMBERT

8

1

2          A       RoundHill receives a commission on the

3    policies that are bound and that commission

4    includes the cost and expense associated with

5    claims handling.

6          Q       Does the commission that RoundHill

7    receives change depending on the amount of losses

8    that those policies underwritten by Union Mutual

9    sustain?

10         A       No.

11         Q       Does the commission change depending on

12   the amount of money paid out by Union Mutual with

13   regard to policies underwritten by RoundHill?

14         A       No.

15         Q       Did a time come where RoundHill

16   undertook to underwrite a policy for Fred and Ann

17   Lee at 39-11 27th Street in Long Island City, New

18   York?

19         A       I don't know.

20         Q       Prior to testifying here today, did you

21   review any documents in connection with the claim

22   of Fred and Ann Lee?

23         A       No.

24         Q       Did you have any involvement in the

25   underwriting of the policy issued to Fred and Ann

9

1

2   Lee for 39-11 27th Street?

3        A     I have no specific recollection of that

4   policy, but I can tell you that in the course of

5   our business, the underwriting is done through our

6   website and I would not have been involved in the

7   underwriting of any specific individual risk.

8        Q     Are you saying that underwriting is

9   done through a website?

10       A     I said that.

11       Q     I'm sorry, the connection doesn't seem

12  to be so great.

13             The underwriting is performed through a

14  website, sir, is that what you said?

15       A     Yes, I said that.

16       Q     Can you explain what you mean by that

17  it's done through a website?

18       A     Yes.

19             Brokers who do business with us have

20  logging credentials that enable them to go to our

21  website, which is roundhillexpress.com and they can

22  answer a series of questions on that website and

23  provide information on risks and obtain a quote

24  through the website for the risk they'd like to

25  obtain coverage on.

JAMES LAMBERT

10

```
 1              If the quote is acceptable --

 2        Q      And then once that --

 3        A      If the quote is acceptable to them,

 4   they can then proceed forward to bind coverage.

 5        Q      Can you explain the process after an

 6   application is submitted, what happens at that

 7   point?

 8        A      While the broker is on the website, he

 9   fills in the information which we request as part

10   of our application.  When he clicks on the button

11   saying quote the risk, that information is reviewed

12   by a computer program and a quote is then produced.

13        Q      In connection with the underwriting of

14   the policy, does RoundHill cause an inspection to

15   be performed at a potential insured location?

16        A      If a policy is bound and after it is

17   bound, we generally will do an inspection of the

18   premises.

19        Q      Are you aware as to whether an

20   inspection was performed for the subject location

21   at 39-11 27th Street?

22              MR. BORON:  Objection as to form.

23        A      I have no independent recollection of

24   that.

25
```

1

2          Q      Do you have any personal knowledge of

3   the claim of Fred and Ann Lee?

4          A      As I sit here today, I have no

5   independent recollection of that claim.

6          Q      So the knowledge you would have

7   regarding the claim of Fred and Ann Lee would be

8   based solely upon whatever records are maintained

9   by RoundHill; is that correct?

10          .    MR. BORON:  Objection as to form.

11          A      I'm not sure I know how to answer that

12   question because I just said I have no independent

13   recollection of the claim.

14          Q      So you have no independent recollection

15   of the claim and you have not reviewed the file

16   maintained by RoundHill in this claim; is that

17   correct?

18          A      That is correct.

19          Q      Is there any particular person at

20   RoundHill Express who would have personal knowledge

21   of the underwriting of the policy issued to Fred

22   and Ann Lee?

23              MR. BORON:  Objection as to form.

24              Are you referring to the actual policy

25         that's at issue in this lawsuit, Scott?

1

2          MR. AGULNICK:  Well, the underwriting

3      of any policy issued to Fred and Ann Lee.

4          MR. BORON:  I'll object on relevance

5      grounds.

6          MR. AGULNICK:  Well --

7          MR. BORON:  Are there --

8          MR. AGULNICK:  I'll withdraw it.

9          MR. BORON:  -- other policies issued by

10     Union?

11         MR. AGULNICK:  No, I believe it's just

12     one policy.

13         MR. BORON:  Okay.

14         Can you just make the question specific

15     to this case?

16         MR. AGULNICK:  Absolutely.

17     Q    Do you know anyone at RoundHill who

18  would have personal knowledge as to the

19  underwriting process performed at or about the time

20  the original Union Mutual policy was issued to Fred

21  and Ann Lee?

22     A    I believe I explained the process and

23  so for the sake of clarity, that process would have

24  taken place when the broker went onto our website.

25         No employee of RoundHill would have

1

2     been involved in that process and so the entire

3     process of obtaining a quote and possibly requoting

4     the risk with different coverages could all have

5     taken place without any employee of RoundHill being

6     involved and the broker could have moved forward

7     and bound coverage based upon a quote without the

8     involvement of any employee at RoundHill.

9           Q      Would a human being be involved in the

10    inspection of the insured location?

11          A      Yes.

12          Q      What individual at RoundHill Express

13    would have knowledge as to the inspection performed

14    at the insured location?

15          A      The inspection would have been

16    performed by one of several individuals who operate

17    as independent contractors for us and perform

18    inspections and that is the person who would have

19    knowledge of the inspection if they, you know,

20    could still remember those details at this point in

21    time.

22          Q      Does Union Mutual maintain records with

23    regard to the identity of the person or entities

24    that perform inspections?

25          A      Union Mutual does not, but RoundHill

JAMES LAMBERT

14

1

2      would be able to identify the person who did the

3      inspection.

4           Q      Would the identity of that individual

5      who performed the inspection be contained within

6      the underwriting file or it would be located

7      someplace else?

8           A      I am unsure exactly.  I think it's in

9      the underwriting file, but if it is not, I know it

10     is also located elsewhere.

11          Q      Where would it be located elsewhere?

12          A      There would be somewhere a payment

13     record indicating that for policy XYZ, such and

14     such person was paid for the inspection.

15          Q      That payment record is not maintained

16     in the underwriting file?

17               MR. BORON:  Objection to form.

18          A      No, it is not.

19          Q      What is RoundHill Express Inspections?

20          A      Pardon me?

21          Q      Is there an entity called RoundHill

22     Express Inspections or is that a department or

23     something else?

24          A      There's no entity by that name.

25          Q      As you sit here today, do you have any

JAMES LAMBERT

15

1

2    knowledge as to the coverage determination with

3    regard to the claim of Fred and Ann Lee, the date

4    of loss March 2, 2020?

5         A    I did not hear the beginning of that

6    sentence, could you repeat it?

7              (The pending question was read.)

8         A    I do not have any independent

9    recollection of that.

10        Q    Well, are you aware if the claim was

11   denied, the policy was rescinded, if the claim was

12   partially paid or something else or anything else?

13        A    By dint of my presence at this

14   deposition I'm aware that something happened, but I

15   don't have any recollection of the specifics or

16   what it is.

17        Q    So as you sit here today, you don't

18   know what the dispute is over?

19        A    That is correct.

20             MR. AGULNICK:  I'm going to share the

21        screen and I'm going to show you a document.

22        I think we can deem this marked Plaintiff's

23        Exhibit 1.

24             (Plaintiff's Exhibit 1, copy of five-page

25        RoundHill Express Inspections report Bates

1

2          stamped 000361 - 000365, was marked for

3          identification.  Exhibit retained by counsel.)

4                    MR. AGULNICK:  Before I ask the

5          question, Eric, I forwarded the exhibits to CJ

6          earlier.  These are the carrier's production,

7          so I don't know if CJ forwarded them to you

8          because I requested that they be made

9          available to the witness.

10                   MR. BORON:  When did you do that,

11         Scott?

12                   MR. AGULNICK:  Not too long ago.

13                   MR. BORON:  Well, they wouldn't have

14         been forwarded to me then.

15                   MR. AGULNICK:  Okay.  So we'll start

16         with this.  This document is not so big.

17         Q       Sir, I'm going to scroll through

18         Plaintiff's Exhibit 1 and I'll represent that this

19         was a report that was produced by Union Mutual in

20         response to a request for reports pertaining to a

21         2017 inspection.  It's a five-page document.  I'm

22         going to scroll through.

23                   (Attorney scrolling.)

24         Q       Sir, have you had an opportunity to see

25         this document?

JAMES LAMBERT

17

1

2      A      I have.

3      Q      Have you seen this document before?

4      A      I have no independent recollection of

5  having seen it before.

6      Q      Without having a recollection of seeing

7  it before, do you know what this document is?

8      A      That appears to be essentially the

9  inspection report produced following the inspection

10 of this risk at 39-11 27th Street.

11     Q      Can you kindly read, you see where my

12 cursory is?

13     A      Yes.

14     Q      Can you read that line?

15     A      That says Report Reviewed and Assembled

16 on 7/11/2017.

17     Q      Does that indicate that this report was

18 reviewed by someone at RoundHill on that date or

19 would it be someone at Union Mutual or someone

20 else?

21     A      As you scroll down that report, you'll

22 notice that to the left-hand side there are

23 comments, so in the first photo there's a comment

24 that is Front - Clean; do you see that?

25     Q      Yes.

JAMES LAMBERT

18

1

2          A          Okay.   And underneath it, it says Back

3     - Clean.

4          Q          Yes.

5          A          And then Sidewalk - Clean?

6          Q          Yes.

7          A          And then Stairs - Clean, Electrical -

8     Clean, Electric - Clean a second time, Heating -

9     Clean.   And is that the last photo?

10          Q          Yes.

11          A          Okay.

12                    When the inspectors take these

13     photographs, they have a drop-down menu that allows

14     them to essentially identify the photo as, for

15     example, we're looking at the last one, it says

16     heating and so they identify the photo as being of

17     the heating system and they can identify as being

18     clean or issues, I don't know the word they use,

19     but if all of the photos are marked as clean, when

20     these photos are uploaded at night by the inspector

21     to our systems, system will review the comments and

22     if they're all clean, the report is automatically

23     put into the underwriting file without any person

24     reviewing it and an email is then sent to the

25     broker/insured indicating that they've passed

1

2    inspection.

3            So since this report indicates that

4    everything was clean, that would mean that nobody

5    physically reviewed these photos other than the

6    person who took them.

7        Q      When an inspector is sent out to a

8    property to perform an inspection which results in

9    a reporting generated like this one, are they given

10   a description of the property?

11       A      The assignment comes with certain

12   information about the property.  Clearly the

13   address, probably the phone number of the

14   inspection contact and there may be additional

15   information about the property, but I'm unaware as

16   I sit here what exactly that would have been.

17       Q      Where would the assignment document be

18   located, within the underwriting file or someplace

19   else?

20       A      There is no assignment document.

21            When an appointment is booked for an

22   inspection, the software that we use for booking

23   the appointments will suggest dates and times and

24   inspectors who will be in the area on those dates

25   and times, which allows us to give the insured the

JAMES LAMBERT

20

1

2      opportunity to make a selection about when they

3      want the appointment and at that point in time when

4      they make their selection, that indicates who the

5      inspector will be.  It's random, it just depends on

6      the date they pick and the area it's in.

7                  The inspectors get a download every

8      night of appointments that have been booked for

9      them the next day and that download would have

10     included, you know, the information I just talked

11     to you about and so that's how they learn about the

12     inspection.

13         Q      Would the inspector receive a copy of

14     the application?

15         A      No.

16         Q      Does the inspector receive a

17     description of the property?

18         A      I believe I've already testified to the

19     extent that I can recall what they get.  Beyond

20     that, I cannot tell you, I don't have an

21     independent recollection right now.

22         Q      Is there anything on Plaintiff's

23     Exhibit 1 which would indicate who performed the

24     inspection on behalf of RoundHill and Union Mutual?

25         A      I am looking at it as you scroll down

JAMES LAMBERT

1

2    and I don't see anything so far that indicates who

3    did the inspection.

4         Q      Are any instructions given to the

5    inspector before performing an inspection?

6         A      When we first bring someone on board to

7    train as an inspector, we go through a training

8    process, but once that is done, there are no

9    further instructions given about it.  So there's no

10   instructions given with respect to any particular

11   inspection.

12        Q      Is there a training manual, a manual

13   issued to the inspectors as part of this training

14   process?

15        A      No.

16        Q      When an inspector goes out to a

17   property to perform an inspection, what is the

18   expectation as to what they will photograph?

19        A      The expectation is that we'll see the

20   photographs that you see here and that is the

21   heating system, the electrical, public access

22   stairs if there are any and sidewalks.  Those are

23   the primary concerns of the inspection.

24        Q      I'll start from the top.

25               Do you see the public access stairs?

JAMES LAMBERT

22

1

2      A      I see the front of the building, the

3  back of the building, sidewalk including what

4  appears to be three steps going into the building.

5  An interior shot of a staircase.  Electrical

6  meters, gas meters and a furnace.

7      Q      Would this report indicate that there's

8  a rear stairwell to the basement at the insured

9  location?

10      A      No, it does not as far as I can tell

11  from looking at it.

12      Q      If the insured location did have an

13  exterior staircase to the basement, would that have

14  been an oversight on behalf of the inspector?

15          MR. BORON:  Objection as form.

16      A      No, not really.  If there had been

17  issues with it, like, for example, if the steps

18  were broken and the inspector perceived it as being

19  hazardous, he would have taken a photo of that and

20  marked it as an issue.

21      Q      So he would have only taken a photo if

22  he or she perceived the stairwell as hazardous?

23      A      I believe so.

24      Q      When the inspection is performed, does

25  it require that the homeowner be present during the

JAMES LAMBERT

23

1

2     inspection or can it be done without the

3     homeowner's presence?

