UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FRED LEE and ANN LEE,

                Plaintiffs,

       -against-

UNION MUTUAL FIRE INSURANCE COMPANY,

                Defendant.
------------------------------------------------------------------X

Case No. 1:20-cv-3191 (MKB)(PK)

**RULE 56.1 STATEMENT OF MATERIAL FACTS**

       Pursuant to Rule 56.1 of the Local Rules of this Court, Plaintiffs FRED LEE and ANN LEE (collectively the "Lees") submit the following statement of material facts in support of their motion for summary judgment.

**I.      The Application and Underwriting Inspection[1]**

       1.      For each new policy that Union Mutual Fire Insurance Company ("Union Mutual") issues, it performs an underwriting inspection of the subject property proposed for insurance within sixty (60) days of the effective date of the policy. (See *Ex.* M, Program Managers Ageement, p. 20).

       2.      The purpose of the inspection is to ascertain if the risk is suitable for inclusion in the program. (*See* Ex. M, Program Managers Agreement, p. 20).

       3.      Round Hill Express ("Round Hill"), acting as an agent of Union Mutual, binds insurance policies on behalf of Union Mutual (*See* Ex. D, Lambert Tr. 7:5; Ex M, Program Managers Agreement).

---

[1] Unless otherwise specified, all exhibits referenced herein refer to the exhibits attached to the October 25, 2021 Declaration of Scott E. Agulnick submitted in support of Plaintiffs' motion for partial summary judgment, submitted herewith.

## II.     The Application, Inspection, and the Policy

4.     On or about June 27, 2017, the Lees applied for a home insurance policy (the "Application") to cover their property located at 39-11 27th Street, Long Island City, New York 11101 (the "Property"). (*See* Ex. H, Policy Binder, p. 4)

5.     The Application asked several questions about the Lees' property, including "How many apartment units are there?" (*See* Ex. H, Policy Binder, p. 5)

6.     In response to the foregoing question, the Application states "2". (*See* Ex. H, Policy Binder, p. 5).

7.     According to the Lees, all of the answers were accurate to the best of their knowledge. (*See* Ex. C, Plaintiff's affidavit, ¶ 9)

8.     The application contains no definition of the term "apartment unit". (*See* Ex. H, Policy Binder).

9.     Union Mutual has no definition of apartment it utilizes. (*See* Ex. D., Lambert Tr. At pp. 36:1-37-20)

10.    Union Mutual conceded that the term "apartment unit" can be interpreted in a number of ways. (*See* Ex. D., Lambert Tr. At pp. 36:1-37-20)

11.    Union Mutual did not have an understanding as to the difference between a finished basement and apartment. (*See* Ex. D., Lambert Tr. At pp. 36:1-37-20; *See* Ex. D, Lambert Tr. At pp 40, lines 7 – 11).

12.    Union Mutual's underwriting guidelines is based upon "living units" and not "apartment units". (*See* Ex. M, Bates Stamp 000021)

13.    Union Mutual's underwriting guidelines state:

> There is limited pre-underwriting with the primary focus of the underwriting review involving reviewing the loss control inspection for acceptability. All properties are subject to an on-site physical inspection within 60 days of inception. The loss control inspection is the means by which the account is underwritten. If the loss control inspection reveals unacceptable or uncontrolled hazards the account is cancelled by issuance of a Notice of Cancellation for Underwriting reasons within the first 60 days of binding.

(*See* Ex. M Bates Stamp 000019).

14. On July 11, 2017, Union Mutual conducted an underwriting inspection of Property. (*See* Ex. F, Underwriting Report; Ex. G., Harper Tr. 21:14-16; Ex. H, Union Mutual's Discovery Responses).

15. Inspector Frederick Harper (the "Inspector"), an agent for Round Hill, conducted the inspection of Property. (*See* Ex. G, Harper Tr. 11:14)

16. The underwriting inspection included an inspection of the heating system, electrical system, and public access stairs. *(See* Ex. D, Lambert Tr. 21:21)

17. The Inspector took Photographs of the Property, including the exterior of the house, the back and front, sidewalk, stairs, electrical meters, gas meters, and heating equipment, and included those photos in his inspection report. (*See* Ex. F, Inspection Report).

