# EXHIBIT E

JAMES LAMBERT

---

**Page 1**

1
2  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
3  - - - - - - - - - - - - - - - - - - -x
4  FRED LEE and ANN LEE,
5                          Plaintiffs,
6                                Civil Case No.:
                                 1:20-cv-03101
7        -against-
8  UNION MUTUAL FIRE INSURANCE COMPANY,
9                          Defendant.
10 - - - - - - - - - - - - - - - - - - -x
11
12               May 4, 2021
                 1:00 p.m.
13
14
15          EXAMINATION BEFORE TRIAL of JAMES
16  LAMBERT, a witness on behalf of the defendant in
17  the above-entitled action, held via Zoom
18  videoconferencing equipment, pursuant to Notice,
19  taken before JoAnn O'Loughlin, a Notary Public of
20  the State of New York.
21
22
23               *    *    *
24
25

---

**Page 2**

1
2  A P P E A R A N C E S :
3
4     GREENBLATT & AGULNICK, P.C
       Attorneys for Plaintiffs
5      55 Northern Boulevard
       Great Neck, New York 11021
6
7     BY:  SCOTT E. AGULNICK, ESQ.
8
9     HURWITZ & FINE, P.C.
       Attorneys for Defendant
10     1300 Liberty Building
       Buffalo, New York 14202
11
12    BY:  ERIC T. BORON, ESQ.
13
14    ALSO PRESENT:  VICTORIA DeMARCO, ESQ.
15
16
17               *    *    *
18
19
20
21
22
23
24
25

---

**Page 3**

1
2        F E D E R A L   S T I P U L A T I O N S
3
4
5        IT IS HEREBY STIPULATED AND AGREED by and
6  between the attorneys for the respective parties
7  herein that the sealing, filing and certification
8  of the within deposition be waived; that the
9  original of the deposition may be signed and sworn
10 to by the witness before anyone authorized to
11 administer an oath, with the same effect as if
12 signed before a Judge of the court; that an
13 unsigned copy of the deposition may be used with
14 the same force and effect as if signed by the
15 witness, 30 days after the service of original & 1
16 copy of the same upon counsel for the witness.
17
18        IT IS FURTHER STIPULATED AND AGREED that all
19 objections except as to form, are reserved to the
20 time of trial.
21
22
23               *    *    *    *
24
25

---

**Page 4**

1
2        THE COURT REPORTER:  My name is JoAnn
3  O'Loughlin, a New York State notary public and
4  court reporter.
5        This deposition is being held via Zoom
6  videoconferencing equipment.  The witness and
7  reporter are not in the same room.  The
8  witness will be sworn in remotely, pursuant to
9  agreement of all parties.
10       The parties stipulate that the
11 testimony is being given as if the witness was
12 sworn in in person.
13       MR. AGULNICK:  So stipulated.
14       MR. BORON:  So stipulated.
15 J A M E S   L A M B E R T, the witness herein,
16 having first been remotely sworn by the Notary
17 Public, was examined and testified as follows:
18 EXAMINATION BY MR. AGULNICK:
19    Q.    What is your name?
20    A.    James Lambert.
21    Q.    What is your address?
22    A.    P.O. Box 611, Ardsley, New York 10522.
23    Q     Good afternoon, Mr. Lambert.  My name
24 is Scott Agulnick and I'm a partner of the law firm
25 of Greenblatt & Agulnick and we represent Fred and

---

JAMES LAMBERT

---

5

1
2  Ann Lee with regard to an action that's been
3  brought against Union Mutual.
4         We're going to ask you a series of
5  questions here today and those questions pertain to
6  a date of loss of March 2, 2020 with regard to a
7  property location at 39-11 27th Street in Long
8  Island City, New York.
9         None of my questions are designed to
10 trick you or deceive you.  If you do not understand
11 one of my questions, please just let me know and I
12 will rephrase it.
13        You are represented by counsel here
14 today.  If you would like a break, to consult with
15 your attorney or for any other reason, to stretch
16 your legs or to have a bite to eat, just let us
17 know and we'll accommodate you.
18        We ask that if there is a question
19 pending, you provide a response to the pending
20 question and then we can take a break.
21        The court reporter cannot take down any
22 type of gestures or head nods, so please, to the
23 best of your ability, make sure she hears all of
24 your responses.  She is the most important person
25 in the virtual room here, okay?

---

6

1
2         Do you understand my instructions, sir?
3  A      Yes.
4  Q      Mr. Lambert, I'm going to take a wild
5  guess and assume that you've testified in
6  depositions before.
7  A      Yes.
8  Q      Approximately how many depositions have
9  you testified in?
10 A      Probably approaching two dozen.
11 Q      Was some portion of those two dozen
12 cases with reference to Union Mutual claims?
13 A      Yes.
14 Q      Were they all for Union Mutual claims?
15 A      No.
16 Q      By whom are you employed?
17 A      RoundHill Express, LLC.
18 Q      What is the nature of RoundHill
19 Express' business?
20 A      RoundHill Express is an appointed agent
21 for Union Mutual Fire Casualty Company and
22 underwrites a book of Metropolitan New York City
23 landlord-tenant policies.
24 Q      When you say that they underwrite a
25 book of landlord policies, can you explain what it

---

7

1  means to underwrite a book of business?
2
3  A      RoundHill Express has the authority to
4  bind policies on behalf of Union Mutual and the
5  extent of that authority is limited to buildings
6  owned by landlords within a geographical area
7  around New York City with apartments up to ten
8  units.  So small buildings occupied by residential
9  tenants.
10 Q      Is this agency pursuant to a contract
11 between Union Mutual and RoundHill?
12 A      Yes.
13 Q      In addition to underwriting roles, does
14 RoundHill play a role in claims adjustment or
15 claims investigation?
16 A      Yes.
17 Q      What role does RoundHill play on behalf
18 of Union Mutual for claims adjustment and claims
19 investigation?
20 A      We handle and adjust and pay claims
21 arising on the policies that we issue on behalf of
22 Union Mutual.
23 Q      How is RoundHill compensated to handle
24 the adjustment and payment of claims on behalf of
25 Union Mutual?

---

8

1
2  A      RoundHill receives a commission on the
3  policies that are bound and that commission
4  includes the cost and expense associated with
5  claims handling.
6  Q      Does the commission that RoundHill
7  receives change depending on the amount of losses
8  that those policies underwritten by Union Mutual
9  sustain?
10 A      No.
11 Q      Does the commission change depending on
12 the amount of money paid out by Union Mutual with
13 regard to policies underwritten by RoundHill?
14 A      No.
15 Q      Did a time come where RoundHill
16 undertook to underwrite a policy for Fred and Ann
17 Lee at 39-11 27th Street in Long Island City, New
18 York?
19 A      I don't know.
20 Q      Prior to testifying here today, did you
21 review any documents in connection with the claim
22 of Fred and Ann Lee?
23 A      No.
24 Q      Did you have any involvement in the
25 underwriting of the policy issued to Fred and Ann

---

JAMES LAMBERT

**9**

1
2    Lee for 39-11 27th Street?
3         A    I have no specific recollection of that
4    policy, but I can tell you that in the course of
5    our business, the underwriting is done through our
6    website and I would not have been involved in the
7    underwriting of any specific individual risk.
8         Q    Are you saying that underwriting is
9    done through a website?
10        A    I said that.
11        Q    I'm sorry, the connection doesn't seem
12   to be so great.
13             The underwriting is performed through a
14   website, sir, is that what you said?
15        A    Yes, I said that.
16        Q    Can you explain what you mean by that
17   it's done through a website?
18        A    Yes.
19             Brokers who do business with us have
20   logging credentials that enable them to go to our
21   website, which is roundhillexpress.com and they can
22   answer a series of questions on that website and
23   provide information on risks and obtain a quote
24   through the website for the risk they'd like to
25   obtain coverage on.

**10**

1
2             If the quote is acceptable --
3         Q    And then once that --
4         A    If the quote is acceptable to them,
5    they can then proceed forward to bind coverage.
6         Q    Can you explain the process after an
7    application is submitted, what happens at that
8    point?
9         A    While the broker is on the website, he
10   fills in the information which we request as part
11   of our application.  When he clicks on the button
12   saying quote the risk, that information is reviewed
13   by a computer program and a quote is then produced.
14        Q    In connection with the underwriting of
15   the policy, does RoundHill cause an inspection to
16   be performed at a potential insured location?
17        A    If a policy is bound and after it is
18   bound, we generally will do an inspection of the
19   premises.
20        Q    Are you aware as to whether an
21   inspection was performed for the subject location
22   at 39-11 27th Street?
23             MR. BORON:  Objection as to form.
24        A    I have no independent recollection of
25   that.

**11**

1
2         Q    Do you have any personal knowledge of
3    the claim of Fred and Ann Lee?
4         A    As I sit here today, I have no
5    independent recollection of that claim.
6         Q    So the knowledge you would have
7    regarding the claim of Fred and Ann Lee would be
8    based solely upon whatever records are maintained
9    by RoundHill; is that correct?
10             MR. BORON:  Objection as to form.
11        A    I'm not sure I know how to answer that
12   question because I just said I have no independent
13   recollection of the claim.
14        Q    So you have no independent recollection
15   of the claim and you have not reviewed the file
16   maintained by RoundHill in this claim; is that
17   correct?
18        A    That is correct.
19        Q    Is there any particular person at
20   RoundHill Express who would have personal knowledge
21   of the underwriting of the policy issued to Fred
22   and Ann Lee?
23             MR. BORON:  Objection as to form.
24             Are you referring to the actual policy
25        that's at issue in this lawsuit, Scott?

**12**

1
2             MR. AGULNICK:  Well, the underwriting
3    of any policy issued to Fred and Ann Lee.
4             MR. BORON:  I'll object on relevance
5    grounds.
6             MR. AGULNICK:  Well --
7             MR. BORON:  Are there --
8             MR. AGULNICK:  I'll withdraw it.
9             MR. BORON:  -- other policies issued by
10   Union?
11             MR. AGULNICK:  No, I believe it's just
12   one policy.
13             MR. BORON:  Okay.
14             Can you just make the question specific
15   to this case?
16             MR. AGULNICK:  Absolutely.
17        Q    Do you know anyone at RoundHill who
18   would have personal knowledge as to the
19   underwriting process performed at or about the time
20   the original Union Mutual policy was issued to Fred
21   and Ann Lee?
22        A    I believe I explained the process and
23   so for the sake of clarity, that process would have
24   taken place when the broker went onto our website.
25             No employee of RoundHill would have

JAMES LAMBERT



**13**

1
2  been involved in that process and so the entire
3  process of obtaining a quote and possibly requoting
4  the risk with different coverages could all have
5  taken place without any employee of RoundHill being
6  involved and the broker could have moved forward
7  and bound coverage based upon a quote without the
8  involvement of any employee at RoundHill.
9       Q    Would a human being be involved in the
10  inspection of the insured location?
11      A    Yes.
12      Q    What individual at RoundHill Express
13  would have knowledge as to the inspection performed
14  at the insured location?
15      A    The inspection would have been
16  performed by one of several individuals who operate
17  as independent contractors for us and perform
18  inspections and that is the person who would have
19  knowledge of the inspection if they, you know,
20  could still remember those details at this point in
21  time.
22      Q    Does Union Mutual maintain records with
23  regard to the identity of the person or entities
24  that perform inspections?
25      A    Union Mutual does not, but RoundHill

**14**

1
2  would be able to identify the person who did the
3  inspection.
4      Q    Would the identity of that individual
5  who performed the inspection be contained within
6  the underwriting file or it would be located
7  someplace else?
8      A    I am unsure exactly.  I think it's in
9  the underwriting file, but if it is not, I know it
10  is also located elsewhere.
11      Q    Where would it be located elsewhere?
12      A    There would be somewhere a payment
13  record indicating that for policy XYZ, such and
14  such person was paid for the inspection.
15      Q    That payment record is not maintained
16  in the underwriting file?
17      MR. BORON:  Objection to form.
18      A    No, it is not.
19      Q    What is RoundHill Express Inspections?
20      A    Pardon me?
21      Q    Is there an entity called RoundHill
22  Express Inspections or is that a department or
23  something else?
24      A    There's no entity by that name.
25      Q    As you sit here today, do you have any

**15**

1
2  knowledge as to the coverage determination with
3  regard to the claim of Fred and Ann Lee, the date
4  of loss March 2, 2020?
5      A    I did not hear the beginning of that
6  sentence, could you repeat it?
7      (The pending question was read.)
8      A    I do not have any independent
9  recollection of that.
10      Q    Well, are you aware if the claim was
11  denied, the policy was rescinded, if the claim was
12  partially paid or something else or anything else?
13      A    By dint of my presence at this
14  deposition I'm aware that something happened, but I
15  don't have any recollection of the specifics or
16  what it is.
17      Q    So as you sit here today, you don't
18  know what the dispute is over?
19      A    That is correct.
20      MR. AGULNICK:  I'm going to share the
21  screen and I'm going to show you a document.
22  I think we can deem this marked Plaintiff's
23  Exhibit 1.
24      (Plaintiff's Exhibit 1, copy of five-page
25  RoundHill Express Inspections report Bates

**16**

1
2  stamped 000361 - 000365, was marked for
3  identification.  Exhibit retained by counsel.)
4      MR. AGULNICK:  Before I ask the
5  question, Eric, I forwarded the exhibits to CJ
6  earlier.  These are the carrier's production,
7  so I don't know if CJ forwarded them to you
8  because I requested that they be made
9  available to the witness.
10      MR. BORON:  When did you do that,
11  Scott?
12      MR. AGULNICK:  Not too long ago.
13      MR. BORON:  Well, they wouldn't have
14  been forwarded to me then.
15      MR. AGULNICK:  Okay.  So we'll start
16  with this.  This document is not so big.
17      Q    Sir, I'm going to scroll through
18  Plaintiff's Exhibit 1 and I'll represent that this
19  was a report that was produced by Union Mutual in
20  response to a request for reports pertaining to a
21  2017 inspection.  It's a five-page document.  I'm
22  going to scroll through.
23      (Attorney scrolling.)
24      Q    Sir, have you had an opportunity to see
25  this document?

**Page 17**

1
2    A    I have.
3    Q    Have you seen this document before?
4    A    I have no independent recollection of
5 having seen it before.
6    Q    Without having a recollection of seeing
7 it before, do you know what this document is?
8    A    That appears to be essentially the
9 inspection report produced following the inspection
10 of this risk at 39-11 27th Street.
11    Q    Can you kindly read, you see where my
12 cursory is?
13    A    Yes.
14    Q    Can you read that line?
15    A    That says Report Reviewed and Assembled
16 on 7/11/2017.
17    Q    Does that indicate that this report was
18 reviewed by someone at RoundHill on that date or
19 would it be someone at Union Mutual or someone
20 else?
21    A    As you scroll down that report, you'll
22 notice that to the left-hand side there are
23 comments, so in the first photo there's a comment
24 that is Front - Clean; do you see that?
25    Q    Yes.

