UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

FRED LEE and ANNE LEE,

                              Plaintiffs,

vs.

UNION MUTUAL FIRE INSURANCE COMPANY,

                              Defendant.
_____

**AFFIDAVIT OF JAMES LAMBERT IN SUPPORT OF UNION MUTUAL'S FRCP RULE 56 MOTION FOR SUMMARY JUDGMENT**

Case No.: 1:20-cv-03191- MKB- PK

STATE OF NEW YORK         )
COUNTY OF WESTCHESTER  )   ss:

      **JAMES LAMBERT**, being duly sworn, deposes and says:

      1.    I am the President of Roundhill Express, LLC ("Roundhill"), the Third-Party Claims Administrator for Union Mutual Fire Insurance Company ("Union Mutual"), the defendant in this action.

      2.    This affidavit is made upon my own personal knowledge and submitted in support of Union Mutual's motion for summary judgment.

      3.    I am competent and able to testify on the matters stated whenever necessary.

      4.    As a matter of overview, Roundhill is authorized to and does underwrite, pursuant to the terms of a confidential and proprietary Program Managers Agreement entered into by Roundhill and Union Mutual, policies of commercial property and general liability insurance on behalf of Union Mutual as part of Union Mutual's New York Landlord/Tenant Property and General Liability Package Program (the "Program").

      5.    Roundhill, on behalf of Union Mutual, issued the commercial insurance policy that plaintiffs make their fire loss claim under.

6. As a result of investigating plaintiffs' claim, we determined the Union Mutual commercial insurance policy plaintiffs are claiming against was issued based upon a material misrepresentation as to the number of residential units in the building to be insured.

7. With the discovery of the plaintiffs' misrepresentation of material facts in their application for the commercial insurance policy at issue, Union Mutual rescinded the policy at issue, and considers it void *ab initio*.

8. Thus, Union Mutual has not breached the insurance contract because there is no obligation to pay the plaintiffs' claim due to the policy at issue being rescinded and void *ab initio*.

## THE INSURANCE POLICIES ISSUED TO PLAINTIFFS

9. Three commercial package insurance policies, each having a one-year term, were issued between July 2017 and July 2019 by Roundhill on behalf of Union Mutual to the plaintiffs.

10. The first commercial package insurance policy issued by Roundhill on behalf of Union Mutual to the plaintiffs was policy number 314PK-49300-01, for the period from July 8, 2017 to July 8, 2018 (the "01 Policy"), and a true and accurate copy of the same is provided herewith from Roundhill's records as **Exhibit 1**.

11. As President of Roundhill, I state that the 01 policy and the two policies issued to plaintiff for subsequent years are business records of Roundhill and of Union Mutual made at or near the start dates of the respective policies, and have been stored electronically by Roundhill for Union Mutual in the ordinary course of Roundhill's business, and it is the regular practice of Roundhill to make and create such electronic records of the policies.

12. The property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 01 Policy.

13. The 01 Policy was issued in reliance upon the truth of specifically requested information and facts about the Premises that were presented by or on behalf of the plaintiffs to Roundhill and Union Mutual via an Application for Commercial Insurance (the "01 Application"), submitted electronically on June 27, 2017. (**Ex. 1**., **see first 8 pages of the Exhibit**.)

14. Roundhill and Union Mutual operate a web-based platform which is utilized by insurance brokers and agents who want to obtain a quote for our book of business and/or request that a commercial package policy be bound.

15. The platform utilizes software that contains an algorithm of the underwriting rules such as, for example, the requirement that the premises location to be insured is within the geographic zone of the Program, the requirement that the use of property to be insured fits within the parameters of the Program, and the requirement that the building on the premises to be insured has apartments, but not more than ten units.

16. As I testified to at my deposition in this litigation, brokers and insurance agents who do business with Roundhill and Union Mutual have log-in credentials enabling them to access and utilize our website at [www.roundhill.com](www.roundhill.com) where a series of questions about the premises to be answered by the insured are set forth, along with information about the electronic underwriting process, for the purpose of enabling brokers and insurance agents to obtain quotes for the risk they propose obtaining insurance on.

