UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

FRED LEE and ANN LEE,

     Plaintiffs,

  -against-

UNION MUTUAL FIRE INSURANCE COMPANY,

     Defendant.
------------------------------------------------------------------X

Case No.: 1:20-cv-03191-MKB-PK

**PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL CIVIL RULE 56.1 STATEMENT**

  Pursuant to Rule 56.1(b) of the Local Rules of this Court, Plaintiffs FRED LEE and ANN LEE ("LEE") submits the following response to Defendant UNION MUTUAL FIRE INSURANCE COMPANY's, Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Plaintiffs' SOF").

## Procedural History

  1. Plaintiffs, Fred and Anne Lee, commenced this action by filing a Summons & Complaint in the Supreme Court of the State of New York, Queens County, on June 8, 2020, against defendant Union Mutual. (Englert Dec., Ex. A) (Dkt. 1a).

  **Response:** Undisputed.

  2. Defendant Union Mutual filed a Notice of Removal, removing this action to the United States District Court, Eastern District of New York on July 16, 2020. (Englert Dec., Ex. B) (Dkt. 1).

  **Response:** Undisputed.

  3. Defendant Union Mutual then filed an Answer on July 16, 2020. (Englert Dec. Ex. C) (Dkt. 3).

  **Response:** Undisputed.

4. On August 31, 2021, Union Mutual filed a letter motion pursuant to Section 3.A. of this Court's Individual Rules of Practice, requesting the scheduling of a pre-motion conference in order for Union Mutual to move for summary judgment pursuant to Fed. R. Civ. P. Rule 56. (Dkt. 30).

**Response:** Undisputed.

5. On September 14, 2021, the parties submitted a proposed joint briefing schedule, directing that "the parties' respective motions shall be filed on or before October 22, 2021. Opposition shall be filed on or before November 19, 2021. Reply shall be filed by December 3, 2021." (Dkt. 31).

**Response:** Undisputed.

### United Mutual's Uncontroverted Material Facts

**A.   Underlying Claim and Investigation**

6. On or about March 2, 2020, an agent of plaintiffs, Jin Kim, notified Union Mutual, through its Third-Party Administrator Roundhill Express, LLC ("Roundhill") that a fire occurred, and a claim was being made under Union Mutual Policy 314PK-49300-03. (Lambert Aff. ¶ 40, Ex 4.)

**Response:** Undisputed.

7. Roundhill, on behalf of Union Mutual, immediately began to investigate the cause and origin of the March 2, 2020 fire. (Lambert Aff. ¶ 41).

**Response:** Undisputed, except that Plaintiff objects to the conclusory and vague characterization that Union Mutual "immediately" began their investigation.

8. Roundhill retained Beltrani Consultants, Inc. ("BCI"), to assist in its investigation. (Lambert Aff. ¶ 42)

**Response**: Undisputed.

9. BCI physically inspected the Premises on March 3, 2020 and produced a written report of the inspection. (Lambert Aff. ¶ 42-43, Ex. 5).

**Response**: Avers that BCI physically inspected the Premises on or about march 3, 2020 but Plaintiff objects to the report and the contents therein as inadmissible hearsay, lacking foundation or admissibility under the FRCP.

10. BCI's inspection revealed that there were three apartment units at the Premises. (Lambert Aff. Ex. 5).

**Response**: Disputed. Plaintiffs object to this statement on the grounds that it states a legal conclusion which the Court should disregard. See *Sellers v. Royal Bank of Canada*, No. 12 Civ. 1577 (KBF), 2014 WL 104682, at *2, n.1 (S.D.N.Y. Jan. 8, 2014) ("Even construed liberally, this statement is a legal conclusion, not a factual allegation. Therefore, the Court need not credit it as fact on a motion for summary judgment."). The number of apartments on the premises is at the heart of the case and is a question of law. Furthermore, Plaintiff objects to the report and the contents therein as inadmissible hearsay, lacking foundation or admissibility under the FRCP.

11. BCI's report stated that the basement of the Premises contains a separate entrance, a living area, a bathroom, and a kitchen area. (Lambert Aff. ¶ 45, Ex. 5).