4          A      When the broker binds a risk, we ask

5     for a name and telephone number for an inspection

6     contact and that person will receive text messages

7     or phone calls from us in order to schedule an

8     appointment for the inspection.  We don't know if

9     that person is the homeowner or the building owner

10    or the landlord or a managing agent for the

11    building or the handyman and when the inspection

12    takes place, we don't know who will be there, but

13    we require someone to be there to provide us access

14    to the building.

15         Q      Have you ever seen Fred Lee before?

16         A      Certainly not.  Not to my knowledge.

17         Q      When an inspector performs an

18    inspection, are they instructed or trained to

19    upload all of the photographs they take or just

20    some of the photographs they take?

21         A      The software that they use captures all

22    the photos and they're all uploaded.  If they take

23    the photo, it is uploaded.

24         Q      Apart from the locations and the

25    writing that's contained in Plaintiff's Exhibit 1,

1

2       does the inspection report have any accompanying

3       notes or narrative or other written correspondence

4       with it?

5              A       No, this is the complete report.

6              Q       As of 2017, more specifically in July,

7       what vendors were utilized for property inspections

8       on behalf of Union Mutual?

9              A       We did not use -- pardon me.

10             (Pause.)

11             A       We used several independent contractors

12      to perform inspections, but they are individual

13      people, we do not hire an outside company.  The

14      names of the people who were working in July of

15      2017 I could find out, but I do not recall who they

16      are as we speak.

17             MR. AGULNICK:  I'm going to

18          respectfully ask that you do obtain those

19          names and provide them to counsel at your

20          first opportunity, please and we're going to

21          call for the production of those names.

22             MR. BORON:  Scott, we will address any

23          requests for further records or documents that

24          you send us, but we're not going to simply

25          agree that this transcript, itself, reflects

JAMES LAMBERT

25

1

2      your requests because we want to know

3      specifically what you're looking for and then

4      we want to deal with it as we need to deal

5      with it, especially considering the scheduling

6      order that's in place in this case and the

7      time frame that's in place in this case to get

8      all discovery done, okay?

9              MR. AGULNICK:  Your position is noted.

10     Thank you, sir.

11  ** INFORMATION REQUESTED AND/OR DOCUMENTS TO BE

12  SUPPLIED:

13         Q       With regard to 39-11 27th Street and

14     I'm going to scroll down to page three of five, are

15     you able to identify where that photograph was

16     taken inside the insured location?

17         A       No.

18         Q       I'll scroll down to page four of five,

19     which indicates Electrical - Clean and there are

20     two photographs.

21              Are you able to identify where in the

22     insured location those photographs were taken?

23         A       No.

24         Q       I'm going to scroll down to page five

25     of five.  There's a photograph there next to a

1

2    notation Heating - Clean.

3              Are you able to identify where in the

4    insured location that photograph was taken?

5         A    No.

6         Q    Based upon your experience, are you

7    able to make an educated guess as to where the hot

8    water heater and the heating equipment would be

9    located at the insured location?

10        A    No, I cannot.

11             MR. BORON:  Objection as to form.

12        Q    Based upon your review of this report,

13   are you able to identify when these photographs

14   were first in the possession of RoundHill Express

15   on behalf of Union Mutual?

16        A    There's a notation on the report that

17   it was reviewed and assembled on July 11, 2017 and

18   I believe that the inspection took place on or

19   about that date and that the report was generated

20   on or about that date.

21        Q    Are the inspection reports provided to

22   Union Mutual?

23        A    The inspection reports are in our

24   underwriting file and are available to Union Mutual

25   upon audit or request, but otherwise not.

1

2      Q      Do you have any knowledge as to whether

3   this underwriting file was subject to audit or

4   request at any point prior to the date of the loss,

5   March 2, 2020?

6            MR. BORON:  Objection to the question,

7         the form of it.

8      A      Not to my knowledge.

9      Q      Now with regard to the investigation of

10   the March 2, 2020 loss, did RoundHill undertake an

11   investigation and adjustment of this claim?

12      A      I have no independent recollection of

13   this claim or its adjustment, but in the normal

14   course of business, if a claim is made to us, we

15   will undertake to retain someone to investigate and

16   adjust the claim and defend the insured if it's a

17   liability claim.

18      Q      In that same ordinary process, would

19   the person or persons who are investigating and

20   adjusting the claim review the underwriting file of

21   the insured location?

22      A      In the normal course of business, I do

23   not believe that happens.

24            MR. AGULNICK:  Off the record.

25            (Discussion off the record.)

JAMES LAMBERT

28

1

2          Q      Sir, I am going to show you what's

3     going to be marked Plaintiff's Exhibit 2 and I will

4     represent that this document, which is a 216-page

5     document, was furnished to us and indicated to be

6     the claims file for the claim of Fred Lee.

7               (Plaintiff's Exhibit 2, copy of claim

8          file Bates stamped 000001 - 00000216, was marked

9          for identification.  Exhibit retained by

10         counsel.)

11         Q      I'm just going to scroll and I'm not

12    going to ask you to review 216 pages as your

13    counsel fears and again, you've never reviewed this

14    claim file, correct?

15         A      I have no recollection of having done

16    so.

17         Q      Do you have knowledge as to whether

18    these documents and this claim file were prepared

19    and maintained in the ordinary course of business

20    by RoundHill Express?

21         A      In the ordinary course of business,

22    RoundHill Express maintains claims files and if

23    these documents were produced to you by counsel in

24    this litigation, I would suspected that they got it

25    from our claims system and so they were kept in the

JAMES LAMBERT

29

1

2      ordinary course of business, but I have no specific

3      knowledge about this specific claim file.

4           Q      Thank you.

5                  I'm going to refer you to page 18 of

6      Plaintiff's Exhibit 2.

7                  What is relationship between Beltrani

8      Consultants and RoundHill Express?

9                  MR. BORON:  Just a minute, Scott.

10                 You called it page 18, but there are

11         Bates numbers in the bottom right-hand corner

12         of all the pages, so are you referring to the

13         Bates number or something else?

14                 MR. AGULNICK:  Eric, I may disagree

15         with you on many fronts, but you're a hundred

16         percent in that.

17          Q      So, sir, I'm just simply going to

18      referring to Bates stamp 17.

19                 MR. BORON:  Thank you.

20          Q      On Bates stamped 17, Exhibit 2, it

21      appears to be a report from Beltrani Consultants.

22                 What relationship does Beltrani

23      Connecticut have with RoundHill?

24          A      My understanding is that Beltrani

25      Consultants is an independent adjustment firm that

1

2    we utilize from time to time on property claims to

3    go out and see the loss site and prepare reports

4    for us so the internal adjuster can handle

5    adjusting the file.

6        Q    In the ordinary course of business, is

7    an outside adjuster such as Beltrani Consultants

8    provided with the underwriting file?

9        A    To my knowledge, no.

10        Q    Do you know if Beltrani Consultants was

11    provided with the underwriting file in this case?

12        A    I have no specific knowledge about this

13    claim, so I can't speak to that specific question.

14        Q    Is there anything in a typical claim

15    file such as claims notes which would indicate

16    whether Beltrani was provided an underwriting file?

17        A    I do not believe it is possible that

18    that took place because I am unaware of any process

19    by which we can distribute an underwriting file to

20    anybody.  All of our files are paperless and held

21    in electronic form and so it would not be easy for

22    anyone to be provided with a copy of the

23    underwriting file and so I don't believe it

24    possible in this case.

25        It would have to have involved me and I

JAMES LAMBERT

31

1

2    am -- if somebody asked me right now to produce an

3    underwriting file, I would have to go to our IT

4    department and ask them how do we do that.

5         Q    I'm going to scroll down to Bates stamp

6    18, down to Occupancy.  The paragraph under the

7    word Occupancy, would you kindly just read to that

8    yourself?

9              (Witness reviewing document.)

10        A    I have read that.

11        Q    This report indicates a separate

12   entrance to the basement area and we discussed the

13   2017 inspection report which did not show a

14   separate entrance to the basement area and if my

15   recollection is correct, that was because you

16   presume that there was no hazard with regard to

17   that separate entrance?

18             MR. BORON:  Objection as to form.

19        A    I don't believe that's what I said.  I

20   believe what I indicated was that there might have

21   been a photo of a rear staircase to the building if

22   the inspector had noted something hazardous about

23   that so he can call out something on the

24   inspection.

25        Q    Are the inspectors instructed to take

JAMES LAMBERT

32

1

2      photos of all entrances to an insured location as

3      part of the inspection?

4           A      No.

5           Q      Do you know what, if any, action was

6      taken by RoundHill Express or Union Mutual to

7      review or inquire as to whether the basement

8      location had been viewed prior to this loss?

9                 MR. BORON:  Objection as form.

10          A      I don't understand the question.

11          Q      In response to this report by Harry

12     Beltrani, do you know if RoundHill or Union Mutual

13     ever inquired as to whether an inspection was

14     performed in the basement at the insured location

15     previously?

16          A      I do not know.

17          Q      Are there any policies or procedures

18     which would indicate that a review of the

19     underwriting file would be relevant to the

20     adjustment of a claim?

21          A      No.

22          Q      As we sit here today, your knowledge

23     with regard to this claim would be confined to

24     anything contained within the claim file if you

25     took the time to sit and review it; is that

1

2    correct?

3         A       I don't understand that question; can

4    you repeat that?

5         Q       If we gave you all the time in the

6    world to sit and review the claim file, your

7    knowledge of this claim would be confined to

8    whatever you read therein; is that correct?

9         A       I do not have any independent

10   recollection of this claim and if you let me review

11   the claim file, all I would know is what's in the

12   claim file.

13        Q       Thank you.  I'm certainly not going to

14   make you do that.

15             Does Union Mutual or RoundHill Express

16   have guidelines or memorandum of documentation

17   which relate to the definition of an apartment unit

18   as the term is utilized in an application for

19   insurance?

20        A       No.

21        Q       Do you have an understanding as to the

22   definition of apartment unit as it is utilized in

23   connection with application for insurance from

24   Union Mutual?

25        A       I know that we ask about the number of

1

2    apartment units in a risk when we are quoting it

3    because the number of units will have a significant

4    impact on the pricing of the premium.

5         Q     Does that question pertain to legal

6    units, illegal units, something else?

7              MR. BORON:  Objection as to form.

8         A     We do not draw a distinction between

9    legal or illegal units.  The premium we are

10   required to charge by New York State is a function

11   of the number of apartments.

12        Q     Well, what constitutes the definition

13   of an apartment?

14             MR. BORON:  Objection as to form.

15        A     Do you want my definition; do you want

16   the most recent court decision definition?  I mean

17   my definition doesn't really matter here.

18        Q     Okay.  Well, what is the definition

19   that is utilized by RoundHill Express in connection

20   with applications?

21        A     We don't have a definition.  We ask how

22   many apartments are there.

23        Q     But what constitutes an apartment as

24   far as RoundHill and Union Mutual are concerned?

25        A     I personally consider places in which

JAMES LAMBERT

35

1

2    people reside to be apartments, but my personal

3    definition is not material here, it's how the

4    courts define apartments.

5              MR. AGULNICK:  Can you please read back

6        the answer?

7              (The preceding answer was read.)

8        Q      So is your personal belief that if no

9    people reside there, it's not an apartment?

10       A      No.  If it's capable of someone

11   residing there, it's an apartment.

12       Q      What does it mean to be capable of

13   someone residing there?

14       A      I don't know.

15       Q      Would that capability involve the

16   legality of the apartment?

17       A      No.

18       Q      Is it relevant as to whether a person

19   can legally be capable of living there?

20       A      No.

21       Q      So what definition of apartment is

22   utilized by RoundHill Express?

23       A      We don't utilize a definition.  We ask

24   a question, how many apartments are in the

25   building.

JAMES LAMBERT

36

1

2     Q     But is there an understanding of what

3     the term "apartment unit" means when Union Mutual

4     poses the question?

5     A     I'm not capable of telling you what

6     that question generates within the minds of people

7     who are filling out the application.

8     Q     But respectfully are you capable of

9     advising us as to what RoundHill and Union Mutual

10    interprets that question to mean?

11    A     We don't --

12          MR. BORON:  Objection.

13    A     We don't interpret the question, we

14    simply ask the question.

15    Q     Do you believe that question can be

16    interpreted differently by different people?

17    A     I certainly have seen case law in which

18    judges have provided different interpretations.

19    Q     So do you believe that it could be

20    interpreted more than one way?

21          MR. BORON:  Objection as to form.

22    A     Everything can be interpreted more than

23    one way.

24    Q     Is the question that pertains to

25    apartment units on the application one of those

JAMES LAMBERT

37

1

2    things that can be interpreted in more than one

3    way?

4         A    We ask about the number of apartment

5    units in the building.  I think it's a fairly clear

6    question.

7         Q    But you indicated that different courts

8    have interpreted apartment unit in different ways,

9    isn't that your testimony?

10             MR. BORON:  Objection as to form.

11        A    That is a comment I made, yes.

12        Q    So as you sit here today, do you

13   believe that that question can be interpreted in

14   more than one way?

15        A    I think it's a --

16             MR. BORON:  Objection.

17        A    -- very clear question how many

18   apartments were in the building.

19        Q    So again, I'll ask again if it's clear

20   to you what constitutes an apartment as the term is

21   used in the application.

22        A    I think the question is clear it's how

23   many apartments are in the building.

24        Q    What does an apartment consist of; are

25   there particular elements that make up an

JAMES LAMBERT

38

1

2      apartment?

3           A      I'm sure there are many elements that

4      make up an apartment.

5           Q      What is the understanding of Union

6      Mutual as to those elements which together would

7      make up an apartment?