18. As part of the underwriting inspection, the Inspector conducted an inspection of basement. (*See* Ex. G, Harper Tr. 22:21, 24:25; *see also* Ex. F, Inspection Report).

19. The two gas meters, two electrical meters, and the heating equipment that the Inspector inspected are located in the basement. (*See* Ex. C, Lee Aff.; Ex: G Harper Tr. 22:16).

20. Notably, the two electrical meters located in the basement were labeled "1st Floor" and "2nd Floor". (*See* Ex. C, Lee Aff.; Harper Tr. Page 21 lines 2-16).

21. Round hill noted that the Property passed the Underwriting inspection on July 12, 2017 (*See* Ex. N)

3

22. Defendant did not decline to issue Policy or change terms upon completing and passing the underwriting inspection. (*See* Ex. H Policy Binder).

23. On June 27, 2017, after Union Mutual confirmed the underwriting inspection, Union Mutual issued the Policy covering the Property. (*See* Ex. H, Policy Binder ).

24. On July 28, 2017, Policy came into effect. (*See* Ex. H, the Policy Binder).

25. The Policy provides coverage for direct physical loss or damages to Property. (*See* Ex. H, Policy Binder).

26. Union Mutual did not non-renew, cancel, or otherwise change terms of the Policy at any time subsequent to its inspection of the basement in July, 2017. (*See* Ex. C, Plaintiff's Affidavit ¶ 17).

27. The Lees relied on the underwriting inspection and were led to believe that Union Mutual would take some action promptly after the Underwriting Inspection, if the Property was not, in Union Mutual's opinion, accurately reflected in the Application. (*See* Ex. C, Plaintiff's Affidavit, ¶ 16).

### III.     Property

28. The Property is a legal two-family dwelling according to the Department of Buildings.   (*See* Ex. P, Production Docs, Defendant Bates Stamp 000038)

29. The Property contains a finished basement which cannot lawfully be occupied as a dwelling or "apartment". (*See* Ex. C, Plaintiff's Affidavit ¶ 11-12).

30. There was no connected stove in the basement at the time of the Loss. (*See* Ex. I, Lee Tr. 31:14; Ex. C, Plaintiff's Affidavit ¶ 12).

### IV.     Renewal

29. The Policy was in effect on March 2, 2020 (*See* Ex. B, Defendant's Answer, ¶ 7).

30.     Plaintiff took no action in connection with the renewal, and did not execute any additional documentation in connection with the renewal.  (*See* Ex. C, Plaintiff's Affidavit., ¶ 15)

### V.     The Fire

31.     On March 2, 2020, the Property was extensively damaged by a fire that started on the second floor. (*See* Ex. J, NYS Fire Claim Form)

32.     Beltrani Consultants did the investigation; however they were not provided with the claim file and did not review it. (*See* Ex. D, Lambert Tr.  30:1-20)

33.     Following the Fire, Union Mutual adjusted the fire loss under the commercial property coverage, and provided its estimate of the loss as $113,001.50.  (*See*, Ex. K, Union Mutual's Discov. Responses, ¶ 7).

### VI.     Union Mutual Denial and Purported Rescission

34.     By letter dated May 19, 2020, Union Mutual disclaimed coverage and refused to pay for the loss caused by the fire, and purported to rescind the Policy. (*See* Ex. L, Denial Letter).

Union Mutual's sole basis for rescinding the Policy was that it contended that the basement was an apartment unit that was not disclosed on the application.  (*See* Ex. L. Denial Letter).

Date: Great Neck, New York
October 25, 2021

                            Respectfully Submitted,

                          By: _____/s/_____
                                 Scott Agulnick, Esq
                                 Todd D. Kremin, Esq.
                                 GREENBLATT AGULNICK KREMIN P.C.
                                 55 Northern Boulevard, Suite 302
                                 Great Neck, New York 11021
                                 Tel: (718) 352-4800
                                 Email: sagulnick@GAKlawfirm.com

                                 *Attorneys for Plaintiffs*