**Page 18**

1
2    A    Okay.  And underneath it, it says Back
3 - Clean.
4    Q    Yes.
5    A    And then Sidewalk - Clean?
6    Q    Yes.
7    A    And then Stairs - Clean, Electrical -
8 Clean, Electric - Clean a second time, Heating -
9 Clean.  And is that the last photo?
10    Q    Yes.
11    A    Okay.
12    When the inspectors take these
13 photographs, they have a drop-down menu that allows
14 them to essentially identify the photo as, for
15 example, we're looking at the last one, it says
16 heating and so they identify the photo as being of
17 the heating system and they can identify as being
18 clean or issues, I don't know the word they use,
19 but if all of the photos are marked as clean, when
20 these photos are uploaded at night by the inspector
21 to our systems, system will review the comments and
22 if they're all clean, the report is automatically
23 put into the underwriting file without any person
24 reviewing it and an email is then sent to the
25 broker/insured indicating that they've passed

**Page 19**

1
2 inspection.
3    So since this report indicates that
4 everything was clean, that would mean that nobody
5 physically reviewed these photos other than the
6 person who took them.
7    Q    When an inspector is sent out to a
8 property to perform an inspection which results in
9 a reporting generated like this one, are they given
10 a description of the property?
11    A    The assignment comes with certain
12 information about the property.  Clearly the
13 address, probably the phone number of the
14 inspection contact and there may be additional
15 information about the property, but I'm unaware as
16 I sit here what exactly that would have been.
17    Q    Where would the assignment document be
18 located, within the underwriting file or someplace
19 else?
20    A    There is no assignment document.
21    When an appointment is booked for an
22 inspection, the software that we use for booking
23 the appointments will suggest dates and times and
24 inspectors who will be in the area on those dates
25 and times, which allows us to give the insured the

**Page 20**

1
2 opportunity to make a selection about when they
3 want the appointment and at that point in time when
4 they make their selection, that indicates who the
5 inspector will be.  It's random, it just depends on
6 the date they pick and the area it's in.
7    The inspectors get a download every
8 night of appointments that have been booked for
9 them the next day and that download would have
10 included, you know, the information I just talked
11 to you about and so that's how they learn about the
12 inspection.
13    Q    Would the inspector receive a copy of
14 the application?
15    A    No.
16    Q    Does the inspector receive a
17 description of the property?
18    A    I believe I've already testified to the
19 extent that I can recall what they get.  Beyond
20 that, I cannot tell you, I don't have an
21 independent recollection right now.
22    Q    Is there anything on Plaintiff's
23 Exhibit 1 which would indicate who performed the
24 inspection on behalf of RoundHill and Union Mutual?
25    A    I am looking at it as you scroll down

**21**

1
2  and I don't see anything so far that indicates who
3  did the inspection.
4       Q     Are any instructions given to the
5  inspector before performing an inspection?
6       A     When we first bring someone on board to
7  train as an inspector, we go through a training
8  process, but once that is done, there are no
9  further instructions given about it.  So there's no
10  instructions given with respect to any particular
11  inspection.
12       Q     Is there a training manual, a manual
13  issued to the inspectors as part of this training
14  process?
15       A     No.
16       Q     When an inspector goes out to a
17  property to perform an inspection, what is the
18  expectation as to what they will photograph?
19       A     The expectation is that we'll see the
20  photographs that you see here and that is the
21  heating system, the electrical, public access
22  stairs if there are any and sidewalks.  Those are
23  the primary concerns of the inspection.
24       Q     I'll start from the top.
25             Do you see the public access stairs?

**22**

1
2       A     I see the front of the building, the
3  back of the building, sidewalk including what
4  appears to be three steps going into the building.
5  An interior shot of a staircase.  Electrical
6  meters, gas meters and a furnace.
7       Q     Would this report indicate that there's
8  a rear stairwell to the basement at the insured
9  location?
10       A     No, it does not as far as I can tell
11  from looking at it.
12       Q     If the insured location did have an
13  exterior staircase to the basement, would that have
14  been an oversight on behalf of the inspector?
15             MR. BORON:  Objection as form.
16       A     No, not really.  If there had been
17  issues with it, like, for example, if the steps
18  were broken and the inspector perceived it as being
19  hazardous, he would have taken a photo of that and
20  marked it as an issue.
21       Q     So he would have only taken a photo if
22  he or she perceived the stairwell as hazardous?
23       A     I believe so.
24       Q     When the inspection is performed, does
25  it require that the homeowner be present during the

**23**

1
2  inspection or can it be done without the
3  homeowner's presence?
4       A     When the broker binds a risk, we ask
5  for a name and telephone number for an inspection
6  contact and that person will receive text messages
7  or phone calls from us in order to schedule an
8  appointment for the inspection.  We don't know if
9  that person is the homeowner or the building owner
10  or the landlord or a managing agent for the
11  building or the handyman and when the inspection
12  takes place, we don't know who will be there, but
13  we require someone to be there to provide us access
14  to the building.
15       Q     Have you ever seen Fred Lee before?
16       A     Certainly not.  Not to my knowledge.
17       Q     When an inspector performs an
18  inspection, are they instructed or trained to
19  upload all of the photographs they take or just
20  some of the photographs they take?
21       A     The software that they use captures all
22  the photos and they're all uploaded.  If they take
23  the photo, it is uploaded.
24       Q     Apart from the locations and the
25  writing that's contained in Plaintiff's Exhibit 1,

**24**

1
2  does the inspection report have any accompanying
3  notes or narrative or other written correspondence
4  with it?
5       A     No, this is the complete report.
6       Q     As of 2017, more specifically in July,
7  what vendors were utilized for property inspections
8  on behalf of Union Mutual?
9       A     We did not use -- pardon me.
10             (Pause.)
11       A     We used several independent contractors
12  to perform inspections, but they are individual
13  people, we do not hire an outside company.  The
14  names of the people who were working in July of
15  2017 I could find out, but I do not recall who they
16  are as we speak.
17             MR. AGULNICK:  I'm going to
18       respectfully ask that you do obtain those
19       names and provide them to counsel at your
20       first opportunity, please and we're going to
21       call for the production of those names.
22             MR. BORON:  Scott, we will address any
23       requests for further records or documents that
24       you send us, but we're not going to simply
25       agree that this transcript, itself, reflects

JAMES LAMBERT



**25**

2  your requests because we want to know
3  specifically what you're looking for and then
4  we want to deal with it as we need to deal
5  with it, especially considering the scheduling
6  order that's in place in this case and the
7  time frame that's in place in this case to get
8  all discovery done, okay?
9      MR. AGUINICK:  Your position is noted.
10     Thank you, sir.
11 ** INFORMATION REQUESTED AND/OR DOCUMENTS TO BE
12 SUPPLIED:
13     Q      With regard to 39-11 27th Street and
14 I'm going to scroll down to page three of five, are
15 you able to identify where that photograph was
16 taken inside the insured location?
17     A      No.
18     Q      I'll scroll down to page four of five,
19 which indicates Electrical - Clean and there are
20 two photographs.
21            Are you able to identify where in the
22 insured location those photographs were taken?
23     A      No.
24     Q      I'm going to scroll down to page five
25 of five.  There's a photograph there next to a

**26**

2  notation Heating - Clean.
3            Are you able to identify where in the
4  insured location that photograph was taken?
5      A      No.
6      Q      Based upon your experience, are you
7  able to make an educated guess as to where the hot
8  water heater and the heating equipment would be
9  located at the insured location?
10     A      No, I cannot.
11     MR. BORON:  Objection as to form.
12     Q      Based upon your review of this report,
13 are you able to identify when these photographs
14 were first in the possession of RoundHill Express
15 on behalf of Union Mutual?
16     A      There's a notation on the report that
17 it was reviewed and assembled on July 11, 2017 and
18 I believe that the inspection took place on or
19 about that date and that the report was generated
20 on or about that date.
21     Q      Are the inspection reports provided to
22 Union Mutual?
23     A      The inspection reports are in our
24 underwriting file and are available to Union Mutual
25 upon audit or request, but otherwise not.

**27**

2      Q      Do you have any knowledge as to whether
3  this underwriting file was subject to audit or
4  request at any point prior to the date of the loss,
5  March 2, 2020?
6      MR. BORON:  Objection to the question,
7      the form of it.
8      A      Not to my knowledge.
9      Q      Now with regard to the investigation of
10 the March 2, 2020 loss, did RoundHill undertake an
11 investigation and adjustment of this claim?
12     A      I have no independent recollection of
13 this claim or its adjustment, but in the normal
14 course of business, if a claim is made to us, we
15 will undertake to retain someone to investigate and
16 adjust the claim and defend the insured if it's a
17 liability claim.
18     Q      In that same ordinary process, would
19 the person or persons who are investigating and
20 adjusting the claim review the underwriting file of
21 the insured location?
22     A      In the normal course of business, I do
23 not believe that happens.
24     MR. AGUINICK:  Off the record.
25     (Discussion off the record.)

**28**

2      Q      Sir, I am going to show you what's
3  going to be marked Plaintiff's Exhibit 2 and I will
4  represent that this document, which is a 216-page
5  document, was furnished to us and indicated to be
6  the claims file for the claim of Fred Lee.
7      (Plaintiff's Exhibit 2, copy of claim
8      file Bates stamped 000001 - 00000216, was marked
9      for identification.  Exhibit retained by
10     counsel.)
11     Q      I'm just going to scroll and I'm not
12 going to ask you to review 216 pages as your
13 counsel fears and again, you've never reviewed this
14 claim file, correct?
15     A      I have no recollection of having done
16 so.
17     Q      Do you have knowledge as to whether
18 these documents and this claim file were prepared
19 and maintained in the ordinary course of business
20 by RoundHill Express?
21     A      In the ordinary course of business,
22 RoundHill Express maintains claims files and if
23 these documents were produced to you by counsel in
24 this litigation, I would suspected that they got it
25 from our claims system and so they were kept in the

JAMES LAMBERT



29

1
2      ordinary course of business, but I have no specific
3      knowledge about this specific claim file.
4          Q      Thank you.
5                 I'm going to refer you to page 18 of
6      Plaintiff's Exhibit 2.
7                 What is relationship between Beltrani
8      Consultants and RoundHill Express?
9          MR. BORON:  Just a minute, Scott.
10                You called it page 18, but there are
11     Bates numbers in the bottom right-hand corner
12     of all the pages, so are you referring to the
13     Bates number or something else?
14         MR. AQUNICK:  Eric, I may disagree
15     with you on many fronts, but you're a hundred
16     percent in that.
17         Q      So, sir, I'm just simply going to
18     referring to Bates stamp 17.
19         MR. BORON:  Thank you.
20         Q      On Bates stamped 17, Exhibit 2, it
21     appears to be a report from Beltrani Consultants.
22                What relationship does Beltrani
23     Connecticut have with RoundHill?
24         A      My understanding is that Beltrani
25     Consultants is an independent adjustment firm that

31

1
2      am -- if somebody asked me right now to produce an
3      underwriting file, I would have to go to our IT
4      department and ask them how do we do that.
5          Q      I'm going to scroll down to Bates stamp
6      18, down to Occupancy.  The paragraph under the
7      word Occupancy, would you kindly just read to that
8      yourself?
9          (Witness reviewing document.)
10         A      I have read that.
11         Q      This report indicates a separate
12     entrance to the basement area and we discussed the
13     2017 inspection report which did not show a
14     separate entrance to the basement area and if my
15     recollection is correct, that was because you
16     presume that there was no hazard with regard to
17     that separate entrance?
18         MR. BORON:  Objection as to form.
19         A      I don't believe that's what I said.  I
20     believe what I indicated was that there might have
21     been a photo of a rear staircase to the building if
22     the inspector had noted something hazardous about
23     that so he can call out something on the
24     inspection.
25         Q      Are the inspectors instructed to take

30

1
2      we utilize from time to time on property claims to
3      go out and see the loss site and prepare reports
4      for us so the internal adjuster can handle
5      adjusting the file.
6          Q      In the ordinary course of business, is
7      an outside adjuster such as Beltrani Consultants
8      provided with the underwriting file?
9          A      To my knowledge, no.
10         Q      Do you know if Beltrani Consultants was
11     provided with the underwriting file in this case?
12         A      I have no specific knowledge about this
13     claim, so I can't speak to that specific question.
14         Q      Is there anything in a typical claim
15     file such as claims notes which would indicate
16     whether Beltrani was provided an underwriting file?
17         A      I do not believe it is possible that
18     that took place because I am unaware of any process
19     by which we can distribute an underwriting file to
20     anybody.  All of our files are paperless and held
21     in electronic form and so it would not be easy for
22     anyone to be provided with a copy of the
23     underwriting file and so I don't believe it
24     possible in this case.
25                It would have to have involved me and I

32

1
2      photos of all entrances to an insured location as
3      part of the inspection?
4          A      No.
5          Q      Do you know what, if any, action was
6      taken by RoundHill Express or Union Mutual to
7      review or inquire as to whether the basement
8      location had been viewed prior to this loss?
9          MR. BORON:  Objection as to form.
10         A      I don't understand the question.
11         Q      In response to this report by Harry
12     Beltrani, do you know if RoundHill or Union Mutual
13     ever inquired as to whether an inspection was
14     performed in the basement at the insured location
15     previously?
16         A      I do not know.
17         Q      Are there any policies or procedures
18     which would indicate that a review of the
19     underwriting file would be relevant to the
20     adjustment of a claim?
21         A      No.
22         Q      As we sit here today, your knowledge
23     with regard to this claim would be confined to
24     anything contained within the claim file if you
25     took the time to sit and review it; is that



33

1
2  correct?
3      A    I don't understand that question; can
4  you repeat that?
5      Q    If we gave you all the time in the
6  world to sit and review the claim file, your
7  knowledge of this claim would be confined to
8  whatever you read therein; is that correct?
9      A    I do not have any independent
10  recollection of this claim and if you let me review
11  the claim file, all I would know is what's in the
12  claim file.
13      Q    Thank you.  I'm certainly not going to
14  make you do that.
15          Does Union Mutual or RoundHill Express
16  have guidelines or memorandum of documentation
17  which relate to the definition of an apartment unit
18  as the term is utilized in an application for
19  insurance?
20      A    No.
21      Q    Do you have an understanding as to the
22  definition of apartment unit as it is utilized in
23  connection with application for insurance from
24  Union Mutual?
25      A    I know that we ask about the number of

34

1
2  apartment units in a risk when we are quoting it
3  because the number of units will have a significant
4  impact on the pricing of the premium.
5      Q    Does that question pertain to legal
6  units, illegal units, something else?
7          MR. BORON:  Objection as to form.
8      A    We do not draw a distinction between
9  legal or illegal units.  The premium we are
10  required to charge by New York State is a function
11  of the number of apartments.
12      Q    Well, what constitutes the definition
13  of an apartment?
14          MR. BORON:  Objection as to form.
15      A    Do you want my definition; do you want
16  the most recent court decision definition?  I mean
17  my definition doesn't really matter here.
18      Q    Okay.  Well, what is the definition
19  that is utilized by RoundHill Express in connection
20  with applications?
21      A    We don't have a definition.  We ask how
22  many apartments are there.
23      Q    But what constitutes an apartment as
24  far as RoundHill and Union Mutual are concerned?
25      A    I personally consider places in which

35

1
2  people reside to be apartments, but my personal
3  definition is not material here, it's how the
4  courts define apartments.
5          MR. AGUENICK:  Can you please read back
6      the answer?
7          (The preceding answer was read.)
8      Q    So is your personal belief that if no
9  people reside there, it's not an apartment?
10      A    No.  If it's capable of someone
11  residing there, it's an apartment.
12      Q    What does it mean to be capable of
13  someone residing there?
14      A    I don't know.
15      Q    Would that capability involve the
16  legality of the apartment?
17      A    No.
18      Q    Is it relevant as to whether a person
19  can legally be capable of living there?
20      A    No.
21      Q    So what definition of apartment is
22  utilized by RoundHill Express?
23      A    We don't utilize a definition.  We ask
24  a question, how many apartments are in the
25  building.