17. Roundhill's process of underwriting commercial package policies for Union Mutual is fully automated, whereby the information input into the application, including the specific answers entered to the questions about the Premises asked by the application, is reviewed by our computer program and a quote providing, among other things, the premium for the prospective

policy is then produced and is made visible by the broker or insurance agent entering the application information.

18. The factual information about the building and premises to be insured that is input by brokers and agents into the web based platform when completing the electronic Application results in an automatic calculation and determination of the pricing of the premium to be charged for the insurance requested.

19. One of these questions on the 01 Application asked: "How many apartment units are there?" **Ex. 1**

20. To which plaintiffs, or their broker/agent on behalf of plaintiffs, answered, on the 01 Application submitted for the 01 Policy: "2". **Ex. 1**.

21. The application question asking, "How many apartment units are there" is not seeking information about whether or not any particular apartment unit in the building is under lease or is being advertised for rent. **Ex. 1.**

22. The application question asking, "How many apartment units are there" seeks only a numeric answer from the applicant. **Ex. 1.**

23. As the 01 Policy drew to its one-year period conclusion, Roundhill for Union Mutual issued an electronic communication concerning renewal of the commercial package insurance policy to plaintiffs, for what would be policy number 314PK-49300-02, covering the period from July 8, 2018 to July 8, 2019 (the "02 Policy").

24. As with the 01 Policy, the property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 02 Policy.

25. A copy of the 02 Policy, a business record of Roundhill and of Union Mutual made at or near the start date of the 02 policy, and stored electronically by Roundhill for Union Mutual

in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of policies, is provided herewith as **Exhibit 2**.

26. The 02 Policy was issued based upon a Renewal Application for Commercial Insurance (the "02 Application").

27. The 02 Application asks the same series of questions as the 01 Application for the 01 policy had.

28. In the 02 Application, plaintiffs were again asked: "How many apartment units are there?" **Ex. 2**

29. To which plaintiffs, or their broker/agent on behalf of plaintiffs, answered: "2". **Ex. 2**.

30. Union Mutual issued another renewal commercial package insurance policy to plaintiffs, policy number 314PK-49300-03, for the period from July 8, 2019 to July 8, 2020 (the "03 Policy").

31. The property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 03 Policy.

32. A copy of the 03 Policy, a business record of Roundhill and of Union Mutual made at or near the start date of the 03 Policy, and stored electronically by Roundhill for Union Mutual in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of policies, is provided herewith as **Exhibit 3**.

33. The 03 Policy was issued based upon a Renewal Application for Commercial Insurance (the "03 Application").

34. The 03 Application asks the same series of questions as the 02 Policy and 01 Policy applications had.

35. In the 03 Application, plaintiffs were again asked: "How many apartment units are there?" **Ex. 3**

36. To which plaintiffs, and/or their broker or agent on their behalf, answered: "2". **Ex. 3**.

37. The 01 Policy, 02 Policy, and 03 Policy each set forth, and are each subject to, the same express and pertinent terms, provisions, exclusions, conditions and limitations, and will accordingly sometimes hereafter be referred together as "the Policy".

38. The Policy's grant of coverage is found in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** (CP 00 10 10 00), which provides in pertinent part:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H – Definitions**.
>
> **A.   Coverage**:
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **1.   Covered Property**
>
> Covered Property, as used in this Coverage Part, means the type of property described in this Section **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> **a.   Building**, meaning the building or structure described in the Declarations, including:
> **(1)**   Completed additions;
> **(2)**   Fixtures, including outdoor fixtures;

6

    **(3)**    Permanently installed:
**(a)**    Machinery and
**(b)**    Equipment;
**(4)**    Personal property owned by you that is used to maintain or service the building or structure or its premises, including:
**(a)**    Fire extinguishing equipment;
**(b)**    Outdoor furniture;
**(c)**    Floor coverings; and
**(d)**    Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;
**(5)**    If not covered by any other insurance:
**(a)**    Additions under construction, alterations and repairs to the building and structure;
**(b)**    Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**Ex. 1**, **2**, and **3**

39.    The Policy contains the following relevant conditions to coverage:

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**Ex. 1**, **2**, and **3**.