**Response**: Disputed. Plaintiff objects to the report and the contents therein as inadmissible hearsay, lacking foundation or admissibility under the FRCP and further objects to the characterization of a living area and kitchen area, which is the hearsay opinion by a third-party.

12. BCI inspected the Premises a second time on April 15, 2020. (Lambert Aff., ¶ 47, Ex. 6).

**Response**: Undisputed.

13. BCI's second inspection confirmed the existence of an apartment in the basement of the Premises. (Lambert Aff., ¶ 49-50, Ex. 6).

**Response**: Disputed. Again, Plaintiffs object to this statement on the grounds that it states a legal conclusion as to a material fact at issue. The number of apartments is directly at issue in the case and is subject to a question of law which is decided by the fact finder (*Id*). Furthermore, the basement (cellar) was a finished basement, could not lawfully be occupied as a dwelling or "apartment" or living unit. (*See* Ex. A, Plaintiff's Affidavit ¶ 11-12), and no cooking facilities, in that there was no connected stove in the basement at the time of the Loss. (*See* Ex. B, Lee Tr. 31:14; Ex. A, Lee Aff ¶ 12).

14. Plaintiff, Fred Lee, testified that the Premises is a two-story building with a finished basement. (Deposition of Fred Lee, Englert Dec., Ex. D (hereinafter "Lee Deposition," p. 9).

**Response**: Undisputed.

15. Mr. Lee has owned the Premises since July of 2013, and at all times pertinent to the instant action. (Lee Deposition, p. 8).

**Response**: Undisputed.

16. The building at the Premises has a two-bedroom apartment on the second floor and a two-bedroom apartment on the first floor. (Lee Deposition p. 9-10).

**Response**: Undisputed.

17. The basement of the building at the Premises has a bathroom with shower. (Lee Deposition p. 10-11).

**Response**: Undisputed.

18. The basement of the building at the Premises has an entrance that

**Response:** Disputed. The statement is incomplete, therefore Plaintiff is unable to respond properly.

19. Mr. Lee has never modified the layout of the Premises. (Lee Deposition p. 11).

**Response**: Undisputed.

20. Mr. Lee testified that the photographs taken by BCI accurately depicted the basement of the Premises. (Lee Deposition p. 31).

**Response***:* Disputed, in that the foregoing statement of fact fails to identify which photographs are being referred to as the basement at the Premises and the BCI report contains photographs of multiple parts of the Premises and the two apartments.

21. The photographs taken by BCI clearly depict a kitchen with a stove and a bathroom with a shower, in addition to living space. (Lambert Aff., Exs. 5 and 6).

**Response:** Disputed, in that the foregoing statement of fact fails to identify which photographs are being referred to as the basement at the Premises and the BCI report contains photographs of multiple parts of the Premises and the two apartments.  Furthermore, Plaintiff disputes that there exists a "kitchen" in the basement, could not lawfully be occupied as a dwelling or "apartment" or living unit  (*See* Ex. A, Lee Aff ¶ 11-12), and had no cooking facilities, in that there was no connected stove in the basement at the time of the Loss. (*See* Ex. B,  Lee Tr. 31:14; Ex. A, Lee Aff ¶ 12).

22. At all times Mr. Lee has been owner of the Premises the basement could be accessed directly from outside the building at the Premises. (Lee Deposition p. 32-33).

**Response:** Undisputed.

**B. Plaintiffs' Applications for Commercial Insurance and the Union Mutual Insurance Policy**

23. Union Mutual issued a commercial package insurance policy to two named insureds, Fred & Anne Lee, policy number 314PK-43900-01, for the period from July 8, 2017 to July 8, 2018 (the "01 Policy"). The property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 01 Policy. (Lambert Aff. ¶ 10, Ex. 1).

**Response:** Undisputed.

24. The 01 Policy was issued based upon an Application for Commercial Insurance (the "Application"), completed on June 27, 2017, and submitted by and/or on behalf of plaintiffs. (Lambert Aff. ¶ 13, Ex. 1)

**Response:** Undisputed.

25. The Application asks the prospective insured to provide the number of apartment units at the property to be insured. (Lambert Aff. ¶ 19, Ex. 1).