8           A      We do not have a definition of

9      apartment that we use, we simply ask the question,

10     how many apartments are there in the building.

11          Q      So as far as Union Mutual and RoundHill

12     is concerned, there's no set of elements necessary

13     to constitute an apartment?

14                 MR. BORON:  Objection as to form.

15          A      We do not have a standard description

16     of the elements necessary to constitute an

17     apartment.

18          Q      Does an apartment, as far as RoundHill

19     and Union Mutual are concerned, require cooking

20     facilities?

21          A      We merely ask how many apartments are

22     in the building.

23          Q      Okay.  My question is does an

24     apartment, as far as RoundHill and Union Mutual is

25     concerned, require cooking facilities?

JAMES LAMBERT

39

1

2      A      Do you mean do they have to be there

3   every single day of the year or do you mean that

4   the space is capable of having cooking take place

5   in it?

6      Q      I'm saying that for something to be an

7   apartment, you have to be able to cook something

8   there.

9      A      I don't agree with you because if you

10   had a 50-unit apartment building and you took all

11   the stoves out, it would still be a 50-unit

12   apartment building even though you took the stoves

13   out.  It doesn't change the building.

14      Q      If cooking facilities were removed in a

15   50-unit apartment building, would those units be

16   able to be lawfully inhabited?

17      A      I am unfamiliar with the New York City

18   code with respect to that.

19      Q      Does the legal prohibition to

20   habitation have any bearing on the determination by

21   RoundHill Express or Union Mutual as to whether

22   something is an apartment?

23             MR. BORON:  Objection as to form.

24      A      I don't understand the question.

25      Q      If a space is not considered an

JAMES LAMBERT

40

1

2   apartment that could be lawfully inhabited under

3   the law, does that have any relevance to Union

4   Mutual's determination as to whether a space is an

5   apartment?

6       A    No.

7       Q    Do you have an understanding as to the

8   difference between a finished basement and an

9   apartment?

10       MR. BORON:  Objection to form.

11       A    I do not.

12       Q    Does the application utilized by Union

13   Mutual ask how many kitchens are at an insured

14   location?

15       A    I don't believe it does.

16       Q    Does the application for insurance ask

17   how many bathrooms are at an insured location?

18       A    I do not believe it does.

19       Q    Does the application for insurance ask

20   how many families reside at an insured location?

21       A    I don't believe it does.

22       Q    Does the application for insurance ask

23   how many gas meters are at an insured location?

24       A    No.

25       Q    Does an application for insurance ask

JAMES LAMBERT

41

1

2    how many electric meters are at an insured

3    location?

4        A     No.

5        Q     Does the application for insurance ask

6    if there's a certificate of occupancy for the

7    insured location?

8        A     No.

9        Q     As part of the underwriting process,

10   does anyone inquire as to certificate of occupancy

11   at an insured location?

12       A     No.

13       Q     Does the application for insurance ask

14   how many sinks are at an insured location?

15       A     No.

16       Q     Do you have any understanding as to the

17   window requirements for a bedroom in the City of

18   New York?

19       A     I do not.

20          MR. AGULNICK:  Withdrawn.

21       Q     Do you have any understanding as to the

22   legal requirements for a room to constitute a

23   bedroom in the City of New York?

24       A     No.

25       Q     Do you have any understanding as to the

JAMES LAMBERT

42

```
 1
 2     legal requirements for space to constitute a
 3     kitchen capable of use in the City of New York?
 4          A     No.
 5          Q     As far as Union Mutual and RoundHill
 6     Express is concerned, is there any difference
 7     between an apartment unit and an apartment?
 8          A     No.
 9          Q     I'm going to refer you to Bates stamp
10     23.  I'm going to scroll through the photographs,
11     scrolling to 24.
12                (Attorney scrolling.)
13          Q     The photo sheets end at Bates stamp 36.
14                Now are you able to look at the
15     photograph in 36 and tell me if based upon what you
16     see in the photograph -- and I'll make it bigger --
17     does this rear staircase indicate any risk --
18                MR. BORON:  Objection to form.
19          Q     -- or hazard?
20                MR. AGULNICK:  I'll rephrase.
21          Q     If you look at this photograph on Bates
22     stamp 36, looking at this photograph, based upon
23     your experience, can you tell if the staircase
24     poses any hazard?
25          A     From this photograph I cannot.
```

JAMES LAMBERT

43

1

2          Q       I'm going to show you the photograph on

3     page 35.

4                  Looking at this photograph, does this

5     appear to be the same hot water heater and heating

6     equipment that you viewed in Plaintiff's Exhibit 1?

7          A       I have no idea.  This photograph is so

8     dark, I can't even see if there's heating equipment

9     in there.

10         Q       I'll stop at page Bates stamp 33.

11                 Have you ever seen this photograph

12    before?

13         A       Not to my knowledge.

14         Q       Did you ever discuss this photograph

15    with anyone before?

16         A       I have no independent recollection of

17    this photograph at all.

18         Q       Again, prior to testifying here today,

19    you've never reviewed the claim file?

20                 MR. BORON:  Objection to form.

21         A       I did not review this claim file in

22    preparation for this examination.

23         Q       Did you review this claim file for any

24    other purpose?

25         A       Not to my knowledge.

JAMES LAMBERT

44

1

2          Q      I'm going to show you the photo, the

3    top photo on 33.

4                 Can you tell me what this photograph

5    depicts?

6          A      No, I cannot.  I see some boxes.

7          Q      Do you see a window in this photograph?

8          A      This photograph shows two walls with

9    material stacked in front of them.  I don't know

10   what's behind those materials, but there's no

11   evident window.

12                MR. AGULNICK:  Just give me one moment.

13                (Pause.)

14         Q      At this time I'm going to show you

15   what's going to be marked as Plaintiff's Exhibit 3.

16   This is a ten-page document that I'm going to

17   scroll through.

18                (Plaintiff's Exhibit 3, copy of

19          DEFENDANT'S OBJECTIONS AND RESPONSES TO

20          PLAINTIFFS' FIRST DEMAND FOR INTERROGATORIES

21          dated March 16, 2021, was marked for

22          identification.  Exhibit retained by counsel.)

23         Q      Sir, do you recognize the document

24   marked as Plaintiff's Exhibit 3?

25         A      I recognize that this is headed as

JAMES LAMBERT

45

```
1
2    response to interrogatories, I recognize my
3    signature on the document.  I don't have any
4    particular independent recollection of this
5    document.
6           Q     Do you have any recollection of reading
7    this document?
8           A     As I sit here today, no.
9           Q     Did you answer questions that were
10   posed by plaintiff in the form of demand for
11   interrogatories?
12               MR. BORON:  Objection as to form.
13          A     I don't understand the question.
14          Q     Did you ever review a document that was
15   entitled PLAINTIFFS' DEMAND FOR INTERROGATORIES?
16          A     I have no recollection of that.
17          Q     Can you read the first question and the
18   response, please?
19          A     State the name, address and title of
20   the person who is answering these interrogatories.
21               RESPONSE: James Lambert.
22          Q     And you don't have a recollection of
23   answering these interrogatories; is that correct?
24               MR. BORON:  Objection to form.
25          A     As I sit here, no.  I'm not denying
```

1

2     that's my signature, though.

3          Q     No.  We'll get to that.

4               (Pause.)

5          MR. AGULNICK:  Eric, just as a matter

6     of housekeeping, the witness gave a P.O. box

7     as an address.  Generally speaking, in the

8     event we need to serve a subpoena, we

9     typically need a physical address.  That said,

10    I don't have a compelling need to have a

11    physical address if your office would accept a

12    subpoena on his behalf in the event he leaves

13    RoundHill Express.

14          MR. BORON:  Scott, you're raising a

15    hypothetical that doesn't exist in this case,

16    but we'd be happy to talk to you to avoid

17    motion practice if it comes to the point where

18    you are wanting to serve somebody and you

19    don't have their personal address and they

20    were once affiliated with Union Mutual or

21    RoundHill.  We can then discuss.

22          MR. AGULNICK:  Well, the issue is not

23    hypothetical.  Generally speaking, when we ask

24    for a business address, a P.O. box is not a

25    business address.

JAMES LAMBERT

47

1

2          Is there an alternative business

3      address that can be provided that solves the

4      issue?

5          MR. BORON:  Well, no, it doesn't

6      because you're not going to be serving

7      Mr. Lambert, he's our client, we're defending

8      Union Mutual in the lawsuit, so we're not

9      going to be allowing our witnesses to be

10     served by you when we represent them.

11         MR. AGULNICK:  All right, your position

12     is noted.  Our position is that we're entitled

13     to a physical address, but there's certainly

14     no need to argue further on the issue.

15         Q     Can you read the third question and the

16     response?

17         A     Set forth the name, title, employer of

18     the person who rendered any coverage determination

19     with regard to the Subject Claim.

20         RESPONSE:  James Lambert.

21         Q     Did you render coverage determination

22     with regard to the claim of the Lees?

23         A     I don't have an independent

24     recollection of that, but based on the answer to

25     that question, I would presume that I did.

JAMES LAMBERT

48

1

2      Q      Is there any medical or physiological

3      reason or basis which would impair your ability to

4      recollect such things?

5              MR. BORON:  Objection as to form.

6              What do you mean by "such things,"

7      Scott?

8              MR. AGULNICK:  Okay.

9      Q      Mr. Lambert, can you read the date on

10     this document?

11     A      March 16, 2021.

12     Q      Are you aware of any medical or

13     physiological reasons why you would have difficulty

14     recollecting answering questions as of March 16,

15     2021?

16             MR. BORON:  Objection as to form.

17     A      I am 65 years old and I'm very busy and

18     I find it quite reasonable that I might not

19     remember something specific that I did more than a

20     month ago.  I'm not denying that I answered these.

21     Q      Well, reading these responses, does

22     that refresh your recollection as to whether you

23     ever reviewed the claim file in this case?

24     A      It does not.

25     Q      As you sit here today, you do not know

JAMES LAMBERT

49

1

2    what the coverage determination of the Lees' claim

3    was, correct?

4         A     As I sit here today, I have no

5    independent recollection of the coverage

6    determination here.

7         Q     Can you please read the question and

8    answer for number six?

9         A     Question six:  Set forth the factual

10   basis upon which Defendant relied to deny or

11   decline any portion of the Subject Claim.

12                RESPONSE:  Plaintiffs misrepresented

13   facts.

14        Q     Is that the position of RoundHill and

15   Union Mutual?

16                MR. BORON:  Objection as to form.

17        A     I read you the response and that

18   question.  Plaintiffs misrepresented facts.

19        Q     I'm asking you is that the position of

20   RoundHill and Union Mutual, that plaintiffs

21   misrepresented the facts?

22                MR. BORON:  Objection as to form.

23        A     I have repeatedly stated that I have no

24   independent recollection of this claim and so I

25   can't answer that question.

JAMES LAMBERT

50

1

2          Q       As of March 16, 2021, did you have an

3     independent recollection of this claim?

4          A       I believe yes.

5          Q       So you believe at some point you did

6     know about the claim?

7          A       Oh, absolutely.

8          Q       Reviewing this document, you believe at

9     some point you reviewed the claim file in this

10    claim?

11         A       No, that is not necessarily so.  I

12    could have had discussions with the claims adjuster

13    on the file.

14         Q       Can you read the question and answer

15    for number seven, please?

16         A       Set forth whether defendant adjusted

17    the loss, irrespective of the coverage

18    determination.  If so, set forth each Coverage A,

19    B, C, and D:

20               A.  The replacement cost adjusted by

21    Defendant;

22               B.  The actual cash value adjusted by

23    the Defendant;

24               C.  The recoverable depreciation

25    adjusted by the Defendant.

JAMES LAMBERT

```
1
2        Q      Now can you read the response?
3        A      RESPONSE:  Union Mutual objects to this
4   interrogatory on the basis of it being unduly vague
5   and ambiguous.  It is unclear what the
6   interrogatory's reference to "Coverage A, B, C, and
7   D" concerns.  Subject to and without waiving this
8   objection, Union Mutual provides the following
9   response.
10                Adjustment was made only under the
11  Commercial Property Coverage:
12                A.  $113,001.5
13                B.  $108,640.87.
14                C.  $4,360.18
15       Q      Do you know what Coverage A is on an
16  insurance policy?
17                MR. BORON:  Objection as to form.
18       A      No, I don't adjust property claims.
19       Q      Are you familiar with the coverages on
20  a Union Mutual policy?
21                MR. BORON:  Objection as to form.
22                MR. AGULNICK:  I'll rephrase it.
23       Q      With regard to the Lees' policy, are
24  you familiar with what the coverages are?
25       A      The property coverages?
```

1

2          Q       Yes.

3          A       No.

4          Q       So do you know what Coverage A coverage

5    in the Lees' policy covers?

6          A       No.

7          Q       Do you know if Coverage A under a Union

8    Mutual policy covers the dwelling?

9          A       I don't know.

10         Q       Do you know if Coverage C under a Union

11   Mutual policy covers the contents?

12         A       I don't know.

13         Q       Do you know what Coverage B or Coverage

14   D covers?

15         A       I do not know.

16         Q       So on A where it says $113,001.50, what

17   was that the adjustment for?

18         A       If you will scroll up, I'm working on

19   the assumption that the response to A relates to A

20   above, the replacement cost adjusted by defendant.

21         Q       But the replacement cost for what;

22   dwelling, contents, other structures, something

23   else?

24         A       I don't know.

25         Q       What about B?

1

2        A       I'm assuming that refers to B above,

3   where you request the actual cash value adjusted by

4   the defendant.

5        Q       But as you read this question and

6   answer, you don't know what coverages it's

7   referring to?