36

1
2      Q    But is there an understanding of what
3  the term "apartment unit" means when Union Mutual
4  poses the question?
5      A    I'm not capable of telling you what
6  that question generates within the minds of people
7  who are filling out the application.
8      Q    But respectfully are you capable of
9  advising us as to what RoundHill and Union Mutual
10  interprets that question to mean?
11      A    We don't --
12          MR. BORON:  Objection.
13      A    We don't interpret the question, we
14  simply ask the question.
15      Q    Do you believe that question can be
16  interpreted differently by different people?
17      A    I certainly have seen case law in which
18  judges have provided different interpretations.
19      Q    So do you believe that it could be
20  interpreted more than one way?
21          MR. BORON:  Objection as to form.
22      A    Everything can be interpreted more than
23  one way.
24      Q    Is the question that pertains to
25  apartment units on the application one of those

JAMES LAMBERT



37

1
2      things that can be interpreted in more than one
3      way?
4          A      We ask about the number of apartment
5      units in the building.  I think it's a fairly clear
6      question.
7          Q      But you indicated that different courts
8      have interpreted apartment unit in different ways,
9      isn't that your testimony?
10              MR. BORON:  Objection as to form.
11         A      That is a comment I made, yes.
12         Q      So as you sit here today, do you
13     believe that that question can be interpreted in
14     more than one way?
15         A      I think it's a --
16              MR. BORON:  Objection.
17         A      -- very clear question how many
18     apartments were in the building.
19         Q      So again, I'll ask again if it's clear
20     to you what constitutes an apartment as the term is
21     used in the application.
22         A      I think the question is clear it's how
23     many apartments are in the building.
24         Q      What does an apartment consist of; are
25     there particular elements that make up an

38

1
2      apartment?
3          A      I'm sure there are many elements that
4      make up an apartment.
5          Q      What is the understanding of Union
6      Mutual as to those elements which together would
7      make up an apartment?
8          A      We do not have a definition of
9      apartment that we use, we simply ask the question,
10     how many apartments are there in the building.
11         Q      So as far as Union Mutual and RoundHill
12     is concerned, there's no set of elements necessary
13     to constitute an apartment?
14              MR. BORON:  Objection as to form.
15         A      We do not have a standard description
16     of the elements necessary to constitute an
17     apartment.
18         Q      Does an apartment, as far as RoundHill
19     and Union Mutual are concerned, require cooking
20     facilities?
21         A      We merely ask how many apartments are
22     in the building.
23         Q      Okay.  My question is does an
24     apartment, as far as RoundHill and Union Mutual is
25     concerned, require cooking facilities?

39

1
2          A      Do you mean do they have to be there
3      every single day of the year or do you mean that
4      the space is capable of having cooking take place
5      in it?
6          Q      I'm saying that for something to be an
7      apartment, you have to be able to cook something
8      there.
9          A      I don't agree with you because if you
10     had a 50-unit apartment building and you took all
11     the stoves out, it would still be a 50-unit
12     apartment building even though you took the stoves
13     out.  It doesn't change the building.
14         Q      If cooking facilities were removed in a
15     50-unit apartment building, would those units be
16     able to be lawfully inhabited?
17         A      I am unfamiliar with the New York City
18     code with respect to that.
19         Q      Does the legal prohibition to
20     habitation have any bearing on the determination by
21     RoundHill Express or Union Mutual as to whether
22     something is an apartment?
23              MR. BORON:  Objection as to form.
24         A      I don't understand the question.
25         Q      If a space is not considered an

40

1
2      apartment that could be lawfully inhabited under
3      the law, does that have any relevance to Union
4      Mutual's determination as to whether a space is an
5      apartment?
6          A      No.
7          Q      Do you have an understanding as to the
8      difference between a finished basement and an
9      apartment?
10              MR. BORON:  Objection to form.
11         A      I do not.
12         Q      Does the application utilized by Union
13     Mutual ask how many kitchens are at an insured
14     location?
15         A      I don't believe it does.
16         Q      Does the application for insurance ask
17     how many bathrooms are at an insured location?
18         A      I do not believe it does.
19         Q      Does the application for insurance ask
20     how many families reside at an insured location?
21         A      I don't believe it does.
22         Q      Does the application for insurance ask
23     how many gas meters are at an insured location?
24         A      No.
25         Q      Does an application for insurance ask

JAMES  LAMBERT

41

1
2      how many electric meters are at an insured
3      location?
4          A      No.
5          Q      Does the application for insurance ask
6      if there's a certificate of occupancy for the
7      insured location?
8          A      No.
9          Q      As part of the underwriting process,
10     does anyone inquire as to certificate of occupancy
11     at an insured location?
12         A      No.
13         Q      Does the application for insurance ask
14     how many sinks are at an insured location?
15         A      No.
16         Q      Do you have any understanding as to the
17     window requirements for a bedroom in the City of
18     New York?
19         A      I do not.
20         MR. AGULNICK:  Withdrawn.
21         Q      Do you have any understanding as to the
22     legal requirements for a room to constitute a
23     bedroom in the City of New York?
24         A      No.
25         Q      Do you have any understanding as to the

42

1
2      legal requirements for space to constitute a
3      kitchen capable of use in the City of New York?
4          A      No.
5          Q      As far as Union Mutual and RoundHill
6      Express is concerned, is there any difference
7      between an apartment unit and an apartment?
8          A      No.
9          Q      I'm going to refer you to Bates stamp
10     23.  I'm going to scroll through the photographs,
11     scrolling to 24.
12         (Attorney scrolling.)
13         Q      The photo sheets end at Bates stamp 36.
14         Now are you able to look at the
15     photograph in 36 and tell me if based upon what you
16     see in the photograph -- and I'll make it bigger --
17     does this rear staircase indicate any risk --
18         MR. BORON:  Objection to form.
19         Q      -- or hazard?
20         MR. AGULNICK:  I'll rephrase.
21         Q      If you look at this photograph on Bates
22     stamp 36, looking at this photograph, based upon
23     your experience, can you tell if the staircase
24     poses any hazard?
25         A      From this photograph I cannot.

43

1
2          Q      I'm going to show you the photograph on
3      page 35.
4          Looking at this photograph, does this
5      appear to be the same hot water heater and heating
6      equipment that you viewed in Plaintiff's Exhibit 1?
7          A      I have no idea.  This photograph is so
8      dark, I can't even see if there's heating equipment
9      in there.
10         Q      I'll stop at page Bates stamp 33.
11         Have you ever seen this photograph
12     before?
13         A      Not to my knowledge.
14         Q      Did you ever discuss this photograph
15     with anyone before?
16         A      I have no independent recollection of
17     this photograph at all.
18         Q      Again, prior to testifying here today,
19     you've never reviewed the claim file?
20         MR. BORON:  Objection to form.
21         A      I did not review this claim file in
22     preparation for this examination.
23         Q      Did you review this claim file for any
24     other purpose?
25         A      Not to my knowledge.

44

1
2          Q      I'm going to show you the photo, the
3      top photo on 33.
4          Can you tell me what this photograph
5      depicts?
6          A      No, I cannot.  I see some boxes.
7          Q      Do you see a window in this photograph?
8          A      This photograph shows two walls with
9      material stacked in front of them.  I don't know
10     what's behind those materials, but there's no
11     evident window.
12         MR. AGULNICK:  Just give me one moment.
13         (Pause.)
14         Q      At this time I'm going to show you
15     what's going to be marked as Plaintiff's Exhibit 3.
16     This is a ten-page document that I'm going to
17     scroll through.
18         (Plaintiff's Exhibit 3, copy of
19     DEFENDANT'S OBJECTIONS AND RESPONSES TO
20     PLAINTIFFS' FIRST DEMAND FOR INTERROGATORIES
21     dated March 16, 2021, was marked for
22     identification.  Exhibit retained by counsel.)
23         Q      Sir, do you recognize the document
24     marked as Plaintiff's Exhibit 3?
25         A      I recognize that this is headed as



45

1
2    response to interrogatories, I recognize my
3    signature on the document.  I don't have any
4    particular independent recollection of this
5    document.
6        Q    Do you have any recollection of reading
7    this document?
8        A    As I sit here today, no.
9        Q    Did you answer questions that were
10   posed by plaintiff in the form of demand for
11   interrogatories?
12       MR. BORON:  Objection as to form.
13       A    I don't understand the question.
14       Q    Did you ever review a document that was
15   entitled PLAINTIFFS' DEMAND FOR INTERROGATORIES?
16       A    I have no recollection of that.
17       Q    Can you read the first question and the
18   response, please?
19       A    State the name, address and title of
20   the person who is answering these interrogatories.
21       RESPONSE: James Lambert.
22       Q    And you don't have a recollection of
23   answering these interrogatories; is that correct?
24       MR. BORON:  Objection to form.
25       A    As I sit here, no.  I'm not denying

46

1
2    that's my signature, though.
3        Q    No.  We'll get to that.
4        (Pause.)
5        MR. AQUINICK:  Eric, just as a matter
6    of housekeeping, the witness gave a P.O. box
7    as an address.  Generally speaking, in the
8    event we need to serve a subpoena, we
9    typically need a physical address.  That said,
10   I don't have a compelling need to have a
11   physical address if your office would accept a
12   subpoena on his behalf in the event he leaves
13   RoundHill Express.
14       MR. BORON:  Scott, you're raising a
15   hypothetical that doesn't exist in this case,
16   but we'd be happy to talk to you to avoid
17   motion practice if it comes to the point where
18   you are wanting to serve somebody and you
19   don't have their personal address and they
20   were once affiliated with Union Mutual or
21   RoundHill.  We can then discuss.
22       MR. AQUINICK:  Well, the issue is not
23   hypothetical.  Generally speaking, when we ask
24   for a business address, a P.O. box is not a
25   business address.

47

1
2        Is there an alternative business
3    address that can be provided that solves the
4    issue?
5        MR. BORON:  Well, no, it doesn't
6    because you're not going to be serving
7    Mr. Lambert, he's our client, we're defending
8    Union Mutual in the lawsuit, so we're not
9    going to be allowing our witnesses to be
10   served by you when we represent them.
11       MR. AQUINICK:  All right, your position
12   is noted.  Our position is that we're entitled
13   to a physical address, but there's certainly
14   no need to argue further on the issue.
15       Q    Can you read the third question and the
16   response?
17       A    Set forth the name, title, employer of
18   the person who rendered any coverage determination
19   with regard to the Subject Claim.
20       RESPONSE:  James Lambert.
21       Q    Did you render coverage determination
22   with regard to the claim of the Lees?
23       A    I don't have an independent
24   recollection of that, but based on the answer to
25   that question, I would presume that I did.

48

1
2        Q    Is there any medical or physiological
3    reason or basis which would impair your ability to
4    recollect such things?
5        MR. BORON:  Objection as to form.
6        What do you mean by "such things,"
7    Scott?
8        MR. AQUINICK:  Okay.
9        Q    Mr. Lambert, can you read the date on
10   this document?
11       A    March 16, 2021.
12       Q    Are you aware of any medical or
13   physiological reasons why you would have difficulty
14   recollecting answering questions as of March 16,
15   2021?
16       MR. BORON:  Objection as to form.
17       A    I am 65 years old and I'm very busy and
18   I find it quite reasonable that I might not
19   remember something specific that I did more than a
20   month ago.  I'm not denying that I answered these.
21       Q    Well, reading these responses, does
22   that refresh your recollection as to whether you
23   ever reviewed the claim file in this case?
24       A    It does not.
25       Q    As you sit here today, you do not know

JAMES LAMBERT

49

1
2     what the coverage determination of the Lees' claim
3     was, correct?
4          A     As I sit here today, I have no
5     independent recollection of the coverage
6     determination here.
7          Q     Can you please read the question and
8     answer for number six?
9          A     Question six:  Set forth the factual
10    basis upon which Defendant relied to deny or
11    decline any portion of the Subject Claim.
12               RESPONSE:  Plaintiffs misrepresented
13    facts.
14         Q     Is that the position of Roundhill and
15    Union Mutual?
16               MR. BORON:  Objection as to form.
17         A     I read you the response and that
18    question.  Plaintiffs misrepresented facts.
19         Q     I'm asking you is that the position of
20    Roundhill and Union Mutual, that plaintiffs
21    misrepresented the facts?
22               MR. BORON:  Objection as to form.
23         A     I have repeatedly stated that I have no
24    independent recollection of this claim and so I
25    can't answer that question.

50

1
2          Q     As of March 16, 2021, did you have an
3     independent recollection of this claim?
4          A     I believe yes.
5          Q     So you believe at some point you did
6     know about the claim?
7          A     Oh, absolutely.
8          Q     Reviewing this document, you believe at
9     some point you reviewed the claim file in this
10    claim?
11         A     No, that is not necessarily so.  I
12    could have had discussions with the claims adjuster
13    on the file.
14         Q     Can you read the question and answer
15    for number seven, please?
16         A     Set forth whether defendant adjusted
17    the loss, irrespective of the coverage
18    determination.  If so, set forth each Coverage A,
19    B, C, and D:
20               A.  The replacement cost adjusted by
21    Defendant;
22               B.  The actual cash value adjusted by
23    the Defendant;
24               C.  The recoverable depreciation
25    adjusted by the Defendant.