### THE FIRE LOSS CLAIM AND UNION'S INVESTIGATION

40.    On March 2, 2020, Jin Kim of Kimspro Insurance Agency emailed Roundhill, Union Mutual's Third-Party Claims Administrator, reporting a fire had occurred at the Premises, and requested an adjuster be sent. A copy of this email which is a business record of Roundhill and of Union Mutual made at or near the start date of the 03 Policy, and stored electronically by Roundhill

for Union Mutual in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of emails, is provided herewith as **Exhibit 4**.

41.     After receiving the email notifying Union Mutual of the fire, Roundhill, on behalf of Union Mutual, initiated standard claim investigation of a reported fire loss, including investigation of the cause and origin of the reported March 2, 2020 fire at the Premises.

42.     Heading up the on-site investigation of the reported fire loss at the Premises was an independent adjuster retained by Roundhill, Beltrani Consultants, Inc. ("BCI").

43.     According to BCI's first report dated March 6, 2020, on March 4, 2020 BCI inspected the fire-damaged Premises in the presence of plaintiffs' public adjuster, and memorialized the inspection in a written report, which includes photographs of the Premises from the inspection.

44.     A copy of BCI's "Report #1" and its enclosed photographs, all of which are business records of Roundhill and of Union Mutual made at or near the fire loss date, and stored electronically by Roundhill for Union Mutual in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of such reports, is provided herewith as **Exhibit 5**.

45.     BCI's Report #1 states that the building at the Premises has apartments on the first and second floors of the building, and in addition, "the [Premises] has a full finished basement which has a separate entrance to the basement area…[BCI's] inspection of the basement area indicates that there is a living area, bedroom with full bath and kitchen area...an apartment does exist in the basement area." **Ex. 5.**

46.     The photographs enclosed within BCI's Report #1 evidence a bedroom, kitchen, and bathroom in the basement of the Premises. See **Ex. 5**.

47. BCI further inspected the Premises a second time on April 15, 2020, memorializing this inspection in a written report, which includes additional photographs of the Premises.

48. A copy of BCI's "Report 3" and its enclosed photographs, all of which are business records of Roundhill and of Union Mutual made at or near the fire loss date, and stored electronically by Roundhill for Union Mutual in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of such reports, is provided herewith as **Exhibit 6**.

49. BCI's Report 3 confirmed that there was in fact at all times pertinent an apartment in the basement of the Premises, as memorialized by a signed statement BCI obtained from plaintiff Fred Lee indicating the following: Mr. Lee has owned the building for seven years; the building is a 2-family residential building, fully occupied; and, he has never made a structural change to the building or basement. **Ex. 6**

50. Thus, it is indisputable that the building has apartments on the first and second floors of the building and at all times pertinent has also had a full finished basement which has a separate entrance to the basement area which has a living area, bedroom with full bath and kitchen area, constituting a basement apartment.

51. Thus, per BCI, the basement of the building contains a separate, third apartment.

52. The existence of the third apartment in the building was never disclosed on any of the plaintiffs' applications submitted for insurance on the building.

53. BCI completed its investigation on or about May 4, 2020, and memorialized the completion of its investigation in a letter to NorthEast Adjustment, Inc., plaintiffs' public adjuster.

54. A copy of BCI's letter to plaintiffs' public adjuster is a business record of Roundhill and of Union Mutual made at or near the May 4, 2020 date, and is stored electronically by Roundhill

for Union Mutual in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records, is provided herewith as **Exhibit 7**.

55. Based upon Roundhill's investigation into the claim, and BCI's on-site, physical inspection of the Premises, Roundhill on behalf of Union Mutual, notified plaintiffs by correspondence dated May 19, 2020, that Union Mutual was disclaiming coverage for the fire loss claim and rescinding the 01 Policy, 02 Policy and 03 Policy against which the fire loss claim was made, due to the plaintiffs' material misrepresentations made on their 01 Application, 02 Application and 03 Application seeking commercial package insurance policies.