**Response:** Undisputed, except that the application contains no definition of the term "apartment unit". (*See* Ex. H, Policy Binder).

26. Plaintiffs represented that the building at the Premises contained only two apartment units. (Lambert Aff. ¶ 20, Ex 1).

**Response:** Undisputed.

27. During the application process Union Mutual is not concerned with whether or not a particular apartment unit is under lease or being held out for rent. (Lambert Aff., ¶ 21).

**Response:** Disputed, in that no underwriting guideline indicates the foregoing and that the underwriting guidelines rely upon living unit, a term which would reasonably require human residence or intended for human residents. (*See* Lambert Aff. Ex 9, p.3)

6

28. Union Mutual issued a renewal commercial package insurance policy to Fred & Anne Lee, policy number 314PK-49300-02, for the period from July 8, 2018 to July 8, 2019 (the "02 Policy"). The property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 02 Policy. (Lambert Aff. ¶23, Ex. 2).

**Response**: Undisputed.

29. On the renewal application upon which coverage in the 02 Policy was based, plaintiffs again represented that the building at the Premise contained only two apartment units. (Lambert Aff. ¶ 28-29, Ex. 2).

**Response**: Disputed. Plaintiff testified he did not complete a renewal application, presumed the renewal to be automatic, took no action in connection with the renewal, and did not execute any additional documentation in connection with the renewal. (*See* Ex. A, Lee Aff, ¶ 15)

30. Union Mutual issued a second renewal commercial package insurance policy to Fred & Anne Lee, policy number 314PK-49300-03, for the period from July 8, 2019 to July 8, 2020 (the "03 Policy"). The property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 03 Policy. (Lambert Aff. ¶ 30, Ex. 3).

**Response**: Undisputed.

31. On the second renewal application upon which coverage in the 03 Policy was based, plaintiffs again represented that the building at the Premise contained only two apartment units. (Lambert Aff. ¶ 35-36, Ex. 3).

**Response**: Undisputed.

32. The 01, 02, and 03 Policies contain the following relevant conditions to coverage:

**6. Representations**

By accepting this policy, you agree:
 **a.** The statements in the Declarations are accurate and complete;
 **b**. Those statements are based upon representations you made to us; and
 **c.** We have issued this policy in reliance upon your representations. (Lambert Aff., Ex. 1, 2, and 3).

**Response:** Disputed, in that the Policies are to be read as a whole and refers to the document as a whole.

C. **Rescission and Disclaimer**

33. By correspondence dated May 19, 2020, Roundhill, on behalf of Union Mutual disclaimed coverage for the March 2, 2020 fire loss claim and rescinding the policies based upon the plaintiffs' material misrepresentations on their Application for Commercial Insurance and the subsequent renewal applications. (Lambert Aff. ¶ 56, Ex. 8).

**Response:** Disputed. Plaintiffs object to this statement on the grounds that it states a legal conclusion which the Court should disregard. See *Sellers v. Royal Bank of Canada (Id)*. It is Plaintiff's position that they never made a misrepresentation regarding the amount of apartment units at the respective address.

34. Union Mutual would not have issued the same exact policies of commercial insurance to plaintiffs if it had known that the Premises contained three apartment units, not the two units disclosed by plaintiffs. (Lambert Aff., ¶ 69)

**Response:** Disputed. Plaintiff objects to the conclusion of law that the basement was not an "apartment unit". Furthermore, Union Mutual's underwriting guidelines indicate that "apartment units" is not relevant to the issuance of a policy but rather, the number of families and "living units", as follows:

8

0197 Dwellings- 2 family

The apartment and dwelling liability classes listed above base their premium on the number of living units; with a higher premium being charged for each additional unit.

That the basement is not a living unit and the subject building is a legal 2 family dwelling.

(*See* Def's Lambert Aff. Ex 9, p.3)

35. The 01, 02, and 03 Policies were rescinded based upon the plaintiffs' material misrepresentation of the number of apartment units at the Premises. (Lambert Aff. ¶ 56, Ex. 8).