8        A       That's correct.

9                MR. BORON:  Objection as to form.

10       Q       So you don't know if it's contents, if

11  it's dwelling or something else?

12       A       That's correct.

13       Q       Can you read the question and answer

14  for number 15?

15       A       Question 15:  Set forth whether

16  Defendant claims there was a stove connected in the

17  basement of the Subject Premises.

18                RESPONSE:  Yes.

19       Q       What is that response based upon?

20       A       I have no independent recollection of

21  that.

22       Q       You have no independent recollection of

23  what you based your response on?

24       A       That's correct.

25       Q       Have you ever seen a document that you

1

2    can recall which indicates that there was a stove

3    connected in the basement of the subject premises?

4             MR. BORON:  Objection to form.

5      A    Is that question limited to this claim?

6      Q    Yes.

7      A    In the course of this examination, you

8    scrolled through a series of photographs, one of

9    which I thought referenced a basement kitchen and

10    showed a stove or oven, so there's that.

11      Q    Well, did you review that photograph

12    prior to giving your answer in these responses to

13    interrogatories?

14      A    I have no independent recollection of

15    what took place.

16      Q    Apart from that photograph, are you

17    aware of any other information which would indicate

18    that that photograph was actually connected in the

19    basement of the subject premises?

20             MR. BORON:  Objection as to form.

21      A    I have no independent recollection of

22    that.

23      Q    Did you ever speak with Mr. Beltrani as

24    to whether he performed any investigation as to

25    whether that stove was actually connected in the

1

2     basement of the subject premises?

3          A     I have no independent recollection of

4     that.

5          Q     Do you know if the stove that you're

6     referencing was gas or electric or something else?

7          A     I have no independent recollection of

8     that.

9          Q     Can you read just the question number

10    17?

11         A     Question 17.  Set forth the date of

12    each inspection of the Subject Premises by

13    Defendant, including before, during, or after the

14    issuance of the Policy, setting forth:

15               A.  The name and company of the

16    individual who performed the inspection.

17               B.  Identify and annex a copy of any

18    and all inspection reports or other documented

19    generated in connection with any inspection.

20         Q     In response you stated in part:

21    Subject premises was inspected by an inspector

22    retained by RoundHill Express LLC to perform a

23    limited underwriting inspection on July 17, 2017;

24    do you see that?

25         A     I do.

JAMES LAMBERT

56

1

2      Q      Do you know if during that inspection,

3   the inspector was in the basement at the insured

4   location?

5      A      I do not know.

6      Q      Is the term "limited underwriting

7   inspection" as used by you in your response a term

8   of art or were you just indicating that the

9   inspection was limited in some way?

10             MR. BORON:   Objection as to form.

11      A      The underwriting inspections that we do

12   focus entirely upon the inspector taking

13   photographs of certain aspects of the risk being

14   insured and indicating on those photographs whether

15   there are issues or whether they're clean.

16             An inspection of that nature is

17   significantly smaller in scope than an inspection

18   that might be produced by an outside firm that does

19   underwriting inspections for insurance companies.

20   The limited refers to that distinction.

21      Q      At any time did you inquire as to

22   whether the inspector was physically in the

23   basement at the insured location on July 17, 2017?

24      A      I have no recollection of that.

25      Q      In reviewing the photographs of the

JAMES LAMBERT

57

1

2      inspection of 2017, did you formulate any opinion

3      as to whether the inspector was in the basement of

4      the insured location at that time?

5           A     I did not.

6           Q     As you sit here today, have you

7      formulated an opinion as to whether the inspector

8      was in the insured location basement --

9           A     I have not.

10          Q     -- as of July 17, 2017?

11               If the heating system and the hot water

12     system were located in the basement, would that

13     lead you to believe that the inspector was in the

14     basement as of the time of the inspection?

15               MR. BORON:  Objection as to form.

16          A     The inspection report that we reviewed

17     earlier showed a heating system and water heater.

18     If those were in the basement, then the inspector

19     was in there to take pictures of them.

20          Q     If the gas meters were located in the

21     basement of the insured location, would the

22     existence of photographs of those gas meters as of

23     July 17, 2017 indicate that RoundHill's inspector

24     was physically in the basement?

25          A     Yes.

JAMES LAMBERT

58

1

2      Q      If the electric meters were located in

3   the basement at the insured location, would the

4   existence of photographs of those electric meters

5   as of July 17, 2017 indicate that the inspector was

6   in the basement?

7      A      Yes.

8      Q      Was Mr. Beltrani ever provided with

9   those photographs, whether in a report or not, of

10   the inspection of 2017?

11      A      I have no independent recollection on

12   that question.

13      Q      Scroll down to page ten of ten, is the

14   last page.

15            Can you read the paragraph contained

16   therein immediately above your signature?

17      A      JAMES LAMBERT, being duly sworn,

18   deposes and says:  That he is the President of

19   Roundhill Express, LLC, third-party administrator

20   for, and agent of, Defendant Union Mutual Fire

21   Insurance Company; that he has read the foregoing

22   Objections and Responses to Plaintiffs' First

23   Demand for Interrogatories and knows the contents

24   thereof; and verifies the responses contain the

25   responsive available to the defendant.

JAMES LAMBERT

59

1

2      Q      Is that your signature above the name

3   JAMES LAMBERT?

4      A      That is.

5      Q      As of the time you gave these answers

6   to the interrogatories, did you know the contents

7   thereof at that time?

8            MR. BORON:  Objection as to form.

9      A      We are referring to the contents of

10   this document, correct?

11      Q      What was your understanding of what you

12   signed?

13      A      That I signed something saying I had

14   read and understood the contents of this document.

15      Q      Okay.

16            At the time you signed this document,

17   were you able to verify that the responses were

18   true and complete, to the best of your knowledge at

19   that time?

20            MR. BORON:  Objection as to form.

21      A      One, that language is not the language

22   above my signature.

23      Q      No, I'm asking the question.

24      A      Oh.

25            Since I have no independent

JAMES LAMBERT

60

1

2   recollection of what was in my mind at the time I

3   signed that document, I'm unable to comment on that

4   question.

5       Q    When you signed this document, was it

6   your understanding that you were verifying the

7   answers contained in the response?

8       A    The language in the paragraph is that I

9   verified the responses contain the responsive

10   information available to the defendant and when I

11   signed it, I believed that to be true.

12         MR. AGULNICK:  Would now be a decent

13      time to take like a ten-minute break, would

14      that be okay?

15         MR. BORON:  Okay.

16         (Short recess taken.)

17       Q    Sir, Mr. Beltrani, he's an independent

18   contractor, correct?

19       A    Yes.

20       Q    Do you have any recollection of ever

21   speaking with Mr. Beltrani about the claim of the

22   Lees?

23       A    I have no recollection of that.

24       Q    Who was the in-house adjuster at

25   RoundHill that handled this file?

JAMES LAMBERT

61

1

2      A      I don't know, but I saw in the claim

3   file as you were scrolling through the name

4   Ernestine, so it's possible it was Ernestine

5   Gorham.

6      Q      Is Ernestine Gorham still with

7   RoundHill?

8      A      Yes.

9         MR. AGULNICK:  Sir, at this time, with

10   all rights reserved, I have no further

11   questions.  Thank you.

12         (Time noted: 3:05 p.m.)

13

14         _____

15                    JAMES LAMBERT

16   Subscribed and sworn to before me

17   this _____ day of _____, 2021

18   _____

19            NOTARY PUBLIC

20

21

22

23

24

25

JAMES LAMBERT

62

1

2                          E X H I B I T S

3

4     PLAINTIFF'S EXHIBITS:

5

6     EXHIBIT     EXHIBIT                         PAGE
      NUMBER      DESCRIPTION
7        1        Copy of five-page
                  RoundHill Express Inspections
8                 report
                  Bates stamped 000361 - 000365    15
9
         2        Copy of claim file
10                Bates stamped 000001 - 00000216   28

11       3        Copy of DEFENDANT'S OBJECTIONS
                  AND RESPONSES TO PLAINTIFFS'
12                FIRST DEMAND FOR INTERROGATORIES
                  dated March 16, 2021              44
13

14

15

16

17

18

19

20

21

22

23

24

25

JAMES LAMBERT

63

1

2                          I N D E X

3

4    EXAMINATION BY                          PAGE
     MR. AGULNICK                              4
5

6

7

8    INFORMATION REQUESTED                     25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JAMES LAMBERT

64

1

                        C E R T I F I C A T E

2

3

4    STATE OF NEW YORK   )
                         : SS.:
5    COUNTY OF SUFFOLK   )

6

7

8           I, JOANN O'LOUGHLIN, a Notary Public for

9    and within the State of New York, do hereby

10   certify:

11          That the witness whose examination is

12   hereinbefore set forth was remotely sworn and that

13   such examination is a true record of the testimony

14   given by that witness.

15          I further certify that I am not related

16   to any of the parties to this action by blood or

17   by marriage and that I am in no way interested in

18   the outcome of this matter.

19          IN WITNESS WHEREOF, I have hereunto set

20   my hand this 4th day of June, 2021.

21

22

                        JOANN O'LOUGHLIN

23

24

25

JAMES LAMBERT

$10864087 51:13

$1130015 51:12

$11300150 52:16

$436018 51:14

& 2:4,8 3:15 4:25 (4)

000001 28:8 62:10

00000216 28:8 62:10

000361 16:2 62:000361

000365 16:2 62:000361

216page 28:4

27th 5:7 8:17 9:2 10:22 17:10 25:13 (6)

4th 64:20

50unit 39:10,11,15

ability 5:23 48:3

able 14:2 25:15,21 26:3,7,13 39:7,16 42:14 59:17 (10)

about 12:19 19:12,15 20:2,11,11 21:9 26:19,20 29:3 30:12 31:22 33:25 37:4 50:6 52:25 60:21 (17)

above 52:20 53:2 58:16 59:2,22 (5)

aboveentitled

1:17

absolutely 12:16 50:7

accept 46:11

acceptable 10:2,4

access 21:21,25 23:13

accommodate 5:17

accompanying 24:2

action 1:17 5:2 32:5 64:16 (4)

actual 11:24 50:22 53:3

actually 54:18,25

addition 7:13

additional 19:14

address 4:21 19:13 24:22 45:19 46:7,9,11,19,24,25 47:3,13 (12)

adjust 7:20 27:16 51:18

adjusted 50:16,20,22,25 52:20 53:3 (6)

adjuster 30:4,7 50:12 60:24 (4)

adjusting 27:20 30:5

adjustment 7:14,18,24 27:11,13 29:25 32:20 51:10 52:17 (9)

administer 3:11

administrator 58:19

advising 36:9

affiliated 46:20

after 3:15 10:6,17 55:13 (4)

afternoon 4:23

again 28:13 37:19,19 43:18 (4)

against 1:7 5:3

agency 7:10

agent 6:20 23:10 58:20

ago 16:12 48:20

agree 24:25 39:9

agreed 3:5,18

agreement 4:9

agulnick 2:4,6 4:13,18,24,25 12:2,6,8,11,16 15:20 16:4,12,15 24:17 25:9 27:24 29:14 35:5 41:20 42:20 44:12 46:5,22 47:11 48:8 51:22 60:12 61:9 63:4 (31)

allowing 47:9

allows 18:13 19:25

already 20:18

also 2:13 14:10

alternative 47:2

am 14:8 20:25 28:2 30:18 31:2 39:17 48:17 64:15,17 (9)

ambiguous 51:5

amount 8:7,12

andor 25:11

ann 1:4 5:2 8:16,22,25 11:3,7,22 12:3,21 15:3 (11)

annex 55:17

answer 9:22 11:11 35:6,7 45:9 47:24 49:8,25 50:14 53:6,13 54:12 (12)

answered 48:20

answering 45:20,23 48:14

answers 59:5 60:7

anybody 30:20

anyone 3:10 12:17 30:22 41:10 43:15 (5)

anything 15:12 20:22 21:2 30:14 32:24 (5)

apart 23:24 54:16

apartment 33:17,22 34:2,13,23 35:9,11,16,21 36:3,25 37:4,8,20,24 38:2, 4,7,9,13,17,18,24 39:7,10,12,15,22

40:2,5,9 42:7,7 (33)

apartments 7:7 34:11,22 35:2,4,24 37:18,23 38:10,21 (10)

appear 43:5

appears 17:8 22:4 29:21

application 10:7,11 20:14 33:18,23 36:7,25 37:21 40:12,16,19,22,25 41:5,13 (15)

applications 34:20

appointed 6:20

appointment 19:21 20:3 23:8

appointments 19:23 20:8

approaching 6:10

approximately 6:8

ardsley 4:22

are 3:19 4:7 5:9,13 6:16 8:3 9:8 10:20 11:8,24 12:7 15:10 16:6 17:22 18:19,20 19:9 21:4,8,22,22 23:18 24:12,16 25:14,19,21 26:3,6,13,21,23,24 27:19 29:10,12 30:20 31:25 32:17 34:2,9,22,24 35:24 36:7,8 37:23,24 38:3,10,19,21

ALL STAR REPORTERS 1-800-329-9222

40:13,17,23
41:2,14 42:14
46:18 48:12
51:19,23,24 54:16
56:15 59:9 (66)