51

1
2          Q     Now can you read the response?
3          A     RESPONSE:  Union Mutual objects to this
4     interrogatory on the basis of it being unduly vague
5     and ambiguous.  It is unclear what the
6     interrogatory's reference to "Coverage A, B, C, and
7     D" concerns.  Subject to and without waiving this
8     objection, Union Mutual provides the following
9     response.
10               Adjustment was made only under the
11    Commercial Property Coverage:
12               A.  $113,001.5
13               B.  $108,640.87.
14               C.  $4,360.18
15         Q     Do you know what Coverage A is on an
16    insurance policy?
17               MR. BORON:  Objection as to form.
18         A     No, I don't adjust property claims.
19         Q     Are you familiar with the coverages on
20    a Union Mutual policy?
21               MR. BORON:  Objection as to form.
22               MR. AQUINICK:  I'll rephrase it.
23         Q     With regard to the Lees' policy, are
24    you familiar with what the coverages are?
25         A     The property coverages?

52

1
2          Q     Yes.
3          A     No.
4          Q     So do you know what Coverage A coverage
5     in the Lees' policy covers?
6          A     No.
7          Q     Do you know if Coverage A under a Union
8     Mutual policy covers the dwelling?
9          A     I don't know.
10         Q     Do you know if Coverage C under a Union
11    Mutual policy covers the contents?
12         A     I don't know.
13         Q     Do you know what Coverage B or Coverage
14    D covers?
15         A     I do not know.
16         Q     So on A where it says $113,001.50, what
17    was that the adjustment for?
18         A     If you will scroll up, I'm working on
19    the assumption that the response to A relates to A
20    above, the replacement cost adjusted by defendant.
21         Q     But the replacement cost for what;
22    dwelling, contents, other structures, something
23    else?
24         A     I don't know.
25         Q     What about B?



53

1
2      A      I'm assuming that refers to B above,
3   where you request the actual cash value adjusted by
4   the defendant.
5      Q      But as you read this question and
6   answer, you don't know what coverages it's
7   referring to?
8      A      That's correct.
9           MR. BORON:  Objection as to form.
10     Q      So you don't know if it's contents, if
11  it's dwelling or something else?
12     A      That's correct.
13     Q      Can you read the question and answer
14  for number 15?
15     A      Question 15:  Set forth whether
16  Defendant claims there was a stove connected in the
17  basement of the Subject Premises.
18          RESPONSE:  Yes.
19     Q      What is that response based upon?
20     A      I have no independent recollection of
21  that.
22     Q      You have no independent recollection of
23  what you based your response on?
24     A      That's correct.
25     Q      Have you ever seen a document that you

54

1
2   can recall which indicates that there was a stove
3   connected in the basement of the subject premises?
4           MR. BORON:  Objection to form.
5      A      Is that question limited to this claim?
6      Q      Yes.
7      A      In the course of this examination, you
8   scrolled through a series of photographs, one of
9   which I thought referenced a basement kitchen and
10  showed a stove or oven, so there's that.
11     Q      Well, did you review that photograph
12  prior to giving your answer in these responses to
13  interrogatories?
14     A      I have no independent recollection of
15  what took place.
16     Q      Apart from that photograph, are you
17  aware of any other information which would indicate
18  that that photograph was actually connected in the
19  basement of the subject premises?
20          MR. BORON:  Objection as to form.
21     A      I have no independent recollection of
22  that.
23     Q      Did you ever speak with Mr. Beltrani as
24  to whether he performed any investigation as to
25  whether that stove was actually connected in the

55

1
2   basement of the subject premises?
3      A      I have no independent recollection of
4   that.
5      Q      Do you know if the stove that you're
6   referencing was gas or electric or something else?
7      A      I have no independent recollection of
8   that.
9      Q      Can you read just the question number
10  17?
11     A      Question 17.  Set forth the date of
12  each inspection of the Subject Premises by
13  Defendant, including before, during, or after the
14  issuance of the Policy, setting forth:
15          A.  The name and company of the
16  individual who performed the inspection.
17          B.  Identify and annex a copy of any
18  and all inspection reports or other documented
19  generated in connection with any inspection.
20     Q      In response you stated in part:
21  Subject premises was inspected by an inspector
22  retained by RoundHill Express LLC to perform a
23  limited underwriting inspection on July 17, 2017;
24  do you see that?
25     A      I do.

56

1
2      Q      Do you know if during that inspection,
3   the inspector was in the basement at the insured
4   location?
5      A      I do not know.
6      Q      Is the term "limited underwriting
7   inspection" as used by you in your response a term
8   of art or were you just indicating that the
9   inspection was limited in some way?
10          MR. BORON:  Objection as to form.
11     A      The underwriting inspections that we do
12  focus entirely upon the inspector taking
13  photographs of certain aspects of the risk being
14  insured and indicating on those photographs whether
15  there are issues or whether they're clean.
16          An inspection of that nature is
17  significantly smaller in scope than an inspection
18  that might be produced by an outside firm that does
19  underwriting inspections for insurance companies.
20  The limited refers to that distinction.
21     Q      At any time did you inquire as to
22  whether the inspector was physically in the
23  basement at the insured location on July 17, 2017?
24     A      I have no recollection of that.
25     Q      In reviewing the photographs of the



57

1
2          inspection of 2017, did you formulate any opinion
3          as to whether the inspector was in the basement of
4          the insured location at that time?
5              A     I did not.
6              Q     As you sit here today, have you
7          formulated an opinion as to whether the inspector
8          was in the insured location basement --
9              A     I have not.
10             Q     -- as of July 17, 2017?
11             If the heating system and the hot water
12         system were located in the basement, would that
13         lead you to believe that the inspector was in the
14         basement as of the time of the inspection?
15             MR. BORON:  Objection as to form.
16             A     The inspection report that we reviewed
17         earlier showed a heating system and water heater.
18         If those were in the basement, then the inspector
19         was in there to take pictures of them.
20             Q     If the gas meters were located in the
21         basement of the insured location, would the
22         existence of photographs of those gas meters as of
23         July 17, 2017 indicate that RoundHill's inspector
24         was physically in the basement?
25             A     Yes.

58

1
2              Q     If the electric meters were located in
3          the basement at the insured location, would the
4          existence of photographs of those electric meters
5          as of July 17, 2017 indicate that the inspector was
6          in the basement?
7              A     Yes.
8              Q     Was Mr. Beltrani ever provided with
9          those photographs, whether in a report or not, of
10         the inspection of 2017?
11             A     I have no independent recollection on
12         that question.
13             Q     Scroll down to page ten of ten, is the
14         last page.
15             Can you read the paragraph contained
16         therein immediately above your signature?
17             A     JAMES LAMBERT, being duly sworn,
18         deposes and says:  That he is the President of
19         Roundhill Express, LLC, third-party administrator
20         for, and agent of, Defendant Union Mutual Fire
21         Insurance Company; that he has read the foregoing
22         Objections and Responses to Plaintiffs' First
23         Demand for Interrogatories and knows the contents
24         thereof; and verifies the responses contain the
25         responsive available to the defendant.

59

1
2              Q     Is that your signature above the name
3          JAMES LAMBERT?
4              A     That is.
5              Q     As of the time you gave these answers
6          to the interrogatories, did you know the contents
7          thereof at that time?
8              MR. BORON:  Objection as to form.
9              A     We are referring to the contents of
10         this document, correct?
11             Q     What was your understanding of what you
12         signed?
13             A     That I signed something saying I had
14         read and understood the contents of this document.
15             Q     Okay.
16             At the time you signed this document,
17         were you able to verify that the responses were
18         true and complete, to the best of your knowledge at
19         that time?
20             MR. BORON:  Objection as to form.
21             A     One, that language is not the language
22         above my signature.
23             Q     No, I'm asking the question.
24             A     Oh.
25             Since I have no independent

60

1
2          recollection of what was in my mind at the time I
3          signed that document, I'm unable to comment on that
4          question.
5              Q     When you signed this document, was it
6          your understanding that you were verifying the
7          answers contained in the response?
8              A     The language in the paragraph is that I
9          verified the responses contain the responsive
10         information available to the defendant and when I
11         signed it, I believed that to be true.
12             MR. AQUINICK:  Would now be a decent
13         time to take like a ten-minute break, would
14         that be okay?
15             MR. BORON:  Okay.
16             (Short recess taken.)
17             Q     Sir, Mr. Beltrani, he's an independent
18         contractor, correct?
19             A     Yes.
20             Q     Do you have any recollection of ever
21         speaking with Mr. Beltrani about the claim of the
22         Lees?
23             A     I have no recollection of that.
24             Q     Who was the in-house adjuster at
25         RoundHill that handled this file?

JAMES LAMBERT

61

1
2          A    I don't know, but I saw in the claim
3    file as you were scrolling through the name
4    Ernestine, so it's possible it was Ernestine
5    Gorham.
6          Q    Is Ernestine Gorham still with
7    RoundHill?
8          A    Yes.
9               MR. AGUINICK:  Sir, at this time, with
10   all rights reserved, I have no further
11   questions.  Thank you.
12              (Time noted: 3:05 p.m.)
13
14                    _____
15                       JAMES LAMBERT
16   Subscribed and sworn to before me
17   this _____ day of _____, 2021
18   _____
19        NOTARY PUBLIC
20
21
22
23
24
25

62

1
2                    E X H I B I T S
3
4    PLAINTIFF'S EXHIBITS:
5
6    EXHIBIT    EXHIBIT                        PAGE
     NUMBER     DESCRIPTION
7       1       Copy of five-page
                RoundHill Express Inspections
8               report
                Bates stamped 000361 - 000365   15
9
        2       Copy of claim file
10              Bates stamped 000001 - 00000216  28
11      3       Copy of DEFENDANT'S OBJECTIONS
                AND RESPONSES TO PLAINTIFFS'
12              FIRST DEMAND FOR INTERROGATORIES
                dated March 16, 2021             44
13
14
15
16
17
18
19
20
21
22
23
24
25

63

1
2                    I N D E X
3
4    EXAMINATION BY                        PAGE
     MR. AGUINICK                             4
5
6
7
8    INFORMATION REQUESTED                   25
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1
2                 C E R T I F I C A T E
3
4    STATE OF NEW YORK  )
5    COUNTY OF SUFFOLK  )  SS.:
6
7
8          I, JOANN O'LOUGHLIN, a Notary Public for
9    and within the State of New York, do hereby
10   certify:
11          That the witness whose examination is
12   hereinbefore set forth was remotely sworn and that
13   such examination is a true record of the testimony
14   given by that witness.
15          I further certify that I am not related
16   to any of the parties to this action by blood or
17   by marriage and that I am in no way interested in
18   the outcome of this matter.
19          IN WITNESS WHEREOF, I have hereunto set
20   my hand this 4th day of June, 2021.
21
22                    _____
23                       JOANN O'LOUGHLIN
24
25

$10864087 51:13

$1130015 51:12

$11300150 52:16

$436018 51:14

& 2:4,8 3:15 4:25 (4)

000001 28:8 62:10

00000216 28:8 62:10

000361 16:2 62:000361

000365 16:2 62:000361

216page 28:4

27th 5:7 8:17 9:2 10:22 17:10 25:13 (6)

4th 64:20

50unit 39:10,11,15

ability 5:23 48:3

able 14:2 25:15,21 26:3,7,13 39:7,16 42:14 59:17 (10)

about 12:19 19:12,15 20:2,11,11 21:9 26:19,20 29:3 30:12 31:22 33:25 37:4 50:6 52:25 60:21 (17)

above 52:20 53:2 58:16 59:2,22 (5)

aboveentitled

1:17

absolutely 12:16 50:7

accept 46:11

acceptable 10:2,4

access 21:21,25 23:13

accommodate 5:17

accompanying 24:2

action 1:17 5:2 32:5 64:16 (4)

actual 11:24 50:22 53:3

actually 54:18,25

addition 7:13

additional 19:14

address 4:21 19:13 24:22 45:19 46:7,9,11,19,24,25 47:3,13 (12)

adjust 7:20 27:16 51:18

adjusted 50:16,20,22,25 52:20 53:3 (6)

adjuster 30:4,7 50:12 60:24 (4)

adjusting 27:20 30:5

adjustment 7:14,18,24 27:11,13 29:25 32:20 51:10 52:17 (9)

administer 3:11

administrator 58:19

advising 36:9

affiliated 46:20

after 3:15 10:6,17 55:13 (4)

afternoon 4:23

again 28:13 37:19,19 43:18 (4)

against 1:7 5:3

agency 7:10

agent 6:20 23:10 58:20

ago 16:12 48:20

agree 24:25 39:9

agreed 3:5,18

agreement 4:9

agulnick 2:4,6 4:13,18,24,25 12:2,6,8,11,16 15:20 16:4,12,15 24:17 25:9 27:24 29:14 35:5 41:20 42:20 44:12 46:5,22 47:11 48:8 51:22 60:12 61:9 63:4 (31)

allowing 47:9

allows 18:13 19:25

already 20:18

also 2:13 14:10

alternative 47:2

am 14:8 20:25 28:2 30:18 31:2 39:17 48:17 64:15,17 (9)

ambiguous 51:5

amount 8:7,12

andor 25:11

ann 1:4 5:2 8:16,22,25 11:3,7,22 12:3,21 15:3 (11)

annex 55:17

answer 9:22 11:11 35:6,7 45:9 47:24 49:8,25 50:14 53:6,13 54:12 (12)

answered 48:20

answering 45:20,23 48:14

answers 59:5 60:7

anybody 30:20

anyone 3:10 12:17 30:22 41:10 43:15 (5)

anything 15:12 20:22 21:2 30:14 32:24 (5)

apart 23:24 54:16

apartment 33:17,22 34:2,13,23 35:9,11,16,21 36:3,25 37:4,8,20,24 38:2, 4,7,9,13,17,18,24 39:7,10,12,15,22

40:2,5,9 42:7,7 (33)

apartments 7:7 34:11,22 35:2,4,24 37:18,23 38:10,21 (10)

appear 43:5

appears 17:8 22:4 29:21

application 10:7,11 20:14 33:18,23 36:7,25 37:21 40:12,16,19,22,25 41:5,13 (15)

applications 34:20

appointed 6:20

appointment 19:21 20:3 23:8

appointments 19:23 20:8

approaching 6:10

approximately 6:8

ardsley 4:22

are 3:19 4:7 5:9,13 6:16 8:3 9:8 10:20 11:8,24 12:7 15:10 16:6 17:22 18:19,20 19:9 21:4,8,22,22 23:18 24:12,16 25:14,19,21 26:3,6,13,21,23,24 27:19 29:10,12 30:20 31:25 32:17 34:2,9,22,24 35:24 36:7,8 37:23,24 38:3,10,19,21