56. A copy of the May 19, 2020 Disclaimer/Notice of Rescission, a business record of Roundhill and of Union Mutual made at or near May 19, 2020, and stored electronically by Roundhill for Union Mutual in the ordinary course of Roundhill's business, it being the regular practice of Roundhill to make and create such electronic records of disclaimers issued, is provided herewith as **Exhibit 8**.

**UNION WOULD NOT HAVE ISSUED THE POLICIES IT DID HAD THE NUMBER OF APARTMENT UNITS BEEN ACCURATELY REPRESENTED ON THE 01 APPLICATION AND THE 02 AND 03 RENEWAL APPLICATIONS**

57. Roundhill issues commercial package insurance policies through Union Mutual based upon the prospective insured's factual representations about the Premises to be insured as input by a broker or insurance agent on behalf of the prospective insured into the prospective insured's electronic application for insurance.

58. Roundhill does not physically inspect a prospective property to be insured prior to issuing a commercial package policy of insurance.

59. Roundhill does not double-check prior to issuing the policy the truth, accuracy or validity of the factual representations about the Premises set forth on the application submitted to Roundhill for a commercial package insurance policy of Union Mutual.

60. This because the application's "Binder Package Electronic Signature Page" states, in pertinent part, "I hereby certify that the information provided in this application is true and that I have read and understand the provisions below. The proposed insured affirms that the information submitted to obtain this insurance coverage is true and agrees that the information shall constitute an application which shall constitute a part of any policy issued whether attached or not" **Ex. 1**

61. The application's "Binder Package Electronic Signature Page" further states, in pertinent part, "I understand and agree that by clicking the BIND button on this web page (or by authorizing my insurance broker to do so), I am signing these documents and transferring my application to Roundhill Express LLC with the intent to induce them to issue me a policy of insurance. **Ex**. **1**

62. The application's "Binder Package Electronic Signature Page" also states, in pertinent part, "I agree that signing these documents with my electronic signature has the same validity and effect as signing these documents by ink." **Ex. 1**

63. The application's "Binder Package Electronic Signature Page" also states, in pertinent part, "I understand that these statements form the basis upon which a policy of insurance will be issued in the name of Union Mutual Fire Insurance Company and any subsequent denial by me of the validity of this electronic signature will render any such policy of insurance void and limit their liability to me to the return of any premiums received by them." **Ex. 1**

64. The Program requires that Roundhill underwrite Program business, that is Union Mutual commercial package policies, applying underwriting guidelines agreed upon

11

between Union Mutual and Roundhill providing that the premiums on Union Mutual policies issued through Roundhill are based upon the number of living units within the building at the Premises.

65. A copy of these confidential underwriting guidelines, maintained in Roundhill and Union Mutual's ordinary course of business, and a confidential business record of Roundhill and of Union Mutual stored electronically in the regular course of Roundhill's and Union Mutual's business, it being the regular practice of Roundhill to make and create an electronic record of the confidential underwriting guidelines, is provided herewith, and for the sole purpose of supporting Union Mutual's motion for summary judgment in this action, as **Exhibit 9**.

66. The underwriting guidelines further provide that a higher premium is charged for each additional living unit, with the precise amount of the additional premium dependent upon the "ISO" class. **Ex. 9**

67. Buildings with two units are classified with a different ISO class than buildings with three units. **Ex. 9**

68. Roundhill calculates and collects premiums charged for Union Mutual commercial package insurance policies based upon the prospective insured's certified factual representations made on the insurance application, including, notably, the certified factual representation made on the insurance application as to the number of units in the building to be insured.

69. Had Roundhill been accurately advised on the plaintiffs' applications that the Premises to be insured for the plaintiffs at 39-11 27th Street, Long Island City, New York 11101 actually contained three apartment units, rather than two apartment units, Roundhill would not have issued the Union Mutual commercial package policies it did to the plaintiffs.

70. Higher premiums would have been charged to insure a three-apartment building than the premiums that were assessed based upon the plaintiffs' inaccurate representation that the Premises has only two apartment units.