**Response**: Disputed, except that Union Mutual asserts such, and Plaintiff further objects that the foregoing states a legal conclusion. Furthermore, Union Mutual's underwriting guidelines indicate that "apartment units" is not relevant to the issuance of a policy but rather, the number of families and "living units", as follows:

0197 Dwellings- 2 family

The apartment and dwelling liability classes listed above base their premium on the number of living units; with a higher premium being charged for each additional unit.

That the basement is not a living unit and the subject building is a legal 2 family dwelling.

(*See* Def's Lambert Aff. Ex 9, p.3)

36. Policies issued by Union Mutual through Roundhill are underwritten though Roundhill's website. (Lambert Aff., ¶ 14-17).

**Response**: Disputed, in that the term "underwritten" is a function of human involvement and assessment. Plaintiff avers that certain aspects of underwriting is conducted with the use of a website as a portal. (See Ex. E, p.9)

37. Policies issued by Union Mutual must conform to underwriting guidelines agreed upon between Union Mutual and Roundhill. (Lambert Aff., ¶ 64, Ex. 9).

**Response**: Disputed. The foregoing statement of fact is a legal conclusion.

9

38. The underwriting guidelines provide that a higher premium is charged for each additional living unit. (Lambert Aff., ¶ 66, Ex. 66).

**Response**: Undisputed, except that no "Ex. 66" exists.

39. Brokers acting on behalf of prospective insureds answer a series of questions on the Roundhill website and provide information for the risks they are obtaining coverage for. (Id.)

**Response**: Undisputed.

40. The factual information input into the web-based application result in an automatic calculation and determination of the premise to be charged for the insurance requested. (Lambert Aff., ¶ 18).

**Response**: Undisputed.

41. Roundhill issues commercial package insurance policies through Union Mutual based upon the prospective insured's factual representations about the premises to be insured. (Lambert Aff., ¶ 57).

**Response**: Disputed. Roundhill does not issue insurance policies, nor is Roundhill an insurer. (See Ex. E, p.7)

42. Roundhill calculates and collects premiums charged for Union Mutual commercial package insurance policies based only upon the prospective insureds certified factual representations made on the insurance application. (Lambert Aff., ¶ 68).

**Response**: Disputed. Roundhill does not calculate the premiums but rather asserts that such calculation is performed by a computer program without human involvement, nor does the record indicate whose computer program is utilized or the custodian or such program. (See Ex E., p. 9)

43. Roundhill does not physically inspect a prospective property to be insured prior to issuing a commercial package policy of insurance. (Lambert Aff., ¶ 57).

**Response:** Disputed as misleading. Union Mutual conducted an inspection of the premises on or about July 30, 2017. (See Ex. A; Ex F). For each new policy that Union Mutual Fire Insurance Company ("Union Mutual") issues, it performs an underwriting inspection of the subject property proposed for insurance within sixty (60) days of the effective date of the policy, which would not exclude inspection prior to issuing. (See Ex E, p.13)

44. Roundhill does not need to physically inspect a prospective property to be insured because the application's "Binder Package Electronic Signature Page" states, in pertinent part, "I hereby certify that the information provided in this application is true and that I have read and understand the provisions below. The proposed insured affirms that the information submitted to obtain this insurance coverage is true and agrees that the information shall constitute and application which shall constitute a part of any policy issued whether attached or not". (Lambert Aff., ¶¶ 57 and 60).

**Response:** Disputed. Union Mutual conducted an inspection of the premises on or about July 30, 2017 and inspects all properties. (See Exs A; Ex. F)

45. Roundhill is only authorized to issue commercial package policies of insurance which conform with the underwriting guidelines agreed upon between Union Mutual and Roundhill. (Lambert Aff., ¶ 64, Ex. 9).

**Response:** Disputed. The foregoing is a legal conclusion.

46. These underwriting guidelines provide that a higher premium is charged for each additional living unit. (Lambert Aff., 66).