**area** 7:6 19:24
20:6 31:12,14 (5)

**argue** 47:14

**arising** 7:21

**around** 7:7

**art** 56:8

**ask** 5:4,18 16:4
23:4 24:18 28:12
31:4 33:25 34:21
35:23 36:14
37:4,19 38:9,21
40:13,16,19,22,25
41:5,13 46:23 (23)

**asked** 31:2

**asking** 49:19
59:23

**aspects** 56:13

**assembled** 17:15
26:17

**assignment**
19:11,17,20

**associated** 8:4

**assume** 6:5

**assuming** 53:2

**assumption**
52:19

**attorney** 5:15
16:23 42:12

**attorneys** 2:4,9
3:6

**audit** 26:25 27:3

**authority** 7:3,5

**authorized** 3:10

**automatically**
18:22

**available** 16:9
26:24 58:25 60:10
(4)

**avoid** 46:16

**aware** 10:20
15:10,14 48:12
54:17 (5)

**b** 4:15 50:19,22
51:6,13 52:13,25
53:2 55:17 62:2
(10)

**back** 18:2 22:3
35:5

**based** 11:8 13:7
26:6,12 42:15,22
47:24 53:19,23 (9)

**basement**
22:8,13 31:12,14
32:7,14 40:8
53:17 54:3,9,19
55:2 56:3,23 57:3,
8,12,14,18,21,24
58:3,6 (23)

**basis** 48:3 49:10
51:4

**bates** 15:25 28:8
29:11,13,18,20
31:5 42:9,13,21
43:10 62:10 (12)

**bathrooms** 40:17

**bearing** 39:20

**because** 11:12
16:8 25:2 30:18

31:15 34:3 39:9
47:6 (8)

**bedroom**
41:17,23

**before** 1:15,19
3:10,12 6:6 16:4
17:3,5,7 21:5
23:15 43:12,15
55:13 61:16 (15)

**beginning** 15:5

**behalf** 1:16
7:4,17,21,24 20:24
22:14 24:8 26:15
46:12 (10)

**behind** 44:10

**being** 4:5,11
13:5,9 18:16,17
22:18 51:4 56:13
58:17 (10)

**belief** 35:8

**believe** 12:11,22
20:18 22:23 26:18
27:23 30:17,23
31:19,20 36:15,19
37:13 40:15,18,21
50:4,5,8 57:13
(20)

**believed** 60:11

**beltrani**
29:7,21,22,24
30:7,10,16 32:12
54:23 58:8
60:17,21 (12)

**best** 5:23 59:18

**between** 3:6 7:11
29:7 34:8 40:8
42:7 (6)

**beyond** 20:19

**big** 16:16

**bigger** 42:16

**bind** 7:4 10:5

**binds** 23:4

**bite** 5:16

**blood** 64:16

**board** 21:6

**book** 6:22,25 7:2

**booked** 19:21
20:8

**booking** 19:22

**boron** 2:11 4:14
10:23 11:10,23
12:4,7,9,13 14:17
16:10,13 22:15
24:22 26:11 27:6
29:9,19 31:18
32:9 34:7,14
36:12,21 37:10,16
38:14 39:23 40:10
42:18 43:20
45:12,24 46:14
47:5 48:5,16
49:16,22 51:17,21
53:9 54:4,20
56:10 57:15
59:8,20 60:15 (49)

**bottom** 29:11

**boulevard** 2:5

**bound** 8:3
10:17,18 13:7 (4)

**box** 4:22 46:6,24

**boxes** 44:6

**break** 5:14,20
60:13

**bring** 21:6

**broken** 22:18

**broker** 10:9
12:24 13:6 23:4
(4)

**brokerinsured**
18:25

**brokers** 9:19

**brought** 5:3

**buffalo** 2:10

**building** 2:1300
22:2,3,4
23:9,11,14 31:21
35:25 37:5,18,23
38:10,22
39:10,12,13,15
(18)

**buildings** 7:5,8

**business** 6:19 7:2
9:5,19 27:14,22
28:19,21 29:2
30:6 46:24,25
47:2 (13)

**busy** 48:17

**button** 10:11

**c** 2:2 50:19,24
51:6,14 52:10
64:2,2 (8)

**call** 24:21 31:23

**called** 14:21
29:10

**calls** 23:7

**can** 5:20 6:25
9:4,16,21 10:5,6
12:14 15:22
17:11,14 18:17
20:19 22:10 23:2
30:4,19 31:23
33:3 35:5,19
36:15,22 37:2,13
42:23 44:4 45:17

JAMES  LAMBERT

67

46:21 47:3,15
48:9 49:7 50:14
51:2 53:13 54:2
55:9 58:15 (39)

can't  30:13 43:8
49:25

cannot  5:21
20:20 26:10 42:25
44:6 (5)

capability  35:15

capable
35:10,12,19 36:5,8
39:4 42:3 (7)

captures  23:21

carrier's  16:6

case  1:6 12:15
25:6,7 30:11,24
36:17 46:15 48:23
(9)

cases  6:12

cash  50:22 53:3

casualty  6:21

cause  10:15

certain  19:11
56:13

certainly  23:16
33:13 36:17 47:13
(4)

certificate
41:6,10

certification  3:7

certify  64:10,15

change  8:7,11
39:13

charge  34:10

city  5:8 6:22 7:7
8:17 39:17
41:17,23 42:3 (8)

civil  1:6

cj  16:5,7

claim  8:21
11:3,5,7,13,15,16
15:3,10,11 27:11,1
3,14,16,17,20
28:6,7,14,18 29:3
30:13,14
32:20,23,24
33:6,7,10,11,12
43:19,21,23
47:19,22 48:23
49:2,11,24
50:3,6,9,10 54:5
60:21 61:2 62:2
(48)

claims  6:12,14 7:
14,15,18,18,20,24
8:5 28:6,22,25
30:2,15 50:12
51:18 53:16 (17)

clarity  12:23

clean  17:24 18:3,
5,7,8,8,9,18,19,22
19:4 25:19 26:2
56:15 (14)

clear
37:5,17,19,22 (4)

clearly  19:12

clicks  10:11

client  47:7

code  39:18

come  8:15

comes  19:11
46:17

comment  17:23

37:11 60:3

comments  17:23
18:21

commercial
51:11

commission
8:2,3,6,11 (4)

companies  56:19

company  1:8
6:21 24:13 55:15
58:21 (5)

compelling  46:10

compensated
7:23

complete  24:5
59:18

computer  10:13

concerned  34:24
38:12,19,25 42:6
(5)

concerns  21:23
51:7

confined  32:23
33:7

connected  53:16
54:3,18,25 (4)

connecticut
29:23

connection  8:21
9:11 10:14 33:23
34:19 55:19 (6)

consider  34:25

considered  39:25

considering  25:5

consist  37:24

constitute
38:13,16 41:22
42:2 (4)

constitutes
34:12,23 37:20

consult  5:14

consultants
29:8,21,25 30:7,10
(5)

contact  19:14
23:6

contain  58:24
60:9

contained  14:5
23:25 32:24 58:15
60:7 (5)

contents
52:11,22 53:10
58:23 59:6,9,14
(7)

contract  7:10

contractor  60:18

contractors
13:17 24:11

cook  39:7

cooking  38:19,25
39:4,14 (4)

copy  3:13,16
15:24 20:13 28:7
30:22 44:18 55:17
62:7,2,11 (11)

corner  29:11

correct
11:9,17,18 15:19
28:14 31:15
33:2,8 45:23 49:3

53:8,12,24 59:10
60:18 (15)

correspondence
24:3

cost  8:4 50:20
52:20,21 (4)

could  13:4,6,20
15:6 24:15 36:19
40:2 50:12 (8)

counsel  3:16 5:13
16:3 24:19
28:10,13,23 44:22
(8)

county  64:5

course  9:4
27:14,22 28:19,21
29:2 30:6 54:7 (8)

court  1:2 3:12
4:2,4 5:21 34:16
(6)

courts  35:4 37:7

coverage  9:25
10:5 13:7 15:2
47:18,21 49:2,5
50:17,18
51:6,11,15
52:4,4,7,10,13,13
(19)

coverages  13:4
51:19,24,25 53:6
(5)

covers
52:5,8,11,14 (4)

credentials  9:20

cursory  17:12

d  3:2 50:19 51:7
52:14 63:2 (5)

dark  43:8

date 5:6 15:3 17:18 20:6 26:19,20 27:4 48:9 55:11 (9)

dated 44:21

dates 19:23,24

day 20:9 39:3 61:17 64:20 (4)

days 3:15

deal 25:4,4

deceive 5:10

decent 60:12

decision 34:16

decline 49:11

deem 15:22

defend 27:16

defendant 1:9,16 2:9 49:10 50:16,21,23,25 52:20 53:4,16 55:13 58:20,25 60:10 (15)

defendant's 44:19 62:11

defending 47:7

define 35:4

definition 33:17,22 34:12,15, 16,17,18,21 35:3,21,23 38:8 (12)

demand 44:20 45:10,15 58:23 62:12 (5)

demarco 2:13

denied 15:11

deny 49:10

denying 45:25 48:20

department 14:22 31:4

depending 8:7,11

depends 20:5

depicts 44:5

deposes 58:18

deposition 3:8,9,13 4:5 15:14 (5)

depositions 6:6,8

depreciation 50:24

description 19:10 20:17 38:15 62:6 (4)

designed 5:9

details 13:20

determination 15:2 39:20 40:4 47:18,21 49:2,6 50:18 (8)

difference 40:8 42:6

different 13:4 36:16,18 37:7,8 (5)

differently 36:16

difficulty 48:13

dint 15:13

disagree 29:14

discovery 25:8

discuss 43:14 46:21

discussed 31:12

discussion 27:25

discussions 50:12

dispute 15:18

distinction 34:8 56:20

distribute 30:19

district 1:2,2

document 15:21 16:16,21,25 17:3,7 19:17,20 28:4,5 31:9 44:16,23 45:3,5,7,14 48:10 50:8 53:25 59:10,14,16 60:3,5 (25)

documentation 33:16

documented 55:18

documents 8:21 24:23 25:11 28:18,23 (5)

does 7:13,17 8:6,11 10:15 13:22,25 17:17 20:16 22:10,24 24:2 29:22 33:15 34:5 35:12 37:24 38:18,23 39:19 40 :3,12,15,16,18,19, 21,22,25 41:5,10,13 42:17 43:4 48:21,24 56:18 (37)

doesn't 9:11 34:17 39:13 46:15 47:5 (5)

done 9:5,9,17 21:8 23:2 25:8 28:15 (7)

down 5:21 17:21 20:25 25:14,18,24 31:5,6 58:13 (9)

download 20:7,9

dozen 6:10,11

draw 34:8

dropdown 18:13

duly 58:17

during 22:25 55:13 56:2

dwelling 52:8,22 53:11

e 2:2,2,6 3:2,2 4:15,15 62:2 63:2 64:2,2 (11)

each 50:18 55:12

earlier 16:6 57:17

eastern 1:2

easy 30:21

eat 5:16

educated 26:7

effect 3:11,14

electric 18:8 41:2 55:6 58:2,4 (5)

electrical 18:7 21:21 22:5 25:19 (4)

electronic 30:21

elements 37:25 38:3,6,12,16 (5)

else 14:7,23 15:12,12 17:20 19:19 29:13 34:6 52:23 53:11 55:6 (11)

elsewhere 14:10,11

email 18:24

employed 6:16

employee 12:25 13:5,8

employer 47:17

enable 9:20

end 42:13

entire 13:2

entirely 56:12

entities 13:23

entitled 45:15 47:12

entity 14:21,24

entrance 31:12,14,17

entrances 32:2

equipment 1:18 4:6 26:8 43:6,8 (5)

eric 2:11 16:5 29:14 46:5 (4)

ernestine 61:4,4,6

especially 25:5

esq 2:6,11,13

essentially 17:8 18:14

even 39:12 43:8

event 46:8,12

ever 23:15 32:13 43:11,14 45:14 48:23 53:25 54:23 58:8 60:20 (10)

every 20:7 39:3

everything 19:4 36:22

evident 44:11

exactly 14:8 19:16

examination 1:15 4:18 43:22 54:7 63:4 64:11,13 (7)

examined 4:17

example 18:15 22:17

except 3:19

exhibit 15:23,24 16:3,18 20:23 23:25 28:3,7,9 29:6,20 43:6 44:15,18,22,24 62:6,6 (18)

exhibits 16:5 62:4

exist 46:15

existence 57:22 58:4

expectation 21:18,19

---

expense 8:4

experience 26:6 42:23

explain 6:25 9:16 10:6

explained 12:22

express 6:17,20 7:3 11:20 13:12 14:19,22 15:25 26:14 28:20,22 29:8 32:6 33:15 34:19 35:22 39:21 42:6 46:13 55:22 58:19 62:7 (22)

express' 6:19

extent 7:5 20:19

exterior 22:13

f 3:2 64:2

facilities 38:20,25 39:14

facts 49:13,18,21

factual 49:9

fairly 37:5

familiar 51:19,24

families 40:20

far 21:2 22:10 34:24 38:11,18,24 42:5 (7)

fears 28:13

file 11:15 14:6,9,16 18:23 19:18 26:24 27:3,20 28:6,8,14,18 29:3 30:5,8,11,15,16,19 ,23 31:3 32:19,24

---

33:6,11,12 43:19,21,23 48:23 50:9,13 60:25 61:3 62:2 (36)

files 28:22 30:20

filing 3:7

filling 36:7

fills 10:10

find 24:15 48:18

fine 2:8

finished 40:8

fire 1:8 6:21 58:20

firm 4:24 29:25 56:18

first 4:16 17:23 21:6 24:20 26:14 44:20 45:17 58:22 62:12 (9)

five 25:14,18,24,25 (4)

fivepage 15:24 16:21 62:7

focus 56:12

following 17:9 51:8

follows 4:17

force 3:14

foregoing 58:21

form 3:19 10:23 11:10,23 14:17 22:15 26:11 27:7 30:21 31:18 32:9 34:7,14 36:21 37:10 38:14 39:23