40:13,17,23 41:2,14 42:14 46:18 48:12 51:19,23,24 54:16 56:15 59:9 (66)

**area** 7:6 19:24 20:6 31:12,14 (5)

**argue** 47:14

**arising** 7:21

**around** 7:7

**art** 56:8

**ask** 5:4,18 16:4 23:4 24:18 28:12 31:4 33:25 34:21 35:23 36:14 37:4,19 38:9,21 40:13,16,19,22,25 41:5,13 46:23 (23)

**asked** 31:2

**asking** 49:19 59:23

**aspects** 56:13

**assembled** 17:15 26:17

**assignment** 19:11,17,20

**associated** 8:4

**assume** 6:5

**assuming** 53:2

**assumption** 52:19

**attorney** 5:15 16:23 42:12

**attorneys** 2:4,9 3:6

---

**audit** 26:25 27:3

**authority** 7:3,5

**authorized** 3:10

**automatically** 18:22

**available** 16:9 26:24 58:25 60:10 (4)

**avoid** 46:16

**aware** 10:20 15:10,14 48:12 54:17 (5)

**b** 4:15 50:19,22 51:6,13 52:13,25 53:2 55:17 62:2 (10)

**back** 18:2 22:3 35:5

**based** 11:8 13:7 26:6,12 42:15,22 47:24 53:19,23 (9)

**basement** 22:8,13 31:12,14 32:7,14 40:8 53:17 54:3,9,19 55:2 56:3,23 57:3, 8,12,14,18,21,24 58:3,6 (23)

**basis** 48:3 49:10 51:4

**bates** 15:25 28:8 29:11,13,18,20 31:5 42:9,13,21 43:10 62:10 (12)

**bathrooms** 40:17

**bearing** 39:20

**because** 11:12 16:8 25:2 30:18

---

31:15 34:3 39:9 47:6 (8)

**bedroom** 41:17,23

**before** 1:15,19 3:10,12 6:6 16:4 17:3,5,7 21:5 23:15 43:12,15 55:13 61:16 (15)

**beginning** 15:5

**behalf** 1:16 7:4,17,21,24 20:24 22:14 24:8 26:15 46:12 (10)

**behind** 44:10

**being** 4:5,11 13:5,9 18:16,17 22:18 51:4 56:13 58:17 (10)

**belief** 35:8

**believe** 12:11,22 20:18 22:23 26:18 27:23 30:17,23 31:19,20 36:15,19 37:13 40:15,18,21 50:4,5,8 57:13 (20)

**believed** 60:11

**beltrani** 29:7,21,22,24 30:7,10,16 32:12 54:23 58:8 60:17,21 (12)

**best** 5:23 59:18

**between** 3:6 7:11 29:7 34:8 40:8 42:7 (6)

**beyond** 20:19

**big** 16:16

---

**bigger** 42:16

**bind** 7:4 10:5

**binds** 23:4

**bite** 5:16

**blood** 64:16

**board** 21:6

**book** 6:22,25 7:2

**booked** 19:21 20:8

**booking** 19:22

**boron** 2:11 4:14 10:23 11:10,23 12:4,7,9,13 14:17 16:10,13 22:15 24:22 26:11 27:6 29:9,19 31:18 32:9 34:7,14 36:12,21 37:10,16 38:14 39:23 40:10 42:18 43:20 45:12,24 46:14 47:5 48:5,16 49:16,22 51:17,21 53:9 54:4,20 56:10 57:15 59:8,20 60:15 (49)

**bottom** 29:11

**boulevard** 2:5

**bound** 8:3 10:17,18 13:7 (4)

**box** 4:22 46:6,24

**boxes** 44:6

**break** 5:14,20 60:13

**bring** 21:6

**broken** 22:18

---

**broker** 10:9 12:24 13:6 23:4 (4)

**brokerinsured** 18:25

**brokers** 9:19

**brought** 5:3

**buffalo** 2:10

**building** 2:1300 22:2,3,4 23:9,11,14 31:21 35:25 37:5,18,23 38:10,22 39:10,12,13,15 (18)

**buildings** 7:5,8

**business** 6:19 7:2 9:5,19 27:14,22 28:19,21 29:2 30:6 46:24,25 47:2 (13)

**busy** 48:17

**button** 10:11

**c** 2:2 50:19,24 51:6,14 52:10 64:2,2 (8)

**call** 24:21 31:23

**called** 14:21 29:10

**calls** 23:7

**can** 5:20 6:25 9:4,16,21 10:5,6 12:14 15:22 17:11,14 18:17 20:19 22:10 23:2 30:4,19 31:23 33:3 35:5,19 36:15,22 37:2,13 42:23 44:4 45:17

46:21 47:3,15 48:9 49:7 50:14 51:2 53:13 54:2 55:9 58:15 (39)

**can't** 30:13 43:8 49:25

**cannot** 5:21 20:20 26:10 42:25 44:6 (5)

**capability** 35:15

**capable** 35:10,12,19 36:5,8 39:4 42:3 (7)

**captures** 23:21

**carrier's** 16:6

**case** 1:6 12:15 25:6,7 30:11,24 36:17 46:15 48:23 (9)

**cases** 6:12

**cash** 50:22 53:3

**casualty** 6:21

**cause** 10:15

**certain** 19:11 56:13

**certainly** 23:16 33:13 36:17 47:13 (4)

**certificate** 41:6,10

**certification** 3:7

**certify** 64:10,15

**change** 8:7,11 39:13

**charge** 34:10

**city** 5:8 6:22 7:7 8:17 39:17 41:17,23 42:3 (8)

**civil** 1:6

**cj** 16:5,7

**claim** 8:21 11:3,5,7,13,15,16 15:3,10,11 27:11,1 3,14,16,17,20 28:6,7,14,18 29:3 30:13,14 32:20,23,24 33:6,7,10,11,12 43:19,21,23 47:19,22 48:23 49:2,11,24 50:3,6,9,10 54:5 60:21 61:2 62:2 (48)

**claims** 6:12,14 7: 14,15,18,18,20,24 8:5 28:6,22,25 30:2,15 50:12 51:18 53:16 (17)

**clarity** 12:23

**clean** 17:24 18:3, 5,7,8,8,9,18,19,22 19:4 25:19 26:2 56:15 (14)

**clear** 37:5,17,19,22 (4)

**clearly** 19:12

**clicks** 10:11

**client** 47:7

**code** 39:18

**come** 8:15

**comes** 19:11 46:17

**comment** 17:23

37:11 60:3

**comments** 17:23 18:21

**commercial** 51:11

**commission** 8:2,3,6,11 (4)

**companies** 56:19

**company** 1:8 6:21 24:13 55:15 58:21 (5)

**compelling** 46:10

**compensated** 7:23

**complete** 24:5 59:18

**computer** 10:13

**concerned** 34:24 38:12,19,25 42:6 (5)

**concerns** 21:23 51:7

**confined** 32:23 33:7

**connected** 53:16 54:3,18,25 (4)

**connecticut** 29:23

**connection** 8:21 9:11 10:14 33:23 34:19 55:19 (6)

**consider** 34:25

**considered** 39:25

**considering** 25:5

**consist** 37:24

**constitute** 38:13,16 41:22 42:2 (4)

**constitutes** 34:12,23 37:20

**consult** 5:14

**consultants** 29:8,21,25 30:7,10 (5)

**contact** 19:14 23:6

**contain** 58:24 60:9

**contained** 14:5 23:25 32:24 58:15 60:7 (5)

**contents** 52:11,22 53:10 58:23 59:6,9,14 (7)

**contract** 7:10

**contractor** 60:18

**contractors** 13:17 24:11

**cook** 39:7

**cooking** 38:19,25 39:4,14 (4)

**copy** 3:13,16 15:24 20:13 28:7 30:22 44:18 55:17 62:7,2,11 (11)

**corner** 29:11

**correct** 11:9,17,18 15:19 28:14 31:15 33:2,8 45:23 49:3

53:8,12,24 59:10 60:18 (15)

**correspondence** 24:3

**cost** 8:4 50:20 52:20,21 (4)

**could** 13:4,6,20 15:6 24:15 36:19 40:2 50:12 (8)

**counsel** 3:16 5:13 16:3 24:19 28:10,13,23 44:22 (8)

**county** 64:5

**course** 9:4 27:14,22 28:19,21 29:2 30:6 54:7 (8)

**court** 1:2 3:12 4:2,4 5:21 34:16 (6)

**courts** 35:4 37:7

**coverage** 9:25 10:5 13:7 15:2 47:18,21 49:2,5 50:17,18 51:6,11,15 52:4,4,7,10,13,13 (19)

**coverages** 13:4 51:19,24,25 53:6 (5)

**covers** 52:5,8,11,14 (4)

**credentials** 9:20

**cursory** 17:12

**d** 3:2 50:19 51:7 52:14 63:2 (5)

**dark** 43:8

| | | | | |
|---|---|---|---|---|
| **date** 5:6 15:3 17:18 20:6 26:19,20 27:4 48:9 55:11 (9) | **denied** 15:11 | **disagree** 29:14 | **doesn't** 9:11 34:17 39:13 46:15 47:5 (5) | **electronic** 30:21 |
| **dated** 44:21 | **deny** 49:10 | **discovery** 25:8 | | **elements** 37:25 38:3,6,12,16 (5) |
| **dates** 19:23,24 | **denying** 45:25 48:20 | **discuss** 43:14 46:21 | **done** 9:5,9,17 21:8 23:2 25:8 28:15 (7) | **else** 14:7,23 15:12,12 17:20 19:19 29:13 34:6 52:23 53:11 55:6 (11) |
| **day** 20:9 39:3 61:17 64:20 (4) | **department** 14:22 31:4 | **discussed** 31:12 | **down** 5:21 17:21 20:25 25:14,18,24 31:5,6 58:13 (9) | |
| **days** 3:15 | **depending** 8:7,11 | **discussion** 27:25 | **download** 20:7,9 | **elsewhere** 14:10,11 |
| **deal** 25:4,4 | **depends** 20:5 | **discussions** 50:12 | **dozen** 6:10,11 | **email** 18:24 |
| **deceive** 5:10 | **depicts** 44:5 | **dispute** 15:18 | **draw** 34:8 | **employed** 6:16 |
| **decent** 60:12 | **deposes** 58:18 | **distinction** 34:8 56:20 | **dropdown** 18:13 | **employee** 12:25 13:5,8 |
| **decision** 34:16 | **deposition** 3:8,9,13 4:5 15:14 (5) | **distribute** 30:19 | **duly** 58:17 | **employer** 47:17 |
| **decline** 49:11 | **depositions** 6:6,8 | **district** 1:2,2 | **during** 22:25 55:13 56:2 | **enable** 9:20 |
| **deem** 15:22 | **depreciation** 50:24 | **document** 15:21 16:16,21,25 17:3,7 19:17,20 28:4,5 31:9 44:16,23 45:3,5,7,14 48:10 50:8 53:25 59:10,14,16 60:3,5 (25) | **dwelling** 52:8,22 53:11 | **end** 42:13 |
| **defend** 27:16 | **description** 19:10 20:17 38:15 62:6 (4) | | **e** 2:2,2,6 3:2,2 4:15,15 62:2 63:2 64:2,2 (11) | **entire** 13:2 |
| **defendant** 1:9,16 2:9 49:10 50:16,21,23,25 52:20 53:4,16 55:13 58:20,25 60:10 (15) | **designed** 5:9 | **documentation** 33:16 | **each** 50:18 55:12 | **entirely** 56:12 |
| | **details** 13:20 | **documented** 55:18 | **earlier** 16:6 57:17 | **entities** 13:23 |
| **defendant's** 44:19 62:11 | **determination** 15:2 39:20 40:4 47:18,21 49:2,6 50:18 (8) | **documents** 8:21 24:23 25:11 28:18,23 (5) | **eastern** 1:2 | **entitled** 45:15 47:12 |
| **defending** 47:7 | **difference** 40:8 42:6 | **does** 7:13,17 8:6,11 10:15 13:22,25 17:17 20:16 22:10,24 24:2 29:22 33:15 34:5 35:12 37:24 38:18,23 39:19 40:3,12,15,16,18,19, 21,22,25 41:5,10,13 42:17 43:4 48:21,24 56:18 (37) | **easy** 30:21 | **entity** 14:21,24 |
| **define** 35:4 | **different** 13:4 36:16,18 37:7,8 (5) | | **eat** 5:16 | **entrance** 31:12,14,17 |
| **definition** 33:17,22 34:12,15, 16,17,18,21 35:3,21,23 38:8 (12) | **differently** 36:16 | | **educated** 26:7 | **entrances** 32:2 |
| | **difficulty** 48:13 | | **effect** 3:11,14 | **equipment** 1:18 4:6 26:8 43:6,8 (5) |
| **demand** 44:20 45:10,15 58:23 62:12 (5) | **dint** 15:13 | | **electric** 18:8 41:2 55:6 58:2,4 (5) | **eric** 2:11 16:5 29:14 46:5 (4) |
| | | | **electrical** 18:7 21:21 22:5 25:19 (4) | **ernestine** 61:4,4,6 |
| **demarco** 2:13 | | | | **especially** 25:5 |