71. I am aware that plaintiffs assert – wrongly, and falsely - that an inspection of the Premises that occurred on July 11, 2017 shortly after the 01 Policy was issued, by an independent contractor engaged by Roundhill, purportedly put Union Mutual "on notice" that the certified representations made by plaintiffs' 01 Application of there being only two apartment units at the Premises were untrue representations, because, according to plaintiffs, the basement apartment unit at the Premises was supposedly observed by the independent contractor engaged by Roundhill to do the inspection.

72. Plaintiffs' assertion in this regard is unfounded.

73. Plaintiffs' assertion in this regard provides no basis for Union Mutual to have to pay plaintiffs' March 2, 2020 fire loss claim made against the rescinded 03 Policy.

74. The inspection plaintiffs point to was, as is the case with each and every inspection of a newly insured premises conducted by an independent contractor engaged by Roundhill shortly after the issuance of an initial policy, <u>not designed to verify the accuracy of the answers provided by the insured</u> on the application for insurance.

75. Clearly, the July 11, 2017 inspection plaintiffs point to could not possibly have checked, analyzed, or verified the accuracy of the answers provided by the insureds on their 03 Application for the 03 Policy, which is the policy the fire loss claim is being made against, given said inspection was conducted nearly two years before the 03 Application was submitted to Roundhill.

76. Indeed, the underwriting guidelines for the Program state "the inspections are not designed to verify the accuracy of all of the answers provided by the insured in response to the Preliminary Application Questions listed on the Roundhill Express Website at the time of binding and at any subsequent renewal". **Ex. 9, p. 2 of 4, subsection D, Loss Control.**

77. The July 11, 2017 inspection was the one and only inspection of the Premises conducted by or on behalf of Roundhill or Union Mutual prior to the post-fire loss inspection of the Premises conducted by BCI.

78. The 03 Policy was issued solely upon the factual representations made by the plaintiffs on their 03 application, nearly two full years after the July 11, 2017 inspection plaintiffs point to.

79. As such, plaintiffs' assertion about the inspection conducted nearly two years earlier, with respect to the issuance of the 01 Policy, is not relevant to the underwriting or issuance of the 03 Policy under which plaintiffs submitted their fire loss claim, because the inspection plaintiffs point to occurred nearly two years prior to the issuance of the 03 Policy which was issued to plaintiffs based upon the factual representations about the Premises made by the plaintiffs on their 03 application.

80. Moreover, the inspector does not receive a copy of the application for the policy.

81. The primary concerns of the inspection, as I testified to during my deposition in this action, are that the inspector will photograph the building's heating system source, the building's electrical system boxes, and public access stairs if there are any, as well as sidewalks at the Premises.

82. When an inspection report consisting of photographs taken by the inspector of the building's heating system source, the building's electrical system boxes, and public access stairs if

there are any, as well as sidewalks at the Premises comes back "Clean" – as was the case with the July 11, 2017 inspection pointed to by the plaintiffs, and I respectfully advise the Court that the label "Clean" on the report indicates there are no safety issues noted by the inspector's observation of the building's heating system source, the building's electrical system boxes, and public access stairs if there are any, as well as sidewalks at the Premises - then no person at Roundhill or Union Mutual would physically review the inspection report.

83. Based upon all of the above, including the fact that BCI's investigation of the plaintiffs' fire loss claim discovered and confirmed that at all times pertinent there have been three rather than two apartment units at the Premises, Roundhill, on behalf of Union Mutual, rescinded each of the plaintiffs' three policies *ab initio;* accordingly, there exists no obligation on the part of Union Mutual to cover the plaintiffs' fire loss claim made against the rescinded 03 Policy.

84. Union Mutual has not breached any obligation owed to the plaintiffs.

_____
James Lambert

Subscribed and sworn to before
me this ___ day of October, 2021.

_____
Notary Public

HELEN J. TORNESE
Notary Public, State of New York
No. 02TO6346436
Qualified in Westchester County
Commission Expires August 15, 20__