**Response:** Undisputed.

47. Had Roundhill been accurately advised on the plaintiffs' applications that the Premises to be insured for the plaintiffs at 39-11 27th Street, Long Island City, New York 11101 actually contained three apartment units, rather than two apartment units, Roundhill would not have issued the Union Mutual commercial package policies it did to the plaintiffs. (Lambert Aff., ¶ 69).

**Response:** Defendant is stating a legal conclusion by implying that Plaintiff inaccurately advised that there were two apartment units. Furthermore, the Premises was a two-family property with only two living units, and a finished basement, and the Property is a legal two-family dwelling according to the Department of Buildings. (*See* Lambert Aff at Ex. F; Ex. 6; Ex A, Lee Aff ¶ 9 )

48. After a policy is bound, an independent contractor inspects the premises to be insured. (Lambert Aff., ¶ 74).

**Response:** Undisputed, except that the characterization of Union Mutual's inspector as an "independent contractor" is a legal conclusion.

49. The primary concerns of the inspection are that the inspector will photograph the building's heating system source, the building's electrical system boxes, and public access stairs if there are any, as well as sidewalks at the Premises, and not to verify the accuracy of the answers provided on an insured's application for commercial insurance. (Lambert Aff., ¶ 74, 76, and 81, Ex. 9)

**Response:** Disputed. The term "primary concerns" is vague and ambiguous, the inspector inspected the basement at the Premises and had actual knowledge of the layout. The Inspector took photographs of the Property, including the exterior of the house, the back and front, sidewalk, stairs, electrical meters, gas meters, and heating equipment, and included those photos in his inspection report. (*See* Ex. C; Ex E); The two gas meters, two electrical meters, and the heating

12

equipment that the Inspector inspected are located in the basement. (*See* Ex. A, Lee Aff.; Def Ex: F Harper Tr. 22:16).

50. If the inspection does not identify any safety issues at the premises to be insured, no person at Roundhill or Union mutual physically reviews the inspection report. (Lambert Aff., ¶ 82).

**Response**: Undisputed, except that Round hill noted that the Property passed the Underwriting inspection on July 12, 2017 (*See* Ex C, p18)

51. The non-party Independent Contractor Fred Harper who performed the limited underwriting inspection on July 11, 2017, at the Premises was deposed on June 24, 2021. (Deposition of non-party, Independent Contractor Fred Harper).

**Response**: Disputed, in that Plaintiff object to the term "limited underwriting inspection" as a term created by Union Mutual to avoid the ramifications of actual knowledge of the layout of the basement.  Fredrick Harper had no recollection of the inspection at the subject Premises, nor documentation to reflect his recollection as to the inspection.  (*See* Ex. G, p.11) and Lambert had no personal knowledge of the inspection, the underwriting, or the claim.  (*See* Ex D, pp. 11-12). Further, Plaintiff objects to the characterization of Fred Harper as an "independent contractor", in that Fred Harper performs such inspections exclusively for Roundhill,  for no other carrier, and is not engaged in any other occupation. (Ex. G, p.7).

52. Mr. Harper is not an employee of Roundhill but operates only as an independent contractor. (Deposition of non-party, Independent Contractor Fred Harper, p.7).

**Response**: Disputed, in that the characterization of Union Mutual's inspector as an "independent contractor" is a legal conclusion, and Fred Harper performs such inspections exclusively for Roundhill, for no other carrier, and is not engaged in any other occupation. (Ex. G, p.7)

13

53. The underwriting inspection is limited to look "on the outside, front, back, sidewalk, and check for utilities on the inside, and stairs for safety reasons." (Deposition of nonparty, Independent Contractor Fred Harper, p.9).

**Response:** Disputed. Fredrick Harper had no recollection of the inspection at the subject Premises, nor documentation to reflect his recollection as to the inspection. (Ex. G, p.11)

Date: Great Neck, New York
November 19, 2021

Respectfully Submitted,

By: _____/s/_____
Scott E. Agulnick (SA1880)
Todd D. Kremin (TK0102)
GREENBLATT AGULNICK KREMIN P.C.
55 Northern Boulevard, Suite 302
Great Neck, New York 11021
Tel: (718) 352-4800
Email: sagulnick@GAKlawfirm.com

*Attorneys for Plaintiffs*