---

40:10 42:18 43:20 45:10,12,24 48:5,16 49:16,22 51:17,21 53:9 54:4,20 56:10 57:15 59:8,20 (36)

formulate 57:2

formulated 57:7

forth 47:17 49:9 50:16,18 53:15 55:11,14 64:12 (8)

forward 10:5 13:6

forwarded 16:5,7,14

four 25:18

frame 25:7

fred 1:4 4:25 8:16,22,25 11:3,7,21 12:3,20 15:3 23:15 28:6 (13)

front 17:24 22:2 44:9

fronts 29:15

function 34:10

furnace 22:6

furnished 28:5

further 3:18 21:9 24:23 47:14 61:10 64:15 (6)

gas 22:6 40:23 55:6 57:20,22 (5)

gave 33:5 46:6 59:5

generally 10:18

---

46:7,23

generated 19:9 26:19 55:19

generates 36:6

geographical 7:6

gestures 5:22

get 20:7,19 25:7 46:3 (4)

give 19:25 44:12

given 4:11 19:9 21:4,9,10 64:14 (6)

giving 54:12

go 9:20 21:7 30:3 31:3 (4)

goes 21:16

going 5:4 6:4 15:20,21 16:17,22 22:4 24:17,20,24 25:14,24 28:2,3,11,12 29:5,17 31:5 33:13 42:9,10 43:2 44:2,14,15,16 47:6,9 (29)

good 4:23

gorham 61:5,6

got 28:24

great 9:12

greenblat 2:4

greenblatt 4:25

grounds 12:5

guess 6:5 26:7

guidelines 33:16

h 62:2

habitation 39:20

hand 64:20

handle 7:20,23 30:4

handled 60:25

handling 8:5

handyman 23:11

happened 15:14

happens 10:7 27:23

happy 46:16

harry 32:11

has 7:3 58:21

having 4:16 17:5,6 28:15 39:4 (5)

hazard 31:16 42:19,24

hazardous 22:19,22 31:22

he 10:9,11 22:19,21,22 31:23 46:12 54:24 58:18,21 (10)

he's 47:7 60:17

head 5:22

headed 44:25

hear 15:5

hears 5:23

heater 26:8 43:5 57:17

heating 18:8,16,17 21:21 26:2,8 43:5,8 57:11,17 (10)

held 1:17 4:5 30:20

here 5:5,13,25 8:20 11:4 14:25 15:17 19:16 21:20 32:22 34:17 35:3 37:12 43:18 45:8,25 48:25 49:4,6 57:6 (20)

hereby 3:5 64:9

herein 3:7 4:15

hereinbefore 64:12

hereunto 64:19

hire 24:13

his 46:12

homeowner 22:25 23:9

homeowner's 23:3

hot 26:7 43:5 57:11

housekeeping 46:6

how 6:8 7:23 11:11 20:11 31:4 34:21 35:3,24 37:17,22 38:10,21 40:13,17,20,23 41:2,14 (18)

human 13:9

hundred 29:15

hurwitz 2:8

hypothetical 46:15,23

i'll 12:4,8 16:18 21:24 25:18 37:19 42:16,20 43:10 51:22 (10)

i'm 4:24 6:4 9:11 11:11 15:14,20,21 16:17,21 19:15 24:17 25:14,24 28:11,11 29:5,17 31:5 33:13 36:5 38:3 39:6 42:9,10 43:2 44:2,14,16 45:25 48:17,20 49:19 52:18 53:2 59:23 60:3 (36)

i've 20:18

idea 43:7

identification 16:3 28:9 44:22

identify 14:2 18:14,16,17 25:15,21 26:3,13 55:17 (9)

identity 13:23 14:4

illegal 34:6,9

immediately 58:16

impact 34:4

impair 48:3

important 5:24

included 20:10

includes 8:4

including 22:3 55:13

independent 10:24 11:5,12,14 13:17 15:8 17:4 20:21 24:11 27:12 29:25 33:9 43:16 45:4 47:23 49:5,24 50:3 53:20,22 54:14,21 55:3,7 58:11 59:25 60:17 (27)

indicate 17:17 20:23 22:7 30:15 32:18 42:17 54:17 57:23 58:5 (9)

indicated 28:5 31:20 37:7

indicates 19:3 20:4 21:2 25:19 31:11 54:2 (6)

indicating 14:13 18:25 56:8,14 (4)

individual 9:7 13:12 14:4 24:12 55:16 (5)

individuals 13:16

information 9:23 10:10,12 19:12,15 20:10 25:11 54:17 60:10 63:8 (10)

inhabited 39:16 40:2

inhouse 60:24

inquire 32:7 41:10 56:21

inquired 32:13

inside 25:16

inspected 55:21

inspection 10:15,18,21 13:10,13,15,19 14:3,5,14 16:21 17:9,9 19:2,8,14,22 20:12,24 21:3,5,11,17,23 22:24 23:2,5,8,11,18 24:2 26:18,21,23 31:13,24 32:3,13 55:12,16,18,19,23 56:2,7,9,16,17 57:2,14,16 58:10 (52)

inspections 13:18,24 14:19,22 15:25 24:7,12 56:11,19 62:7 (10)

inspector 18:20 19:7 20:5,13,16 21:5,7,16 22:14,18 23:17 31:22 55:21 56:3,12,22 57:3,7,13,18,23 58:5 (22)

inspectors 18:12 19:24 20:7 21:13 31:25 (5)

instructed 23:18 31:25

instructions 6:2 21:4,9,10 (4)

insurance 1:8 33:19,23 40:16,19,22,25 41:5,13 51:16 56:19 58:21 (12)

insured 10:16 13:10,14 19:25 22:8,12 25:16,22 26:4,9 27:16,21 32:2,14 40:13,17,20,23 41:2,7,11,14

56:3,14,23 57:4,8,21 58:3 (29)

interested 64:17

interior 22:5

internal 30:4

interpret 36:13

interpretations 36:18

interpreted 36:16,20,22 37:2,8,13 (6)

interprets 36:10

interrogatories 44:20 45:2,11,15,20,23 54:13 58:23 59:6 62:12 (10)

interrogatory 51:4

interrogatory's 51:6

into 18:23 22:4

investigate 27:15

investigating 27:19

investigation 7:15,19 27:9,11 54:24 (5)

involve 35:15

involved 9:6 13:2,6,9 30:25 (5)

involvement 8:24 13:8

irrespective

50:17

is 3:5,18 4:2,5,11,19,21,24 5:18,24 6:18,20 7:5,10,23 9:5,8,13,14,21 10:2,4,7,9,12,13,17,1 7 11:9,16,18,19 13:18 14:9,10,15,1 8,19,21,22 15:16,18,19 16:16 17:7,12,24 18:9,22,24 19:7,20,21 20:22 21:8,12,17,19,20 22:24 23:9,23 24:5 25:9 27:14 28:4 29:7,24,25 30:6,14,17 31:15 32:25 33:8,11,18,22 34:10,18,19 35:3,8,18,21 36:2,24 37:11,20,22 38:5,12,23,24 39:4,22,25 40:4 42:6,6 43:7 44:16,25 45:20,23 46:22,24 47:2,12,12 48:2 49:14,19 50:11 51:5,15 53:19 54:5 56:6,16 58:13,18 59:2,4,21 60:8 61:6 64:11,13 (129)

island 5:8 8:17

isn't 37:9

issuance 55:14

issue 7:21 11:25 22:20 46:22 47:4,14 (6)

issued 8:25 11:21 12:3,9,20 21:13 (6)

issues 18:18 22:17 56:15

its 27:13

itself 24:25

j 4:15

james 1:15 4:20 45:21 47:20 58:17 59:3 61:14 (7)

joann 1:19 4:2 64:8,22 (4)

judge 3:12

judges 36:18

july 24:6,14 26:17 55:23 56:23 57:10,23 58:5 (8)

june 64:20

just 5:11,16 11:12 12:11,14 20:5,10 23:19 28:11 29:9,17 31:7 44:12 46:5 55:9 56:8 (16)

kept 28:25

kindly 17:11 31:7

kitchen 42:3 54:9

kitchens 40:13

know 5:11,17 8:19 11:11 12:17 13:19 14:9 15:18 16:7 17:7 18:18 20:10 23:8,12 25:2 30:10 32:5,12,16 33:11,25 35:14 44:9 48:25 50:6 51:15 52:4,7,9,10, 12,13,15,24 53:6,10 55:5

56:2,5 59:6 61:2 (41)

knowledge 11:2,6,20 12:18 13:13,19 15:2 23:16 27:2,8 28:17 29:3 30:9,12 32:22 33:7 43:13,25 59:18 (19)

knows 58:23

l 3:2,2 4:15

lambert 1:16 4:20,23 6:4 45:21 47:7,20 48:9 58:17 59:3 61:14 (11)

landlord 6:25 23:10

landlords 7:6

landlordtenant 6:23

language 59:21,21 60:8

last 18:9,15 58:14

law 4:24 36:17 40:3

lawfully 39:16 40:2

lawsuit 11:25 47:8

lead 57:13

learn 20:11

leaves 46:12

lee 1:4,4 5:2 8:17,22 9:2 11:3,7,22 12:3,21

15:3 23:15 28:6 (14)

lees 47:22 60:22

lees' 49:2 51:23 52:5

lefthand 17:22

legal 34:5,9 39:19 41:22 42:2 (5)

legality 35:16

legally 35:19

legs 5:16

let 5:11,16 33:10

liability 27:17

liberty 2:1300

like 5:14 9:24 19:9 22:17 60:13 (5)

limited 7:5 54:5 55:23 56:6,9,20 (6)

line 17:14

litigation 28:24

living 35:19

llc 6:17 55:22 58:19

located 14:6,10,11 19:18 26:9 57:12,20 58:2 (8)

location 5:7 10:16,21 13:10,14 22:9,12 25:16,22 26:4,9 27:21 32:2,8,14 40:14,17,20,23

JAMES LAMBERT

72

| | | | | |
|---|---|---|---|---|
| 41:3,7,11,14 56:4,23 57:4,8,21 58:3 (29) | 27:5,10 44:21 48:11,14 50:2 62:16 (9) | 48:18 56:18 | **n** 2:2 3:2 63:2 | 41:4,8,12,15,24 42:4,8 43:7,16 44:6,10 45:8,16,25 46:3 47:5,14 49:4,23 50:11 51:18 52:3,6 53:20,22 54:14,21 55:3,7 56:24 58:11 59:23,25 60:23 61:10 64:17 (79) |
| **locations** 23:24 | **marked** 15:22 16:2 18:19 22:20 28:3,8 44:15,21,24 (9) | **mind** 60:2 | **name** 4:2,19,23 14:24 23:5 45:19 47:17 55:15 59:2 61:3 (10) | |
| **logging** 9:20 | | **minds** 36:6 | | |
| **long** 5:7 8:17 16:12 | | **minute** 29:9 | **names** 24:14,19,21 | |
| | **marriage** 64:17 | **misrepresented** 49:12,18,21 | **narrative** 24:3 | |
| **look** 42:14,21 | **material** 35:3 44:9 | **moment** 44:12 | **nature** 6:18 56:16 | **nobody** 19:4 |
| **looking** 18:15 20:25 22:11 25:3 42:22 43:4 (6) | **materials** 44:10 | **money** 8:12 | **necessarily** 50:11 | **nods** 5:22 |
| | **matter** 34:17 46:5 64:18 | **month** 48:20 | **necessary** 38:12,16 | **none** 5:9 |
| **loss** 5:6 15:4 27:4,10 30:3 32:8 50:17 (7) | | **more** 24:6 36:20,22 37:2,14 48:19 (6) | | **normal** 27:13,22 |
| | **may** 3:9,13 19:14 29:14 (4) | | **neck** 2:11021 | **northern** 2:5 |
| **losses** 8:7 | | **most** 5:24 34:16 | **need** 25:4 46:8,9,10 47:14 (5) | **notary** 1:19 4:3,16 61:18 64:8 (5) |
| **m** 4:15,15 | **me** 5:11 14:20 16:14 24:9 30:25 31:2 33:10 42:15 44:4,12 61:16 (11) | **motion** 46:17 | | |
| **made** 16:8 27:14 37:11 51:10 (4) | | **moved** 13:6 | **never** 28:13 43:19 | **notation** 26:2,16 |
| **maintain** 13:22 | **mean** 9:16 19:4 34:16 35:12 36:10 39:2,3 48:6 (8) | **mutual** 1:8 5:3 6:12,14,21 7:4,11,18,22,25 8:8,12 12:20 13:22,25 16:19 17:19 20:24 24:8 26:15,22,24 32:6,12 33:15,24 34:24 36:3,9 38:6,11,19,24 39:21 40:13 42:5 46:20 47:8 49:15,20 51:3,8,20 52:8,11 58:20 (46) | **new** 1:2,20 2:11021,10 4:3,22 5:8 6:22 7:7 8:17 34:10 39:17 41:18,23 42:3 64:4,9 (17) | **noted** 25:9 31:22 47:12 61:12 (4) |
| **maintained** 11:8,16 14:15 28:19 (4) | | | | **notes** 24:3 30:15 |
| **maintains** 28:22 | **means** 7:2 36:3 | | | **notice** 1:18 17:22 |
| **make** 5:23 12:14 20:2,4 26:7 33:14 37:25 38:4,7 42:16 (10) | **medical** 48:2,12 | | **next** 20:9 25:25 | **now** 20:21 27:9 31:2 42:14 51:2 60:12 (6) |
| | **memorandum** 33:16 | | **night** 18:20 20:8 | |
| **managing** 23:10 | **menu** 18:13 | | | **number** 19:13 23:5 29:13 33:25 34:3,11 37:4 49:8 50:15 53:14 55:9 62:6 (12) |
| **manual** 21:12,12 | **merely** 38:21 | **mutual's** 40:4 | **no** 1:6 6:15 8:10,14,23 9:3 10:24 11:4,12,14 12:11,25 14:18,24 17:4 19:20 20:15 21:8,9,15 22:10,16 24:5 25:17,23 26:5,10 27:12 28:15 29:2 30:9,12 31:9 32:4,21 33:20 35:8,10,17,20 38:12 40:6,24 | |
| **many** 6:8 29:15 34:22 35:24 37:17,23 38:3,10,21 40:13,17,20,23 41:2,14 (15) | **messages** 23:6 | **my** 4:2,23 5:9,11 6:2 15:13 17:11 23:16 27:8 29:24 30:9 31:14 34:15,17 35:2 38:23 43:13,25 45:2 46:2 59:22 60:2 64:20 (23) | | **numbers** 29:11 |
| | **meters** 22:6,6 40:23 41:2 57:20,22 58:2,4 (8) | | | **o** 3:2 |
| **march** 5:6 15:4 | **metropolitan** 6:22 | | | **o'loughlin** 1:19 4:3 64:8,22 (4) |
| | **might** 31:20 | | | **oath** 3:11 |