JAMES  LAMBERT

| | | | | |
|---|---|---|---|---|
| **esq** 2:6,11,13 | **expense** 8:4 | 33:6,11,12 43:19,21,23 48:23 50:9,13 60:25 61:3 62:2 (36) | 40:10 42:18 43:20 45:10,12,24 48:5,16 49:16,22 51:17,21 53:9 54:4,20 56:10 57:15 59:8,20 (36) | 46:7,23 |
| **essentially** 17:8 18:14 | **experience** 26:6 42:23 | | | **generated** 19:9 26:19 55:19 |
| **even** 39:12 43:8 | **explain** 6:25 9:16 10:6 | **files** 28:22 30:20 | **formulate** 57:2 | **generates** 36:6 |
| **event** 46:8,12 | **explained** 12:22 | **filing** 3:7 | **formulated** 57:7 | **geographical** 7:6 |
| **ever** 23:15 32:13 43:11,14 45:14 48:23 53:25 54:23 58:8 60:20 (10) | **express** 6:17,20 7:3 11:20 13:12 14:19,22 15:25 26:14 28:20,22 29:8 32:6 33:15 34:19 35:22 39:21 42:6 46:13 55:22 58:19 62:7 (22) | **filling** 36:7 | **forth** 47:17 49:9 50:16,18 53:15 55:11,14 64:12 (8) | **gestures** 5:22 |
| | | **fills** 10:10 | | **get** 20:7,19 25:7 46:3 (4) |
| | | **find** 24:15 48:18 | | **give** 19:25 44:12 |
| **every** 20:7 39:3 | | **fine** 2:8 | **forward** 10:5 13:6 | **given** 4:11 19:9 21:4,9,10 64:14 (6) |
| **everything** 19:4 36:22 | | **finished** 40:8 | **forwarded** 16:5,7,14 | |
| **evident** 44:11 | **express'** 6:19 | **fire** 1:8 6:21 58:20 | | **giving** 54:12 |
| **exactly** 14:8 19:16 | **extent** 7:5 20:19 | **firm** 4:24 29:25 56:18 | **four** 25:18 | **go** 9:20 21:7 30:3 31:3 (4) |
| | **exterior** 22:13 | | **frame** 25:7 | |
| **examination** 1:15 4:18 43:22 54:7 63:4 64:11,13 (7) | **f** 3:2 64:2 | **first** 4:16 17:23 21:6 24:20 26:14 44:20 45:17 58:22 62:12 (9) | **fred** 1:4 4:25 8:16,22,25 11:3,7,21 12:3,20 15:3 23:15 28:6 (13) | **goes** 21:16 |
| **examined** 4:17 | **facilities** 38:20,25 39:14 | **five** 25:14,18,24,25 (4) | **front** 17:24 22:2 44:9 | **going** 5:4 6:4 15:20,21 16:17,22 22:4 24:17,20,24 25:14,24 28:2,3,11,12 29:5,17 31:5 33:13 42:9,10 43:2 44:2,14,15,16 47:6,9 (29) |
| **example** 18:15 22:17 | **facts** 49:13,18,21 | | | |
| | **factual** 49:9 | **fivepage** 15:24 16:21 62:7 | **fronts** 29:15 | |
| **except** 3:19 | **fairly** 37:5 | **focus** 56:12 | **function** 34:10 | |
| **exhibit** 15:23,24 16:3,18 20:23 23:25 28:3,7,9 29:6,20 43:6 44:15,18,22,24 62:6,6 (18) | **familiar** 51:19,24 | **following** 17:9 51:8 | **furnace** 22:6 | **good** 4:23 |
| | **families** 40:20 | **follows** 4:17 | **furnished** 28:5 | **gorham** 61:5,6 |
| | **far** 21:2 22:10 34:24 38:11,18,24 42:5 (7) | **force** 3:14 | **further** 3:18 21:9 24:23 47:14 61:10 64:15 (6) | **got** 28:24 |
| **exhibits** 16:5 62:4 | **fears** 28:13 | **foregoing** 58:21 | | **great** 9:12 |
| **exist** 46:15 | **file** 11:15 14:6,9,16 18:23 19:18 26:24 27:3,20 28:6,8,14,18 29:3 30:5,8,11,15,16,19 ,23 31:3 32:19,24 | **form** 3:19 10:23 11:10,23 14:17 22:15 26:11 27:7 30:21 31:18 32:9 34:7,14 36:21 37:10 38:14 39:23 | **gas** 22:6 40:23 55:6 57:20,22 (5) | **greenblat** 2:4 |
| **existence** 57:22 58:4 | | | **gave** 33:5 46:6 59:5 | **greenblatt** 4:25 |
| | | | | **grounds** 12:5 |
| **expectation** 21:18,19 | | | **generally** 10:18 | **guess** 6:5 26:7 |

JAMES LAMBERT

70

| | | | | |
|---|---|---|---|---|
| guidelines 33:16 | heater 26:8 43:5 57:17 | hundred 29:15 | including 22:3 55:13 | inspection 10:15,18,21 13:10,13,15,19 |
| h 62:2 | heating | hurwitz 2:8 | independent 10:24 11:5,12,14 | 14:3,5,14 16:21 17:9,9 |
| habitation 39:20 | 18:8,16,17 21:21 26:2,8 43:5,8 | hypothetical 46:15,23 | 13:17 15:8 17:4 20:21 24:11 27:12 | 19:2,8,14,22 20:12,24 |
| hand 64:20 | 57:11,17 (10) | | 29:25 33:9 43:16 | 21:3,5,11,17,23 |
| handle 7:20,23 | held 1:17 4:5 | i'll 12:4,8 16:18 21:24 25:18 37:19 | 45:4 47:23 49:5,24 50:3 | 22:24 23:2,5,8,11,18 |
| 30:4 | 30:20 | 42:16,20 43:10 | 53:20,22 54:14,21 | 24:2 26:18,21,23 |
| handled 60:25 | here 5:5,13,25 | 51:22 (10) | 55:3,7 58:11 59:25 60:17 (27) | 31:13,24 32:3,13 55:12,16,18,19,23 |
| handling 8:5 | 8:20 11:4 14:25 15:17 19:16 21:20 | i'm 4:24 6:4 9:11 11:11 15:14,20,21 | indicate 17:17 | 56:2,7,9,16,17 57:2,14,16 58:10 |
| handyman 23:11 | 32:22 34:17 35:3 37:12 43:18 | 16:17,21 19:15 24:17 25:14,24 | 20:23 22:7 30:15 32:18 42:17 54:17 | (52) |
| happened 15:14 | 45:8,25 48:25 49:4,6 57:6 (20) | 28:11,11 29:5,17 31:5 33:13 36:5 | 57:23 58:5 (9) | inspections 13:18,24 14:19,22 |
| happens 10:7 27:23 | hereby 3:5 64:9 | 38:3 39:6 42:9,10 43:2 44:2,14,16 | indicated 28:5 31:20 37:7 | 15:25 24:7,12 56:11,19 62:7 (10) |
| happy 46:16 | herein 3:7 4:15 | 45:25 48:17,20 49:19 52:18 53:2 | indicates 19:3 | inspector 18:20 19:7 20:5,13,16 |
| harry 32:11 | hereinbefore 64:12 | 59:23 60:3 (36) | 20:4 21:2 25:19 31:11 54:2 (6) | 21:5,7,16 22:14,18 23:17 31:22 55:21 |
| has 7:3 58:21 | hereunto 64:19 | i've 20:18 | indicating 14:13 | 56:3,12,22 57:3,7,13,18,23 |
| having 4:16 17:5,6 28:15 39:4 | hire 24:13 | idea 43:7 | 18:25 56:8,14 (4) | 58:5 (22) |
| (5) | his 46:12 | identification 16:3 28:9 44:22 | individual 9:7 13:12 14:4 24:12 | inspectors 18:12 19:24 20:7 21:13 |
| hazard 31:16 42:19,24 | homeowner 22:25 23:9 | identify 14:2 18:14,16,17 | 55:16 (5) | 31:25 (5) |
| hazardous 22:19,22 31:22 | homeowner's 23:3 | 25:15,21 26:3,13 55:17 (9) | individuals 13:16 | instructed 23:18 31:25 |
| he 10:9,11 22:19,21,22 31:23 | hot 26:7 43:5 57:11 | identity 13:23 14:4 | information 9:23 10:10,12 19:12,15 | instructions 6:2 21:4,9,10 (4) |
| 46:12 54:24 58:18,21 (10) | housekeeping 46:6 | illegal 34:6,9 | 20:10 25:11 54:17 60:10 63:8 (10) | insurance 1:8 33:19,23 |
| he's 47:7 60:17 | how 6:8 7:23 | immediately 58:16 | inhabited 39:16 40:2 | 40:16,19,22,25 41:5,13 51:16 |
| head 5:22 | 11:11 20:11 31:4 34:21 35:3,24 | impact 34:4 | inhouse 60:24 | 56:19 58:21 (12) |
| headed 44:25 | 37:17,22 38:10,21 40:13,17,20,23 | impair 48:3 | inquire 32:7 41:10 56:21 | insured 10:16 13:10,14 19:25 |
| hear 15:5 | 41:2,14 (18) | important 5:24 | inquired 32:13 | 22:8,12 25:16,22 26:4,9 27:16,21 |
| hears 5:23 | human 13:9 | included 20:10 | inside 25:16 | 32:2,14 40:13,17,20,23 |
| | | includes 8:4 | inspected 55:21 | 41:2,7,11,14 |

56:3,14,23 57:4,8,21 58:3 (29)

**interested** 64:17

**interior** 22:5

**internal** 30:4

**interpret** 36:13

**interpretations** 36:18

**interpreted** 36:16,20,22 37:2,8,13 (6)

**interprets** 36:10

**interrogatories** 44:20 45:2,11,15,20,23 54:13 58:23 59:6 62:12 (10)

**interrogatory** 51:4

**interrogatory's** 51:6

**into** 18:23 22:4

**investigate** 27:15

**investigating** 27:19

**investigation** 7:15,19 27:9,11 54:24 (5)

**involve** 35:15

**involved** 9:6 13:2,6,9 30:25 (5)

**involvement** 8:24 13:8

**irrespective**

50:17

**is** 3:5,18 4:2,5,11,19,21,24 5:18,24 6:18,20 7:5,10,23 9:5,8,13,14,21 10:2,4,7,9,12,13,17,1 7 11:9,16,18,19 13:18 14:9,10,15,1 8,19,21,22 15:16,18,19 16:16 17:7,12,24 18:9,22,24 19:7,20,21 20:22 21:8,12,17,19,20 22:24 23:9,23 24:5 25:9 27:14 28:4 29:7,24,25 30:6,14,17 31:15 32:25 33:8,11,18,22 34:10,18,19 35:3,8,18,21 36:2,24 37:11,20,22 38:5,12,23,24 39:4,22,25 40:4 42:6,6 43:7 44:16,25 45:20,23 46:22,24 47:2,12,12 48:2 49:14,19 50:11 51:5,15 53:19 54:5 56:6,16 58:13,18 59:2,4,21 60:8 61:6 64:11,13 (129)

**island** 5:8 8:17

**isn't** 37:9

**issuance** 55:14

**issue** 7:21 11:25 22:20 46:22 47:4,14 (6)

**issued** 8:25 11:21 12:3,9,20 21:13 (6)

**issues** 18:18 22:17 56:15

**its** 27:13

**itself** 24:25

**j** 4:15

**james** 1:15 4:20 45:21 47:20 58:17 59:3 61:14 (7)

**joann** 1:19 4:2 64:8,22 (4)

**judge** 3:12

**judges** 36:18

**july** 24:6,14 26:17 55:23 56:23 57:10,23 58:5 (8)

**june** 64:20

**just** 5:11,16 11:12 12:11,14 20:5,10 23:19 28:11 29:9,17 31:7 44:12 46:5 55:9 56:8 (16)

**kept** 28:25

**kindly** 17:11 31:7

**kitchen** 42:3 54:9

**kitchens** 40:13

**know** 5:11,17 8:19 11:11 12:17 13:19 14:9 15:18 16:7 17:7 18:18 20:10 23:8,12 25:2 30:10 32:5,12,16 33:11,25 35:14 44:9 48:25 50:6 51:15 52:4,7,9,10, 12,13,15,24 53:6,10 55:5

56:2,5 59:6 61:2 (41)

**knowledge** 11:2,6,20 12:18 13:13,19 15:2 23:16 27:2,8 28:17 29:3 30:9,12 32:22 33:7 43:13,25 59:18 (19)

**knows** 58:23

**l** 3:2,2 4:15

**lambert** 1:16 4:20,23 6:4 45:21 47:7,20 48:9 58:17 59:3 61:14 (11)

**landlord** 6:25 23:10

**landlords** 7:6

**landlordtenant** 6:23

**language** 59:21,21 60:8

**last** 18:9,15 58:14

**law** 4:24 36:17 40:3

**lawfully** 39:16 40:2

**lawsuit** 11:25 47:8

**lead** 57:13

**learn** 20:11

**leaves** 46:12

**lee** 1:4,4 5:2 8:17,22 9:2 11:3,7,22 12:3,21

15:3 23:15 28:6 (14)

**lees** 47:22 60:22

**lees'** 49:2 51:23 52:5

**lefthand** 17:22

**legal** 34:5,9 39:19 41:22 42:2 (5)

**legality** 35:16

**legally** 35:19

**legs** 5:16

**let** 5:11,16 33:10

**liability** 27:17

**liberty** 2:1300

**like** 5:14 9:24 19:9 22:17 60:13 (5)

**limited** 7:5 54:5 55:23 56:6,9,20 (6)

**line** 17:14

**litigation** 28:24

**living** 35:19

**llc** 6:17 55:22 58:19

**located** 14:6,10,11 19:18 26:9 57:12,20 58:2 (8)

**location** 5:7 10:16,21 13:10,14 22:9,12 25:16,22 26:4,9 27:21 32:2,8,14 40:14,17,20,23

41:3,7,11,14
56:4,23 57:4,8,21
58:3 (29)

locations 23:24

logging 9:20

long 5:7 8:17
16:12

look 42:14,21

looking 18:15
20:25 22:11 25:3
42:22 43:4 (6)

loss 5:6 15:4
27:4,10 30:3 32:8
50:17 (7)

losses 8:7

m 4:15,15

made 16:8 27:14
37:11 51:10 (4)

maintain 13:22

maintained
11:8,16 14:15
28:19 (4)

maintains 28:22

make 5:23 12:14
20:2,4 26:7 33:14
37:25 38:4,7
42:16 (10)

managing 23:10

manual 21:12,12

many 6:8 29:15
34:22 35:24
37:17,23
38:3,10,21
40:13,17,20,23
41:2,14 (15)

march 5:6 15:4

27:5,10 44:21
48:11,14 50:2
62:16 (9)

marked 15:22
16:2 18:19 22:20
28:3,8 44:15,21,24
(9)

marriage 64:17

material 35:3
44:9

materials 44:10

matter 34:17
46:5 64:18

may 3:9,13 19:14
29:14 (4)

me 5:11 14:20
16:14 24:9 30:25
31:2 33:10 42:15
44:4,12 61:16 (11)

mean 9:16 19:4
34:16 35:12 36:10
39:2,3 48:6 (8)

means 7:2 36:3

medical 48:2,12

memorandum
33:16

menu 18:13

merely 38:21

messages 23:6

meters 22:6,6
40:23 41:2
57:20,22 58:2,4
(8)

metropolitan
6:22

might 31:20

48:18 56:18

mind 60:2

minds 36:6

minute 29:9

misrepresented
49:12,18,21

moment 44:12

money 8:12

month 48:20

more 24:6
36:20,22 37:2,14
48:19 (6)

most 5:24 34:16

motion 46:17

moved 13:6

mutual 1:8 5:3
6:12,14,21
7:4,11,18,22,25
8:8,12 12:20
13:22,25 16:19
17:19 20:24 24:8
26:15,22,24
32:6,12 33:15,24
34:24 36:3,9
38:6,11,19,24
39:21 40:13 42:5
46:20 47:8
49:15,20 51:3,8,20
52:8,11 58:20 (46)

mutual's 40:4

my 4:2,23 5:9,11
6:2 15:13 17:11
23:16 27:8 29:24
30:9 31:14
34:15,17 35:2
38:23 43:13,25
45:2 46:2 59:22
60:2 64:20 (23)

n 2:2 3:2 63:2

name 4:2,19,23
14:24 23:5 45:19
47:17 55:15 59:2
61:3 (10)

names
24:14,19,21

narrative 24:3

nature 6:18
56:16

necessarily 50:11

necessary
38:12,16

neck 2:11021

need 25:4
46:8,9,10 47:14
(5)

never 28:13
43:19

new 1:2,20
2:11021,10 4:3,22
5:8 6:22 7:7 8:17
34:10 39:17
41:18,23 42:3
64:4,9 (17)

next 20:9 25:25

night 18:20 20:8

no 1:6 6:15
8:10,14,23 9:3
10:24 11:4,12,14
12:11,25 14:18,24
17:4 19:20 20:15
21:8,9,15 22:10,16
24:5 25:17,23
26:5,10 27:12
28:15 29:2
30:9,12 31:16
32:4,21 33:20
35:8,10,17,20
38:12 40:6,24