JAMES LAMBERT

**object** 12:4

**objection** 10:23
11:10,23 14:17
22:15 26:11 27:6
31:18 32:9
34:7,14 36:12,21
37:10,16 38:14
39:23 40:10 42:18
43:20 45:12,24
48:5,16 49:16,22
51:8,17,21 53:9
54:4,20 56:10
57:15 59:8,20 (36)

**objections** 3:19
44:19 58:22 62:11
(4)

**objects** 51:3

**obtain** 9:23,25
24:18

**obtaining** 13:3

**occupancy** 31:6,7
41:6,10 (4)

**occupied** 7:8

**off** 27:24,25

**office** 46:11

**oh** 50:7 59:24

**old** 48:17

**once** 10:3 21:8
46:20

**one** 5:11 12:12
13:16 18:15 19:9
36:20,23,25
37:2,14 44:12
54:8 59:21 (13)

**only** 22:21 51:10

**onto** 12:24

**operate** 13:16

**opinion** 57:2,7

**opportunity**
16:24 20:2 24:20

**order** 23:7 25:6

**ordinary** 27:18
28:19,21 29:2
30:6 (5)

**original** 3:9,15
12:20

**other** 5:15 12:9
19:5 24:3 43:24
52:22 54:17 55:18
(8)

**otherwise** 26:25

**our** 9:5,5,20
10:11 12:24 18:21
26:23 28:25 30:20
31:3 47:7,9,12
(13)

**out** 8:12 19:7
21:16 24:15 30:3
31:23 36:7
39:11,13 (9)

**outcome** 64:18

**outside** 24:13
30:7 56:18

**oven** 54:10

**over** 15:18

**oversight** 22:14

**owned** 7:6

**owner** 23:9

**p** 2:2,2 3:2

**page** 25:14,18,24
29:5,10 43:3,10
58:13,14 62:6
63:4 (11)

**pages** 28:12
29:12

**paid** 8:12 14:14
15:12

**paperless** 30:20

**paragraph** 31:6
58:15 60:8

**pardon** 14:20
24:9

**part** 10:10 21:13
32:3 41:9 55:20
(5)

**partially** 15:12

**particular** 11:19
21:10 37:25 45:4
(4)

**parties** 3:6 4:9,10
64:16 (4)

**partner** 4:24

**passed** 18:25

**pause** 24:10
44:13 46:4

**pay** 7:20

**payment** 7:24
14:12,15

**pc** 2:4,8

**pending** 5:19,19
15:7

**people** 24:13,14
35:2,9 36:6,16 (6)

**perceived**
22:18,22

**percent** 29:16

**perform**

13:17,24 19:8
21:17 24:12 55:22
(6)

**performed** 9:13
10:16,21 12:19
13:13,16 14:5
20:23 22:24 32:14
54:24 55:16 (12)

**performing** 21:5

**performs** 23:17

**person** 4:12 5:24
11:19 13:18,23
14:2,14 18:23
19:6 23:6,9 27:19
35:18 45:20 47:18
(15)

**personal** 11:2,20
12:18 35:2,8
46:19 (6)

**personally** 34:25

**persons** 27:19

**pertain** 5:5 34:5

**pertaining** 16:20

**pertains** 36:24

**phone** 19:13 23:7

**photo** 17:23
18:9,14,16
22:19,21 23:23
31:21 42:13
44:2,3 (11)

**photograph**
21:18 25:15,25
26:4
42:15,16,21,22,25
43:2,4,7,11,14,17
44:4,7,8
54:11,16,18 (21)

**photographs**
18:13 21:20

23:19,20 25:20,22
26:13 42:10 54:8
56:13,14,25 57:22
58:4,9 (15)

**photos** 18:19,20
19:5 23:22 32:2
(5)

**physical** 46:9,11
47:13

**physically** 19:5
56:22 57:24

**physiological**
48:2,13

**pick** 20:6

**pictures** 57:19

**place** 12:24 13:5
23:12 25:6,7
26:18 30:18 39:4
54:15 (9)

**places** 34:25

**plaintiff** 45:10

**plaintiff's**
15:22,24 16:18
20:22 23:25
28:3,7 29:6 43:6
44:15,18,24 62:4
(13)

**plaintiffs** 1:5 2:4
49:12,18,20 (5)

**plaintiffs'** 44:20
45:15 58:22 62:11
(4)

**play** 7:14,17

**please** 5:11,22
24:20 35:5 45:18
49:7 50:15 (7)

**pm** 1:12 61:12

JAMES LAMBERT

po 4:22 46:6,24

point 10:8 13:20 20:3 27:4 46:17 50:5,9 (7)

policies 6:23,25 7:4,21 8:3,8,13 12:9 32:17 (9)

policy 8:16,25 9:4 10:15,17 11:21,24 12:3,12,20 14:13 15:11 51:16,20,23 52:5,8,11 55:14 (19)

portion 6:11 49:11

posed 45:10

poses 36:4 42:24

position 25:9 47:11,12 49:14,19 (5)

possession 26:14

possible 30:17,24 61:4

possibly 13:3

potential 10:16

practice 46:17

preceding 35:7

premises 10:19 53:17 54:3,19 55:2,12,21 (7)

premium 34:4,9

preparation 43:22

prepare 30:3

prepared 28:18

presence 15:13 23:3

present 2:13 22:25

president 58:18

presume 31:16 47:25

previously 32:15

pricing 34:4

primary 21:23

prior 8:20 27:4 32:8 43:18 54:12 (5)

probably 6:10 19:13

procedures 32:17

proceed 10:5

process 10:6 12:19,22,23 13:2,3 21:8,14 27:18 30:18 41:9 (11)

produce 31:2

produced 10:13 16:19 17:9 28:23 56:18 (5)

production 16:6 24:21

program 10:13

prohibition 39:19

property 5:7 19:8,10,12,15 20:17 21:17 24:7 30:2 51:11,18,25

(12)

provide 5:19 9:23 23:13 24:19 (4)

provided 26:21 30:8,11,16,22 36:18 47:3 58:8 (8)

provides 51:8

public 1:19 4:3,17 21:21,25 61:18 64:8 (7)

purpose 43:24

pursuant 1:18 4:8 7:10

put 18:23

question 5:18,20 11:12 12:14 15:7 16:5 27:6 30:13 32:10 33:3 34:5 35:24 36:4,6,10,13 ,14,15,24 37:6,13,17,22 38:9,23 39:24 45:13,17 47:15,25 49:7,9,18,25 50:14 53:5,13,15 54:5 55:9,11 58:12 59:23 60:4 (44)

questions 5:5,5,9,11 9:22 45:9 48:14 61:11 (8)

quite 48:18

quote 9:23 10:2,4,12,13 13:3,7 (7)

quoting 34:2

r 2:2 3:2 4:15 64:2 (4)

raising 46:14

random 20:5

read 15:7 17:11,14 31:7,10 33:8 35:5,7 45:17 47:15 48:9 49:7,17 50:14 51:2 53:5,13 55:9 58:15,21 59:14 (21)

reading 45:6 48:21

really 22:16 34:17

rear 22:8 31:21 42:17

reason 5:15 48:3

reasonable 48:18

reasons 48:13

recall 20:19 24:15 54:2

receive 20:13,16 23:6

receives 8:2,7

recent 34:16

recess 60:16

recognize 44:23,25 45:2

recollect 48:4

recollecting 48:14

recollection 9:3 10:24 11:5,13,14 15:9,15 17:4,6 20:21 27:12 28:15 31:15 33:10 43:16

45:4,6,16,22 47:24 48:22 49:5,24 50:3 53:20,22 54:14,21 55:3,7 56:24 58:11 60:2,20,23 (35)

record 14:13,15 27:24,25 64:13 (5)

records 11:8 13:22 24:23

recoverable 50:24

refer 29:5 42:9

reference 6:12 51:6

referenced 54:9

referencing 55:6

referring 11:24 29:12,18 53:7 59:9 (5)

refers 53:2 56:20

reflects 24:25

refresh 48:22

regard 5:2,6 8:13 13:23 15:3 25:13 27:9 31:16 32:23 47:19,22 51:23 (12)

regarding 11:7

relate 33:17

related 64:15

relates 52:19

relationship 29:7,22

relevance 12:4

40:3

relevant 32:19 35:18

relied 49:10

remember 13:20 48:19

remotely 4:8,16 64:12

removed 39:14

render 47:21

rendered 47:18

repeat 15:6 33:4

repeatedly 49:23

rephrase 5:12 42:20 51:22

replacement 50:20 52:20,21

report 15:25 16:19 17:9,15,17,21 18:22 19:3 22:7 24:2,5 26:12,16,19 29:21 31:11,13 32:11 57:16 58:9 62:8 (21)

reporter 4:2,4,7 5:21 (4)

reporting 19:9

reports 16:20 26:21,23 30:3 55:18 (5)

represent 4:25 16:18 28:4 47:10 (4)

represented 5:13

request 10:10 16:20 26:25 27:4 53:3 (5)

requested 16:8 25:11 63:8

requests 24:23 25:2

require 22:25 23:13 38:19,25 (4)

required 34:10

requirements 41:17,22 42:2

requoting 13:3

rescinded 15:11

reserved 3:19 61:10

reside 35:2,9 40:20

residential 7:8

residing 35:11,13

respect 21:10 39:18

respectfully 24:18 36:8

respective 3:6

response 5:19 16:20 32:11 45:2,18,21 47:16,20 49:12,17 51:2,3,9 52:19 53:18,19,23 55:20 56:7 60:7 (20)

responses 5:24 44:19 48:21 54:12 58:22,24 59:17 60:9 62:11 (9)

responsive 58:25 60:9

results 19:8

retain 27:15

retained 16:3 28:9 44:22 55:22 (4)

review 8:21 18:21 26:12 27:20 28:12 32:7,18,25 33:6,10 43:21,23 45:14 54:11 (14)

reviewed 10:12 11:15 17:15,18 19:5 26:17 28:13 43:19 48:23 50:9 57:16 (11)

reviewing 18:24 31:9 50:8 56:25 (4)

right 20:21 31:2 47:11

righthand 29:11

rights 61:10

risk 9:7,24 10:12 13:4 17:10 23:4 34:2 42:17 56:13 (9)

risks 9:23

role 7:14,17

roles 7:13

room 4:7 5:25 41:22

roundhill 6:17,18,20 7:3,11,14,17,23 8:2,6,13,15 10:15 11:9,16,20

12:17,25 13:5,8,12,25 14:19,21 15:25 17:18 20:24 26:14 27:10 28:20,22 29:8,23 32:6,12 33:15 34:19,24 35:22 36:9 38:11,18,24 39:21 42:5 46:13,21 49:14,20 55:22 58:19 60:25 61:7 62:7 (54)

roundhill's 57:23

roundhillexpress com 9:21

s 2:2 3:2,2 4:15 62:2 (5)

said 9:10,14,15 11:12 31:19 46:9 (6)

sake 12:23

same 3:11,14,16 4:7 27:18 43:5 (6)

saw 61:2

say 6:24

saying 9:8 10:12 39:6 59:13 (4)

says 17:15 18:2,15 52:16 58:18 (5)

schedule 23:7

scheduling 25:5

scope 56:17

scott 2:6 4:24 11:25 16:11 24:22 29:9 46:14 48:7 (8)

screen 15:21

scroll 16:17,22 17:21 20:25 25:14,18,24 28:11 31:5 42:10 44:17 52:18 58:13 (13)

scrolled 54:8

scrolling 16:23 42:11,12 61:3 (4)

sealing 3:7

second 18:8

see 16:24 17:11,24 21:2,19,20,25 22:2 30:3 42:16 43:8 44:6,7 55:24 (14)

seeing 17:6

seem 9:11

seen 17:3,5 23:15 36:17 43:11 53:25 (6)

selection 20:2,4

send 24:24

sent 18:24 19:7

sentence 15:6

separate 31:11,14,17

series 5:4 9:22 54:8

serve 46:8,18

served 47:10

service 3:15

serving 47:6

**set** 38:12 47:17 49:9 50:16,18 53:15 55:11 64:12,19 (9)

**setting** 55:14

**seven** 50:15

**several** 13:16 24:11

**share** 15:20

**she** 5:23,24 22:22

**sheets** 42:13

**short** 60:16

**shot** 22:5

**show** 15:21 28:2 31:13 43:2 44:2,14 (6)

**showed** 54:10 57:17

**shows** 44:8

**side** 17:22

**sidewalk** 18:5 22:3

**sidewalks** 21:22

**signature** 45:3 46:2 58:16 59:2,22 64:22 (6)

**signed** 3:9,12,14 59:12,13,16 60:3,5,11 (9)

**significant** 34:3

**significantly** 56:17

**simply** 24:24 29:17 36:14 38:9

(4)