41:4,8,12,15,24
42:4,8 43:7,16
44:6,10 45:8,16,25
46:3 47:5,14
49:4,23 50:11
51:18 52:3,6
53:20,22 54:14,21
55:3,7 56:24
58:11 59:23,25
60:23 61:10 64:17
(79)

nobody 19:4

nods 5:22

none 5:9

normal 27:13,22

northern 2:5

notary 1:19
4:3,16 61:18 64:8
(5)

notation 26:2,16

noted 25:9 31:22
47:12 61:12 (4)

notes 24:3 30:15

notice 1:18 17:22

now 20:21 27:9
31:2 42:14 51:2
60:12 (6)

number 19:13
23:5 29:13 33:25
34:3,11 37:4 49:8
50:15 53:14 55:9
62:6 (12)

numbers 29:11

o 3:2

o'loughlin 1:19
4:3 64:8,22 (4)

oath 3:11

JAMES LAMBERT

| | | | | |
|---|---|---|---|---|
| **object** 12:4 | **opinion** 57:2,7 | **pages** 28:12 29:12 | 13:17,24 19:8 21:17 24:12 55:22 (6) | 23:19,20 25:20,22 26:13 42:10 54:8 56:13,14,25 57:22 58:4,9 (15) |
| **objection** 10:23 11:10,23 14:17 22:15 26:11 27:6 31:18 32:9 34:7,14 36:12,21 37:10,16 38:14 39:23 40:10 42:18 43:20 45:12,24 48:5,16 49:16,22 51:8,17,21 53:9 54:4,20 56:10 57:15 59:8,20 (36) | **opportunity** 16:24 20:2 24:20 | **paid** 8:12 14:14 15:12 | **performed** 9:13 10:16,21 12:19 13:13,16 14:5 20:23 22:24 32:14 54:24 55:16 (12) | **photos** 18:19,20 19:5 23:22 32:2 (5) |
| | **order** 23:7 25:6 | **paperless** 30:20 | | |
| | **ordinary** 27:18 28:19,21 29:2 30:6 (5) | **paragraph** 31:6 58:15 60:8 | **performing** 21:5 | **physical** 46:9,11 47:13 |
| | | | **performs** 23:17 | **physically** 19:5 56:22 57:24 |
| | **original** 3:9,15 12:20 | **pardon** 14:20 24:9 | **person** 4:12 5:24 11:19 13:18,23 14:2,14 18:23 19:6 23:6,9 27:19 35:18 45:20 47:18 (15) | **physiological** 48:2,13 |
| **objections** 3:19 44:19 58:22 62:11 (4) | **other** 5:15 12:9 19:5 24:3 43:24 52:22 54:17 55:18 (8) | **part** 10:10 21:13 32:3 41:9 55:20 (5) | | **pick** 20:6 |
| | | **partially** 15:12 | | **pictures** 57:19 |
| **objects** 51:3 | **otherwise** 26:25 | **particular** 11:19 21:10 37:25 45:4 (4) | **personal** 11:2,20 12:18 35:2,8 46:19 (6) | **place** 12:24 13:5 23:12 25:6,7 26:18 30:18 39:4 54:15 (9) |
| **obtain** 9:23,25 24:18 | **our** 9:5,5,20 10:11 12:24 18:21 26:23 28:25 30:20 31:3 47:7,9,12 (13) | **parties** 3:6 4:9,10 64:16 (4) | **personally** 34:25 | |
| **obtaining** 13:3 | | | **persons** 27:19 | **places** 34:25 |
| **occupancy** 31:6,7 41:6,10 (4) | **out** 8:12 19:7 21:16 24:15 30:3 31:23 36:7 39:11,13 (9) | **partner** 4:24 | **pertain** 5:5 34:5 | **plaintiff** 45:10 |
| | | **passed** 18:25 | **pertaining** 16:20 | **plaintiff's** 15:22,24 16:18 20:22 23:25 28:3,7 29:6 43:6 44:15,18,24 62:4 (13) |
| **occupied** 7:8 | | **pause** 24:10 44:13 46:4 | **pertains** 36:24 | |
| **off** 27:24,25 | **outcome** 64:18 | | **phone** 19:13 23:7 | |
| **office** 46:11 | **outside** 24:13 30:7 56:18 | **pay** 7:20 | **photo** 17:23 18:9,14,16 22:19,21 23:23 31:21 42:13 44:2,3 (11) | **plaintiffs** 1:5 2:4 49:12,18,20 (5) |
| **oh** 50:7 59:24 | | **payment** 7:24 14:12,15 | | **plaintiffs'** 44:20 45:15 58:22 62:11 (4) |
| **old** 48:17 | **oven** 54:10 | **pc** 2:4,8 | | |
| **once** 10:3 21:8 46:20 | **over** 15:18 | **pending** 5:19,19 15:7 | **photograph** 21:18 25:15,25 26:4 42:15,16,21,22,25 43:2,4,7,11,14,17 44:4,7,8 54:11,16,18 (21) | **play** 7:14,17 |
| | **oversight** 22:14 | | | |
| **one** 5:11 12:12 13:16 18:15 19:9 36:20,23,25 37:2,14 44:12 54:8 59:21 (13) | **owned** 7:6 | **people** 24:13,14 35:2,9 36:6,16 (6) | | **please** 5:11,22 24:20 35:5 45:18 49:7 50:15 (7) |
| | **owner** 23:9 | **perceived** 22:18,22 | | |
| **only** 22:21 51:10 | **p** 2:2,2 3:2 | | | **pm** 1:12 61:12 |
| | **page** 25:14,18,24 29:5,10 43:3,10 58:13,14 62:6 63:4 (11) | **percent** 29:16 | **photographs** 18:13 21:20 | |
| **onto** 12:24 | | **perform** | | |
| **operate** 13:16 | | | | |

JAMES LAMBERT

74

po 4:22 46:6,24

point 10:8 13:20 20:3 27:4 46:17 50:5,9 (7)

policies 6:23,25 7:4,21 8:3,8,13 12:9 32:17 (9)

policy 8:16,25 9:4 10:15,17 11:21,24 12:3,12,20 14:13 15:11 51:16,20,23 52:5,8,11 55:14 (19)

portion 6:11 49:11

posed 45:10

poses 36:4 42:24

position 25:9 47:11,12 49:14,19 (5)

possession 26:14

possible 30:17,24 61:4

possibly 13:3

potential 10:16

practice 46:17

preceding 35:7

premises 10:19 53:17 54:3,19 55:2,12,21 (7)

premium 34:4,9

preparation 43:22

prepare 30:3

prepared 28:18

presence 15:13 23:3

present 2:13 22:25

president 58:18

presume 31:16 47:25

previously 32:15

pricing 34:4

primary 21:23

prior 8:20 27:4 32:8 43:18 54:12 (5)

probably 6:10 19:13

procedures 32:17

proceed 10:5

process 10:6 12:19,22,23 13:2,3 21:8,14 27:18 30:18 41:9 (11)

produce 31:2

produced 10:13 16:19 17:9 28:23 56:18 (5)

production 16:6 24:21

program 10:13

prohibition 39:19

property 5:7 19:8,10,12,15 20:17 21:17 24:7 30:2 51:11,18,25

(12)

provide 5:19 9:23 23:13 24:19 (4)

provided 26:21 30:8,11,16,22 36:18 47:3 58:8 (8)

provides 51:8

public 1:19 4:3,17 21:21,25 61:18 64:8 (7)

purpose 43:24

pursuant 1:18 4:8 7:10

put 18:23

question 5:18,20 11:12 12:14 15:7 16:5 27:6 30:13 32:10 33:3 34:5 35:24 36:4,6,10,13 ,14,15,24 37:6,13,17,22 38:9,23 39:24 45:13,17 47:15,25 49:7,9,18,25 50:14 53:5,13,15 54:5 55:9,11 58:12 59:23 60:4 (44)

questions 5:5,5,9,11 9:22 45:9 48:14 61:11 (8)

quite 48:18

quote 9:23 10:2,4,12,13 13:3,7 (7)

quoting 34:2

r 2:2 3:2 4:15 64:2 (4)

raising 46:14

random 20:5

read 15:7 17:11,14 31:7,10 33:8 35:5,7 45:17 47:15 48:9 49:7,17 50:14 51:2 53:5,13 55:9 58:15,21 59:14 (21)

reading 45:6 48:21

really 22:16 34:17

rear 22:8 31:21 42:17

reason 5:15 48:3

reasonable 48:18

reasons 48:13

recall 20:19 24:15 54:2

receive 20:13,16 23:6

receives 8:2,7

recent 34:16

recess 60:16

recognize 44:23,25 45:2

recollect 48:4

recollecting 48:14

recollection 9:3 10:24 11:5,13,14 15:9,15 17:4,6 20:21 27:12 28:15 31:15 33:10 43:16

45:4,6,16,22 47:24 48:22 49:5,24 50:3 53:20,22 54:14,21 55:3,7 56:24 58:11 60:2,20,23 (35)

record 14:13,15 27:24,25 64:13 (5)

records 11:8 13:22 24:23

recoverable 50:24

refer 29:5 42:9

reference 6:12 51:6

referenced 54:9

referencing 55:6

referring 11:24 29:12,18 53:7 59:9 (5)

refers 53:2 56:20

reflects 24:25

refresh 48:22

regard 5:2,6 8:13 13:23 15:3 25:13 27:9 31:16 32:23 47:19,22 51:23 (12)

regarding 11:7

relate 33:17

related 64:15

relates 52:19

relationship 29:7,22

relevance 12:4

| | | | | |
|---|---|---|---|---|
| 40:3 | request 10:10 16:20 26:25 27:4 53:3 (5) | responsive 58:25 60:9 | 12:17,25 13:5,8,12,25 14:19,21 15:25 17:18 20:24 26:14 27:10 28:20,22 29:8,23 32:6,12 33:15 34:19,24 35:22 36:9 38:11,18,24 39:21 42:5 46:13,21 49:14,20 55:22 58:19 60:25 61:7 62:7 (54) | screen 15:21 |
| relevant 32:19 35:18 | | results 19:8 | | scroll 16:17,22 17:21 20:25 25:14,18,24 28:11 31:5 42:10 44:17 52:18 58:13 (13) |
| relied 49:10 | requested 16:8 25:11 63:8 | retain 27:15 | | scrolled 54:8 |
| remember 13:20 48:19 | requests 24:23 25:2 | retained 16:3 28:9 44:22 55:22 (4) | | scrolling 16:23 42:11,12 61:3 (4) |
| remotely 4:8,16 64:12 | require 22:25 23:13 38:19,25 (4) | review 8:21 18:21 26:12 27:20 28:12 32:7,18,25 33:6,10 43:21,23 45:14 54:11 (14) | | sealing 3:7 |
| removed 39:14 | required 34:10 | | roundhill's 57:23 | second 18:8 |
| render 47:21 | requirements 41:17,22 42:2 | reviewed 10:12 11:15 17:15,18 19:5 26:17 28:13 43:19 48:23 50:9 57:16 (11) | roundhillexpress com 9:21 | see 16:24 17:11,24 21:2,19,20,25 22:2 30:3 42:16 43:8 44:6,7 55:24 (14) |
| rendered 47:18 | requoting 13:3 | | s 2:2 3:2,2 4:15 62:2 (5) | |
| repeat 15:6 33:4 | rescinded 15:11 | | | seeing 17:6 |
| repeatedly 49:23 | reserved 3:19 61:10 | reviewing 18:24 31:9 50:8 56:25 (4) | said 9:10,14,15 11:12 31:19 46:9 (6) | seem 9:11 |
| rephrase 5:12 42:20 51:22 | reside 35:2,9 40:20 | | sake 12:23 | seen 17:3,5 23:15 36:17 43:11 53:25 (6) |
| replacement 50:20 52:20,21 | residential 7:8 | right 20:21 31:2 47:11 | same 3:11,14,16 4:7 27:18 43:5 (6) | selection 20:2,4 |
| report 15:25 16:19 17:9,15,17,21 18:22 19:3 22:7 24:2,5 26:12,16,19 29:21 31:11,13 32:11 57:16 58:9 62:8 (21) | residing 35:11,13 | righthand 29:11 | saw 61:2 | send 24:24 |
| | respect 21:10 39:18 | rights 61:10 | say 6:24 | sent 18:24 19:7 |
| | respectfully 24:18 36:8 | risk 9:7,24 10:12 13:4 17:10 23:4 34:2 42:17 56:13 (9) | saying 9:8 10:12 39:6 59:13 (4) | sentence 15:6 |
| reporter 4:2,4,7 5:21 (4) | respective 3:6 | | says 17:15 18:2,15 52:16 58:18 (5) | separate 31:11,14,17 |
| reporting 19:9 | response 5:19 16:20 32:11 45:2,18,21 47:16,20 49:12,17 51:2,3,9 52:19 53:18,19,23 55:20 56:7 60:7 (20) | risks 9:23 | | series 5:4 9:22 54:8 |
| | | role 7:14,17 | schedule 23:7 | |
| reports 16:20 26:21,23 30:3 55:18 (5) | | roles 7:13 | scheduling 25:5 | serve 46:8,18 |
| | | room 4:7 5:25 41:22 | scope 56:17 | served 47:10 |
| represent 4:25 16:18 28:4 47:10 (4) | responses 5:24 44:19 48:21 54:12 58:22,24 59:17 60:9 62:11 (9) | roundhill 6:17,18,20 7:3,11,14,17,23 8:2,6,13,15 10:15 11:9,16,20 | scott 2:6 4:24 11:25 16:11 24:22 29:9 46:14 48:7 (8) | service 3:15 |
| represented 5:13 | | | | serving 47:6 |