**since** 19:3 59:25

**single** 39:3

**sinks** 41:14

**sir** 6:2 9:14 16:17,24 25:10 28:2 29:17 44:23 60:17 61:9 (10)

**sit** 11:4 14:25 15:17 19:16 32:22,25 33:6 37:12 45:8,25 48:25 49:4 57:6 (13)

**site** 30:3

**six** 49:8,9

**small** 7:8

**smaller** 56:17

**so** 4:13,14 5:22 7:8 9:12 11:6,14 12:23 13:2 15:17 16:7,15,16 17:23 18:16 19:3 20:11 21:2,9 22:21,23 28:16,25 29:12,17 30:4,13,21,23 31:23 35:8,21 36:19 37:12,19 38:11 43:7 47:8 49:24 50:5,11,18 52:4,16 53:10 54:10 61:4 (47)

**software** 19:22 23:21

**solely** 11:8

**solves** 47:3

**some** 6:11 23:20 44:6 50:5,9 56:9 (6)

**somebody** 31:2 46:18

**someone** 17:18,19,19 21:6 23:13 27:15 35:10,13 (8)

**someplace** 14:7 19:18

**something** 14:23 15:12,14 29:13 31:22,23 34:6 39:6,7,22 48:19 52:22 53:11 55:6 59:13 (15)

**somewhere** 14:12

**sorry** 9:11

**space** 39:4,25 40:4 42:2 (4)

**speak** 24:16 30:13 54:23

**speaking** 46:7,23 60:21

**specific** 9:3,7 12:14 29:2,3 30:12,13 48:19 (8)

**specifically** 24:6 25:3

**specifics** 15:15

**ss** 64:4

**stacked** 44:9

**staircase** 22:5,13 31:21 42:17,23 (5)

**stairs** 18:7 21:22,25

**stairwell** 22:8,22

**stamp** 29:18 31:5

42:9,13,22 43:10 (6)

**stamped** 16:2 28:8 29:20 62:000361,10 (5)

**standard** 38:15

**start** 16:15 21:24

**state** 1:20 4:3 34:10 45:19 64:4,9 (6)

**stated** 49:23 55:20

**states** 1:2

**steps** 22:4,17

**still** 13:20 39:11 61:6

**stipulate** 4:10

**stipulated** 3:5,18 4:13,14 (4)

**stop** 43:10

**stove** 53:16 54:2,10,25 55:5 (5)

**stoves** 39:11,12

**street** 5:7 8:17 9:2 10:22 17:10 25:13 (6)

**stretch** 5:15

**structures** 52:22

**subject** 10:21 27:3 47:19 49:11 51:7 53:17 54:3,19 55:2,12,21 (11)

**submitted** 10:7

**subpoena** 46:8,12

**subscribed** 61:16

**such** 14:13,14 30:7,15 48:4,6 64:13 (7)

**suffolk** 64:5

**suggest** 19:23

**supplied** 25:12

**sure** 5:23 11:11 38:3

**suspected** 28:24

**sustain** 8:9

**sworn** 3:9 4:8,12,16 58:17 61:16 64:12 (7)

**system** 18:17,21 21:21 28:25 57:11,12,17 (7)

**systems** 18:21

**t** 2:11 3:2,2 4:15 62:2 64:2,2 (7)

**take** 5:20,21 6:4 18:12 23:19,20,22 31:25 39:4 57:19 60:13 (11)

**taken** 1:19 12:24 13:5 22:19,21 25:16,22 26:4 32:6 60:16 (10)

**takes** 23:12

**taking** 56:12

**talk** 46:16

**talked** 20:10

telephone 23:5

tell 9:4 20:20 22:10 42:15,23 44:4 (6)

telling 36:5

ten 7:7 58:13,13

tenants 7:9

tenminute 60:13

tenpage 44:16

term 33:18 36:3 37:20 56:6,7 (5)

testified 4:17 6:5,9 20:18 (4)

testifying 8:20 43:18

testimony 4:11 37:9 64:13

text 23:6

than 19:5 36:20,22 37:2,14 48:19 56:17 (7)

thank 25:10 29:4,19 33:13 61:11 (5)

their 20:4 46:19

them 9:20 10:4 16:7 18:14 19:6 20:9 24:19 31:4 44:9 47:10 57:19 (11)

there's 14:24 17:23 21:9 22:7 25:25 26:16 38:12 41:6 43:8 44:10 47:13 54:10 (12)

therein 33:8

58:16

thereof 58:24 59:7

these 16:6 18:12,20 19:5 26:13 28:18,23 45:20,23 48:20,21 54:12 59:5 (13)

they'd 9:24

they're 18:22 23:22 56:15

they've 18:25

things 37:2 48:4,6

think 14:8 15:22 37:5,15,22 (5)

third 47:15

thirdparty 58:19

those 5:5 6:11 8:8 13:20 19:24 21:22 24:18,21 25:22 36:25 38:6 39:15 44:10 56:14 57:18,22 58:4,9 (18)

though 39:12 46:2

thought 54:9

three 22:4 25:14

through 9:5,9,13,17,24 16:17,22 21:7 42:10 44:17 54:8 61:3 (12)

time 3:20 8:15 12:19 13:21 18:8 20:3 25:7 30:2,2 32:25 33:5 44:14

56:21 57:4,14 59:5,7,16,19 60:2,13 61:9,12 (23)

times 19:23,25

title 45:19 47:17

today 5:5,14 8:20 11:4 14:25 15:17 32:22 37:12 43:18 45:8 48:25 49:4 57:6 (13)

together 38:6

too 16:12

took 19:6 26:18 30:18 32:25 39:10,12 54:15 (7)

top 21:24 44:3

train 21:7

trained 23:18

training 21:7,12,13

transcript 24:25

trial 1:15 3:20

trick 5:10

true 59:18 60:11 64:13

two 6:10,11 25:20 44:8 (4)

type 5:22

typical 30:14

typically 46:9

u 3:2

unable 60:3

unaware 19:15 30:18

unclear 51:5

under 31:6 40:2 51:10 52:7,10 (5)

underneath 18:2

understand 5:10 6:2 32:10 33:3 39:24 45:13 (6)

understanding 29:24 33:21 36:2 38:5 40:7 41:16,21,25 59:11 60:6 (10)

understood 59:14

undertake 27:10,15

undertook 8:16

underwrite 6:24 7:2 8:16

underwrites 6:22

underwriting 7:13 8:25 9:5,7,8,13 10:14 11:21 12:2,19 14:6,9,16 18:23 19:18 26:24 27:3,20 30:8,11,16,19,23 31:3 32:19 41:9 55:23 56:6,11,19 (30)

underwritten 8:8,13

unduly 51:4

unfamiliar 39:17

union 1:8 5:3

6:12,14,21 7:4,11,18,22,25 8:8,12 12:10,20 13:22,25 16:19 17:19 20:24 24:8 26:15,22,24 32:6,12 33:15,24 34:24 36:3,9 38:5,11,19,24 39:21 40:3,12 42:5 46:20 47:8 49:15,20 51:3,8,20 52:7,10 58:20 (48)

unit 33:17,22 36:3 37:8 42:7 (5)

united 1:2

units 7:8 34:2,3,6,6,9 36:25 37:5 39:15 (9)

unsigned 3:13

unsure 14:8

up 7:7 37:25 38:4,7 52:18 (5)

upload 23:19

uploaded 18:20 23:22,23

upon 3:16 11:8 13:7 26:6,12,25 42:15,22 49:10 53:19 56:12 (11)

us 5:16 9:19 13:17 19:25 23:7,13 24:24 27:14 28:5 30:4 36:9 (11)

use 18:18 19:22 23:21 24:9 38:9 42:3 (6)

used 3:13 24:11 37:21 56:7 (4)

JAMES LAMBERT

78

| | | | | |
|---|---|---|---|---|
| utilize 30:2 35:23 | we'd 46:16 | where 8:15 14:11 17:11 19:17 25:15,21 26:3,7 46:17 52:16 53:3 (11) | 44:7,11 | x 1:3,10 62:2 63:2 (4) |
| utilized 24:7 33:18,22 34:19 35:22 40:12 (6) | we'll 5:17 16:15 21:19 46:3 (4) | | withdraw 12:8 | xyz 14:13 |
| | | | withdrawn 41:20 | year 39:3 |
| vague 51:4 | we're 5:4 18:15 24:20,24 47:7,8,12 (7) | whereof 64:19 | within 3:8 7:6 14:5 19:18 32:24 36:6 64:9 (7) | years 48:17 |
| value 50:22 53:3 | website 9:6,9,14, 17,21,22,24 10:9 12:24 (9) | whether 10:20 27:2 28:17 30:16 32:7,13 35:18 39:21 40:4 48:22 50:16 53:15 54:24,25 56:14,15,22 57:3,7 58:9 (20) | | yes 6:3,7,13 7:12,16 9:15,18 13:11 17:13,25 18:4,6,10 37:11 50:4 52:2 53:18 54:6 57:25 58:7 60:19 61:8 (22) |
| vendors 24:7 | | | without 13:5,7 17:6 18:23 23:2 51:7 (6) | |
| verified 60:9 | | | | |
| verifies 58:24 | well 12:2,6 15:10 16:13 34:12,18 46:22 47:5 48:21 54:11 (10) | | witness 1:16 3:10,15,16 4:6,8,11,15 16:9 31:9 46:6 64:11,14,19 (14) | |
| verify 59:17 | | | | york 1:2,20 2:11021,10 4:3,22 5:8 6:22 7:7 8:18 34:10 39:17 41:18,23 42:3 64:4,9 (17) |
| verifying 60:6 | went 12:24 | which 9:21 10:10 19:8,25 20:23 25:19 28:4 30:15,19 31:13 32:18 33:17 34:25 36:17 38:6 48:3 49:10 54:2,9,17 (20) | witnesses 47:9 | |
| very 37:17 48:17 | what 4:19,21 6:18,25 7:17 9:14,16 10:7 13:12 14:19 15:16,18 17:7 19:16 20:19 21:17,18 22:3 24:7 25:3 29:7,22 31:19,20 32:5 34:12,18,23 35:12,21 36:2,5,9 37:20,24 38:5 42:15 44:4 48:6 49:2 51:5,15,24 52:4,13,16,21,25 53:6,19,23 54:15 59:11,11 60:2 (55) | | word 18:18 31:7 | you'll 17:21 |
| via 1:17 4:5 | | | working 24:14 52:18 | |
| victoria 2:13 | | | | you're 25:3 29:15 46:14 47:6 55:5 (5) |
| videoconferencing 1:18 4:6 | | while 10:9 | world 33:6 | |
| viewed 32:8 43:6 | | who 9:19 11:20 12:17 13:16,18 14:2,5 19:6,24 20:4,23 21:2 23:12 24:14,15 27:19 36:7 45:20 47:18 55:16 60:24 (21) | would 5:14 9:6 11:6,7,20 12:18,23,25 13:9,13,15,18 14:2,4,6,11,12 17:19 19:4,16,17 20:9,13,23 22:7,13,19,21 26:8 27:18 28:24 30:15,21,25 31:3,7 32:18,19,23 33:7,11 35:15 38:6 39:11,15 46:11 47:25 48:3,13 54:17 57:12,21 58:3 60:12,13 (55) | you've 6:5 28:13 43:19 |
| virtual 5:25 | | | | your 4:19,21 5:15,16,23,24 24:19 25:2,9 26:6,12 28:12 32:22 33:6 35:8 37:9 42:23 46:11 47:11 48:3,22 53:23 54:12 56:7 58:16 59:2,11,18 60:6 (29) |
| waived 3:8 | | | | |
| waiving 51:7 | | whom 6:16 | | |
| walls 44:8 | what's 28:2 33:11 44:10,15 (4) | whose 64:11 | | |
| want 20:3 25:2,4 34:15,15 (5) | | | | |
| wanting 46:18 | whatever 11:8 33:8 | why 48:13 | | |
| | | wild 6:4 | | yourself 31:8 |
| water 26:8 43:5 57:11,17 (4) | when 6:24 10:11 12:24 16:10 18:12,19 19:7,21 20:2,3 21:6,16 22:24 23:4,11,17 26:13 34:2 36:3 46:23 47:10 60:5,10 (23) | will 4:8 5:12 10:18 18:21 19:23,24 20:5 21:18 23:6,12 24:22 27:15 28:3 34:3 52:18 (15) | wouldn't 16:13 | zoom 1:17 4:5 |
| | | | writing 23:25 | 216 28:12 |
| way 36:20,23 37:3,14 56:9 64:17 (6) | | | written 24:3 | 305 61:12 |
| | | window 41:17 | | 611 4:22 |
| ways 37:8 | | | | |

ALL STAR REPORTERS 1-800-329-9222

JAMES LAMBERT

| | | | | |
|---|---|---|---|---|
| **2017** 16:21 24:6,15 26:17 31:13 55:23 56:23 57:2,10,23 58:5,10 (12)<br><br>**2020** 5:6 15:4 27:5,10 (4)<br><br>**2021** 1:4 44:21 48:11,15 50:2 61:17 62:16 64:20 (8)<br><br>**3911** 5:7 8:17 9:2 10:22 17:10 25:13 (6)<br><br>**10522** 4:22<br><br>**11021** 2:11021<br><br>**14202** 2:10<br><br>**7112017** 17:16 | | | | |