JAMES LAMBERT

set 38:12 47:17 49:9 50:16,18 53:15 55:11 64:12,19 (9)

setting 55:14

seven 50:15

several 13:16 24:11

share 15:20

she 5:23,24 22:22

sheets 42:13

short 60:16

shot 22:5

show 15:21 28:2 31:13 43:2 44:2,14 (6)

showed 54:10 57:17

shows 44:8

side 17:22

sidewalk 18:5 22:3

sidewalks 21:22

signature 45:3 46:2 58:16 59:2,22 64:22 (6)

signed 3:9,12,14 59:12,13,16 60:3,5,11 (9)

significant 34:3

significantly 56:17

simply 24:24 29:17 36:14 38:9

(4)

since 19:3 59:25

single 39:3

sinks 41:14

sir 6:2 9:14 16:17,24 25:10 28:2 29:17 44:23 60:17 61:9 (10)

sit 11:4 14:25 15:17 19:16 32:22,25 33:6 37:12 45:8,25 48:25 49:4 57:6 (13)

site 30:3

six 49:8,9

small 7:8

smaller 56:17

so 4:13,14 5:22 7:8 9:12 11:6,14 12:23 13:2 15:17 16:7,15,16 17:23 18:16 19:3 20:11 21:2,9 22:21,23 28:16,25 29:12,17 30:4,13,21,23 31:23 35:8,21 36:19 37:12,19 38:11 43:7 47:8 49:24 50:5,11,18 52:4,16 53:10 54:10 61:4 (47)

software 19:22 23:21

solely 11:8

solves 47:3

some 6:11 23:20 44:6 50:5,9 56:9 (6)

somebody 31:2 46:18

someone 17:18,19,19 21:6 23:13 27:15 35:10,13 (8)

someplace 14:7 19:18

something 14:23 15:12,14 29:13 31:22,23 34:6 39:6,7,22 48:19 52:22 53:11 55:6 59:13 (15)

somewhere 14:12

sorry 9:11

space 39:4,25 40:4 42:2 (4)

speak 24:16 30:13 54:23

speaking 46:7,23 60:21

specific 9:3,7 12:14 29:2,3 30:12,13 48:19 (8)

specifically 24:6 25:3

specifics 15:15

ss 64:4

stacked 44:9

staircase 22:5,13 31:21 42:17,23 (5)

stairs 18:7 21:22,25

stairwell 22:8,22

stamp 29:18 31:5

42:9,13,22 43:10 (6)

stamped 16:2 28:8 29:20 62:000361,10 (5)

standard 38:15

start 16:15 21:24

state 1:20 4:3 34:10 45:19 64:4,9 (6)

stated 49:23 55:20

states 1:2

steps 22:4,17

still 13:20 39:11 61:6

stipulate 4:10

stipulated 3:5,18 4:13,14 (4)

stop 43:10

stove 53:16 54:2,10,25 55:5 (5)

stoves 39:11,12

street 5:7 8:17 9:2 10:22 17:10 25:13 (6)

stretch 5:15

structures 52:22

subject 10:21 27:3 47:19 49:11 51:7 53:17 54:3,19 55:2,12,21 (11)

submitted 10:7

subpoena 46:8,12

subscribed 61:16

such 14:13,14 30:7,15 48:4,6 64:13 (7)

suffolk 64:5

suggest 19:23

supplied 25:12

sure 5:23 11:11 38:3

suspected 28:24

sustain 8:9

sworn 3:9 4:8,12,16 58:17 61:16 64:12 (7)

system 18:17,21 21:21 28:25 57:11,12,17 (7)

systems 18:21

t 2:11 3:2,2 4:15 62:2 64:2,2 (7)

take 5:20,21 6:4 18:12 23:19,20,22 31:25 39:4 57:19 60:13 (11)

taken 1:19 12:24 13:5 22:19,21 25:16,22 26:4 32:6 60:16 (10)

takes 23:12

taking 56:12

talk 46:16

talked 20:10

JAMES LAMBERT

77

telephone 23:5

tell 9:4 20:20
22:10 42:15,23
44:4 (6)

telling 36:5

ten 7:7 58:13,13

tenants 7:9

tenminute 60:13

tenpage 44:16

term 33:18 36:3
37:20 56:6,7 (5)

testified 4:17
6:5,9 20:18 (4)

testifying 8:20
43:18

testimony 4:11
37:9 64:13

text 23:6

than 19:5
36:20,22 37:2,14
48:19 56:17 (7)

thank 25:10
29:4,19 33:13
61:11 (5)

their 20:4 46:19

them 9:20 10:4
16:7 18:14 19:6
20:9 24:19 31:4
44:9 47:10 57:19
(11)

there's 14:24
17:23 21:9 22:7
25:25 26:16 38:12
41:6 43:8 44:10
47:13 54:10 (12)

therein 33:8

58:16

thereof 58:24
59:7

these 16:6
18:12,20 19:5
26:13 28:18,23
45:20,23 48:20,21
54:12 59:5 (13)

they'd 9:24

they're 18:22
23:22 56:15

they've 18:25

things 37:2
48:4,6

think 14:8 15:22
37:5,15,22 (5)

third 47:15

thirdparty 58:19

those 5:5 6:11 8:8
13:20 19:24 21:22
24:18,21 25:22
36:25 38:6 39:15
44:10 56:14
57:18,22 58:4,9
(18)

though 39:12
46:2

thought 54:9

three 22:4 25:14

through
9:5,9,13,17,24
16:17,22 21:7
42:10 44:17 54:8
61:3 (12)

time 3:20 8:15
12:19 13:21 18:8
20:3 25:7 30:2,2
32:25 33:5 44:14

56:21 57:4,14
59:5,7,16,19
60:2,13 61:9,12
(23)

times 19:23,25

title 45:19 47:17

today 5:5,14 8:20
11:4 14:25 15:17
32:22 37:12 43:18
45:8 48:25 49:4
57:6 (13)

together 38:6

too 16:12

took 19:6 26:18
30:18 32:25
39:10,12 54:15 (7)

top 21:24 44:3

train 21:7

trained 23:18

training
21:7,12,13

transcript 24:25

trial 1:15 3:20

trick 5:10

true 59:18 60:11
64:13

two 6:10,11
25:20 44:8 (4)

type 5:22

typical 30:14

typically 46:9

u 3:2

unable 60:3

unaware 19:15
30:18

unclear 51:5

under 31:6 40:2
51:10 52:7,10 (5)

underneath 18:2

understand 5:10
6:2 32:10 33:3
39:24 45:13 (6)

understanding
29:24 33:21 36:2
38:5 40:7
41:16,21,25 59:11
60:6 (10)

understood
59:14

undertake
27:10,15

undertook 8:16

underwrite 6:24
7:2 8:16

underwrites 6:22

underwriting
7:13 8:25
9:5,7,8,13 10:14
11:21 12:2,19
14:6,9,16 18:23
19:18 26:24
27:3,20
30:8,11,16,19,23
31:3 32:19 41:9
55:23 56:6,11,19
(30)

underwritten
8:8,13

unduly 51:4

unfamiliar 39:17

union 1:8 5:3

6:12,14,21
7:4,11,18,22,25
8:8,12 12:10,20
13:22,25 16:19
17:19 20:24 24:8
26:15,22,24
32:6,12 33:15,24
34:24 36:3,9
38:5,11,19,24
39:21 40:3,12
42:5 46:20 47:8
49:15,20 51:3,8,20
52:7,10 58:20 (48)

unit 33:17,22
36:3 37:8 42:7 (5)

united 1:2

units 7:8
34:2,3,6,6,9 36:25
37:5 39:15 (9)

unsigned 3:13

unsure 14:8

up 7:7 37:25
38:4,7 52:18 (5)

upload 23:19

uploaded 18:20
23:22,23

upon 3:16 11:8
13:7 26:6,12,25
42:15,22 49:10
53:19 56:12 (11)

us 5:16 9:19
13:17 19:25
23:7,13 24:24
27:14 28:5 30:4
36:9 (11)

use 18:18 19:22
23:21 24:9 38:9
42:3 (6)

used 3:13 24:11
37:21 56:7 (4)

JAMES LAMBERT

78

| | | | | |
|---|---|---|---|---|
| utilize 30:2 35:23 | we'd 46:16 | where 8:15 14:11 17:11 19:17 25:15,21 26:3,7 46:17 52:16 53:3 (11) | 44:7,11 | x 1:3,10 62:2 63:2 (4) |
| utilized 24:7 33:18,22 34:19 35:22 40:12 (6) | we'll 5:17 16:15 21:19 46:3 (4) | | withdraw 12:8 | xyz 14:13 |
| | | | withdrawn 41:20 | year 39:3 |
| vague 51:4 | we're 5:4 18:15 24:20,24 47:7,8,12 (7) | whereof 64:19 | within 3:8 7:6 14:5 19:18 32:24 36:6 64:9 (7) | years 48:17 |
| value 50:22 53:3 | | whether 10:20 27:2 28:17 30:16 32:7,13 35:18 39:21 40:4 48:22 50:16 53:15 54:24,25 56:14,15,22 57:3,7 58:9 (20) | | yes 6:3,7,13 7:12,16 9:15,18 13:11 17:13,25 18:4,6,10 37:11 50:4 52:2 53:18 54:6 57:25 58:7 60:19 61:8 (22) |
| vendors 24:7 | website 9:6,9,14, 17,21,22,24 10:9 12:24 (9) | | without 13:5,7 17:6 18:23 23:2 51:7 (6) | |
| verified 60:9 | | | | |
| verifies 58:24 | well 12:2,6 15:10 16:13 34:12,18 46:22 47:5 48:21 54:11 (10) | | witness 1:16 3:10,15,16 4:6,8,11,15 16:9 31:9 46:6 64:11,14,19 (14) | |
| verify 59:17 | | which 9:21 10:10 19:8,25 20:23 25:19 28:4 30:15,19 31:13 32:18 33:17 34:25 36:17 38:6 48:3 49:10 54:2,9,17 (20) | | york 1:2,20 2:11021,10 4:3,22 5:8 6:22 7:7 8:18 34:10 39:17 41:18,23 42:3 64:4,9 (17) |
| verifying 60:6 | went 12:24 | | | |
| very 37:17 48:17 | what 4:19,21 6:18,25 7:17 9:14,16 10:7 13:12 14:19 15:16,18 17:7 19:16 20:19 21:17,18 22:3 24:7 25:3 29:7,22 31:19,20 32:5 34:12,18,23 35:12,21 36:2,5,9 37:20,24 38:5 42:15 44:4 48:6 49:2 51:5,15,24 52:4,13,16,21,25 53:6,19,23 54:15 59:11,11 60:2 (55) | | witnesses 47:9 | |
| via 1:17 4:5 | | | word 18:18 31:7 | |
| victoria 2:13 | | | working 24:14 52:18 | you'll 17:21 |
| videoconferencin g 1:18 4:6 | | while 10:9 | world 33:6 | you're 25:3 29:15 46:14 47:6 55:5 (5) |
| viewed 32:8 43:6 | | who 9:19 11:20 12:17 13:16,18 14:2,5 19:6,24 20:4,23 21:2 23:12 24:14,15 27:19 36:7 45:20 47:18 55:16 60:24 (21) | would 5:14 9:6 11:6,7,20 12:18,23,25 13:9,13,15,18 14:2,4,6,11,12 17:19 19:4,16,17 20:9,13,23 22:7,13,19,21 26:8 27:18 28:24 30:15,21,25 31:3,7 32:18,19,23 33:7,11 35:15 38:6 39:11,15 46:11 47:25 48:3,13 54:17 57:12,21 58:3 60:12,13 (55) | you've 6:5 28:13 43:19 |
| virtual 5:25 | | | | your 4:19,21 5:15,16,23,24 24:19 25:2,9 26:6,12 28:12 32:22 33:6 35:8 37:9 42:23 46:11 47:11 48:3,22 53:23 54:12 56:7 58:16 59:2,11,18 60:6 (29) |
| waived 3:8 | | | | |
| waiving 51:7 | whatever 11:8 33:8 | whom 6:16 | | |
| walls 44:8 | what's 28:2 33:11 44:10,15 (4) | whose 64:11 | | |
| want 20:3 25:2,4 34:15,15 (5) | | why 48:13 | | |
| wanting 46:18 | | wild 6:4 | | yourself 31:8 |
| water 26:8 43:5 57:11,17 (4) | when 6:24 10:11 12:24 16:10 18:12,19 19:7,21 20:2,3 21:6,16 22:24 23:4,11,17 26:13 34:2 36:3 46:23 47:10 60:5,10 (23) | will 4:8 5:12 10:18 18:21 19:23,24 20:5 21:18 23:6,12 24:22 27:15 28:3 34:3 52:18 (15) | | zoom 1:17 4:5 |
| | | | wouldn't 16:13 | 216 28:12 |
| way 36:20,23 37:3,14 56:9 64:17 (6) | | | writing 23:25 | 305 61:12 |
| ways 37:8 | | window 41:17 | written 24:3 | 611 4:22 |

JAMES  LAMBERT

| | | | | |
|---|---|---|---|---|
| **2017** 16:21 24:6,15 26:17 31:13 55:23 56:23 57:2,10,23 58:5,10 (12)<br><br>**2020** 5:6 15:4 27:5,10 (4)<br><br>**2021** 1:4 44:21 48:11,15 50:2 61:17 62:16 64:20 (8)<br><br>**3911** 5:7 8:17 9:2 10:22 17:10 25:13 (6)<br><br>**10522** 4:22<br><br>**11021** 2:11021<br><br>**14202** 2:10<br><br>**7112017** 17:16 | | | | |

Errata Sheet                                    80

WITNESS NAME   _____

Page              Line No.          Reason From                    To
_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

81

LAWYER'S NOTES PERTAINING TO EBT

Errata Sheet                                        80

WITNESS NAME   _____

Page                Line No.          Reason From                      To

81

LAWYER'S NOTES PERTAINING TO EBT

Errata Sheet                                        80

WITNESS NAME   _____

Page                  Line No.            Reason From                      To

81

LAWYER'S NOTES PERTAINING TO EBT