UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FRED LEE and ANN LEE,

                Plaintiffs,

    -against-

UNION MUTUAL FIRE INSURANCE COMPANY

                Defendant.
-----------------------------------------------------------------X

Case No. 1:20-cv-3191 (MKB)(PK)

---

**MEMORANDUM OF LAW IN OPPOSITION
TO  UNION MUTUAL INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

---

GREENBLATT AGULNICK KREMIN P.C.
55 Northern Boulevard, Suite 302
Great Neck, New York 11021

*Counsel for Plaintiffs*

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND................................................................................................... 2

ARGUMENT.......................................................................................................................... 3

    A.  Union Mutual Cannot Rescind The Policy Because It Does Not Have Underwriting Guidelines Establishing That It Would Not Have Issued The Policy........................................ 3

    B.  Union Mutual is Estopped from Rescinding the Policy............................................... 5

    C.  Plaintiffs Failed To Establish There Was An Apartment In The Basement ...................... 11

        1.  Union Mutual's Only Evidence Submitted, The Lambert Affidavit, Should Be Disregarded Based On the Sham Affidavit Doctrine.............................................................. 11

        2.  The Investigator's Report, Which is Union Mutual's Only Evidence Of An Apartment in The Basement, Is Inadmissible Hearsay ............................................................. 17

        3.  There Was No Living Unit In The Basement ............................................................ 20

    D.  Union Mutual Cannot Rescind The Policy Because It Cannot Establish Plaintiffs Made a Material Misrepresentation ...................................................................................... 21

CONCLUSION..................................................................................................................... 25

## Table of Authorities

**Cases**

*463 Saddle Up Tremont LLC v. Union Mut. Fire Ins. Co.*,
2021 N.Y. Misc. LEXIS 3551 ................................................................................. 3, 22

*Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*,
No. 16-CV-0437(SJF)(SIL), 2018 U.S. Dist. LEXIS 234894 (E.D.N.Y. Mar. 30, 2018) ................. 24

*Ashkenazi v. AXA Equit. Life Ins. Co.*,
2016 N.Y.Misc. LEXIS 3656 (1st Dep't 2016) ............................................................. 3, 4, 5

*Breed v. Insurance Co. of N. Am.*,
46 N.Y.2d 351 (N.Y. 1978) ................................................................................... 24

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001) .................................................................................. 12

*Cubby v. CompuServe, Inc.*,
776 F. Supp. 135 (S.D.N.Y. 1991) ........................................................................... 8

*Delaney v. Bank of Am. Corp.*,
908 F. Supp. 2d 498 (S.D.N.Y. 2012) ....................................................................... 19

*Fanger v. Manhattan Life Ins. Co.*
of New York, N.Y., 273 A.D.2d 438, 709 N.Y.S.2d 622 (2d Dep't 2000) ........................... 24

*Garcia v. Hartford Police Dep't*,
706 F.3d 120 (2d Cir. 2013) .................................................................................. 3

*Gilani v. GNOC Corp.*,
No. 04-CV-2935 (ILG), 2006 U.S. Dist. LEXIS 23397 (E.D.N.Y. Apr. 25, 2006) ................... 12

*Great Minds v. FedEx Office & Print Servs., Inc.*,
886 F.3d 91 (2d Cir. 2018) ................................................................................... 9

*Guideone Specialty Mut. Ins. Co. v. Congregation Adas Yereim*,
593 F. Supp. 2d 471 (E.D.N.Y. 2009) ....................................................................... 6

*Hayes v. New York City Dep't of Corrections*,
84 F.3d 614 (2d Cir. 1996) ................................................................................... 12

*Kenny v. Fuller*,
87 A.D.2d 183, 450 N.Y.S.2d 551 (2nd Dep't 1982) ...................................................... 9

*Koloski v. Metro. Life Ins. Co.*,
5 Misc. 3d 1028(A), 799 N.Y.S.2d 161 (Sup. Ct. N.Y. County Nov. 3, 2004) ....................... 24

ii

*Kroski v. Long Island Sav Bank FSB*,

    261 A.D.2d 136, 689 N.Y.S.2d 92 (1st Dep't, 1999) ........................................................ 3, 5

*Leach v. Kaykov*,

    2011 WL 1240022*10 (E.D.N.Y. 2011) (E.D.N.Y. 2011) ................................................ 8

*Leading Ins. Group Ins. Co., Ltd. v. Xiao Wu Chen*,

    150 A.D.3d 977, 55 N.Y.S.3d 299 (2d Dep't 2017) ........................................................ 5-6

*Leser v. United States Bank Nat'l Ass'n*,

    No. 09-CV-2362 (KAM)(MDG), 2012 U.S. Dist. LEXIS 182975 (E.D.N.Y. Dec. 29, 2012) ........... 19

*Mack v. United States*,

    814 F.2d 120 (2d Cir. 1987) ........................................................................................ 12

*Marvel Characters, Inc. v. Kirby*,

    726 F.3d 119 (2d Cir. 2013) ........................................................................................ 3

*Morgan Stanley Grp. v. New England Ins. Co.*,

    225 F.3d 270 (2d Cir. 2000) ........................................................................................ 24

*Moroughan v. Cnty. of Suffolk*,

    No. 12-CV-0512 (En) (AKT), 2021 U.S. Dist. LEXIS 13138 ............................................ 3

*Morris v. I.C. Sys.*,

    No. 16-cv-1306 (DLI), 2018 U.S. Dist. LEXIS 170993 (E.D.N.Y. Sep. 30, 2018) ................ 12

*Paguirigan v. Prompt Nursing Emp't Agency LLC*,

    No. 17-cv-1302 (NG) (JO), 2019 U.S. Dist. LEXIS 165587 (E.D.N.Y. Sep. 23, 2019) ........... 7

Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 632 (2d Cir. 1994) ............... 18

*Potamkin Cadillac Corp.*,

    38 F.3d ..................................................................................................................... 19

*Ramos v. Baldor Specialty Foods, Inc.*,

    2011 U.S. Dist. LEXIS 66631 (S.D.N.Y. June 16, 2011) .................................................. 17

*Raskin v. Wyatt Co.*,

    125 F.3d 55 (2d Cir. 1997) ........................................................................................... 12

*Research & Dev. Co. v. Singer Co.*,

    410 F.2d 572 (2d Cir. 1969) ........................................................................................ 17

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,

    7 F.3d 1091 (2d Cir. 1993) ........................................................................................... 24

*Seaboard Sur. Co. v. Gillette Co.*,

64 N.Y.2d 304 (N.Y. 1984) ............................................................................................... 24

*Seward Park Housing Corp. v. Cohen*,

 287 A.D.2d 157, 734 N.Y.S.2d 42 (1st Dep't 2001) ......................................................... 7, 8

*Time Warner City Cable v. Adelphi Univ.*,

 27 A.D.3d 551, 813 N.Y.S.2d 114 (2nd Dep't 2006) ........................................................ 9

*U.S. Life Ins. Co. in City of New York v. Blumenfeld*,

 92 A.D.3d 487, 938 N.Y.S.2d 84 (1st Dep't 2012) .......................................................... 5, 6

*U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Boulevard*,

 No. 10-CV-1595 (ARR)(JMA), 2014 U.S. Dist. LEXIS 57004 (E.D.N.Y. Apr. 23, 2014) ............... 17

*United States v. Hunt*,

 No. 21-CR-86 (PKC), 2021 U.S. Dist. LEXIS 72712 (E.D.N.Y. Apr. 15, 2021) ............................. 18

*Variety Homes, Inc. v. Postal Life Ins. Co.*,

 287 F.2d 320 (2d Cir. 1961) ............................................................................................. 10

*Westfed Holdings v. United States*,

 55 Fed. Cl. 544 (Ct.Cl. 2003) aff'd in part 407 F.3d 1352 (Fed. Cir. 2005) .................................. 18-19

**<u>Statutes</u>**

Fed. R. Civ. P. 56 .............................................................................................................. 3, 4

Fed. R. Evid. 801 ............................................................................................................... 18

Fed R. Evid. 803 ............................................................................................................... 18, 19

NYC Admin. Code § 27-2004 ............................................................................................. 20, 21

NYC Admin. Code § 27-2062 ............................................................................................. 21

NYC Admin. Code § 27-2087 ............................................................................................. 21, 23

Plaintiffs Fred Lee and Ann Lee ("Plaintiffs" or the "Lees") submit this memorandum of law in opposition to Defendant Union Mutual Fire Insurance Company's ("Defendant" or "Union Mutual") motion for summary judgment.

## PRELIMINARY STATEMENT

After Plaintiffs suffered a devastating fire loss to their property located at 39-11 27th Street, Long Island City, New York (the "Property"), Union Mutual sought to capitalize on Plaintiffs' vulnerable state by seeking to rescind the fire insurance policy (the "Policy") that Plaintiffs' bought. Rather than pay the Claim, Union Mutual sought to shirk its coverage obligation by purportedly rescinding the Policy because, according to Union Mutual, the Property had three apartments and was only insured for two. The recission, however, was improper for four distinct reasons.

*First,* Union Mutual cannot rescind as a matter of law because it did not have any implemented underwriting guidelines concerning what constituted an "apartment". It is settled law that an insurer cannot rescind an insurance policy unless its underwriting guidelines, underwriting manual, or some other written guidance establishes that it would not have issued the Policy under the circumstances. Union Mutual had no such underwriting guidelines. Accordingly, Union Mutual cannot rescind the Policy as a matter of law.

*Second*, Union Mutual is estopped from rescinding the Policy because it accepted premium payments after having actual knowledge of the facts upon which it relies to support rescission. Indeed, Union Mutual conducted an inspection of the Property before it issued the Policy where it photographed the basement, maintained those photographs in its underwriting file, and accepted premiums from the Lees for years afterwards. Since these facts are undisputed, estoppel is warranted as a matter of law.

1

*Third*, even if it was permitted to rescind, Union Mutual could not do so in this matter because the Property only contained two apartment units. Although Union Mutual has concocted a novel theory that the cellar was also a separate apartment, the record conclusively establishes that there were only two apartments at the Property. Indeed, the only evidence Union Mutual presents in support of its three-apartment theory is a report from an independent adjuster which is unauthenticated, inadmissible hearsay lacking any foundation to support the opinions contained therein. Even if Union Mutual could rely on its scanty evidence, it could not overcome the overwhelming conclusion that there were only two apartments.

*Fourth*, Union Mutual cannot establish any material misrepresentation in the application because its underwriting guidelines only refer to "living units" not "apartment units." Since its underwriting guidelines do not address the number of "apartment units", Union Mutual is foreclosed from rescinding because it cannot establish that the number of "apartment units" was material to its underwriting determination.

As explained in greater detail below, Union Mutual's rescission fails as a matter of law and as a matter of fact. Accordingly, the Court should deny Union Mutual's motion in its entirety, and grant summary judgment in favor of Plaintiffs.

## **FACTUAL BACKGROUND**

The material facts are set forth in the Counterstatement of Material Facts submitted herewith in opposition to Union Mutual's summary judgement motion.

## ARGUMENT

Summary judgment under Fed. R. Civ. P. 56(a) is appropriate "only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013)(internal quotations omitted); *Moroughan v. Cnty. of Suffolk*, No. 12-CV-0512 (En) (AKT), 2021 U.S. Dist. LEXIS 13138, *53, 2021 WL 298714 (E.D.N.Y. Jan. 20, 2021). "In determining whether there is a genuine dispute as to a material fact, [the Court] must resolve all ambiguities and draw all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013). When measured against this standard, as explained below, Union Mutual's motion fails as a matter of law.

**A.      Union Mutual Cannot Rescind The Policy Because It Does Not Have Underwriting Guidelines Establishing That It Would Not Have Issued The Policy**

To establish its right to rescind as a matter of law, an insurer must present two categories of evidence: (1) An affidavit or testimony from the insurer's underwriter who testifies that the insurer would not have issued the particular contract if the facts had been disclosed; and (2) the insurer's underwriting manual, guidelines, or rules. *Ashkenazi v. AXA Equit. Life Ins. Co.,* 2016 N.Y.Misc. LEXIS 3656, at *15 (1st Dep't 2016), citing *New England Life Ins. Co. v. Taverna,* 2002 U.S.Dist. LEXIS 10747, 2002 WL 718755 (E.D.N.Y. 2002); *Kroski v. Long Island Sav Bank FSB,* 261 A.D.2d 136, 689 N.Y.S.2d 92 (1st Dep't, 1999). The Court may not rely merely on statements by the insurer that it would not have issued the policy but for the insured's misrepresentation. *See Ashkenazi,* 2016 N.Y.Misc. LEXIS 3656, at *15-16; *463 Saddle Up Tremont LLC v. Union Mut. Fire Ins. Co.*, 2021 N.Y. Misc. LEXIS 3551, * 8, 2021 N.Y. Slip Op. 31948, 4 (N.Y. Sup. Ct. 2021) (Holding that self-serving affidavits from the insurer's

3

representatives cannot, standing alone, meet the insurer's burden.)  Rather, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application.  *See Ashkenazi,* 2016 N.Y. Misc. LEXIS 3656, at *15-16.

The record is devoid of any underwriting manuals, guidelines, set of rules, or some other documentation establishing what Union Mutual would consider an apartment.  Rather, the record is clear that Union Mutual's underwriter conceded that Union Mutual did not utilize any definition. This failure, standing alone, prevents Union Mutual from rescinding the Policy.

Union Mutual's designated underwriting agent, Mr. James Lambert, conceded that Union Mutual did not have a definition for "apartment" or "apartment unit" for purposes of applying for insurance.  *See* SOF,[1] ¶ 12.  Mr. Lambert testified as follows:

> Q:    Does Union Mutual or Roundhill Express have guidelines or memorandum of documentation which relate to the definition of an apartment unit as the term is utilized in an application for insurance?
>
> A:    No.

(Ex. D,[2] Lambert Tr. 33:15-20)

> Q:    Well, what constitutes the definition of an apartment?
>
> A:    Do you want my definition; do you want the most recent court decision definition? I mean my definition doesn't really matter here.
>
> Q:    Okay. Well, what is the definition that is utilized by Roundhill Express in connection with applications?

---

[1]    "SOF" as used herein refers to the Plaintiffs' Response to Defendant's Local Civil Rule 56.1 Statement submitted in opposition to Defendant's summary judgment motion.

[2]    "Ex. __" as used herein refers to the exhibits attached to the November 19, 2021 Declaration of Scott Agulnick submitted in opposition to Defendant's summary judgment motion.

4

A:      We don't have a definition. We ask how many apartments
        are there.

(Ex. D, Lambert Tr. 34:12-22)

Q:      But what constitutes an apartment as far as Roundhill and Union Mutual
        are concerned?

A:      I personally consider places in which people reside to be apartments, but
        my personal definition is not material here, it's how the courts define
        apartments.

(Ex. D, Lambert Tr. 35:23-35:4)

The law does not permit Union Mutual to decide what constitutes an apartment based on what direction the wind is blowing.  Rather, the law states that, without any guidelines or rules on what constitutes an "apartment" or "apartment unit" for purposes of underwriting a Policy, Union Mutual cannot rescind the Policy as a matter of law.  *See Ashkenazi,* 2016 N.Y.Misc. LEXIS 3656, at *15; *Kroski,* 261 A.D.2d at 136.

**B.      Union Mutual is Estopped from Rescinding the Policy**

It is well established that "[a]n insurer's failure to rescind a policy promptly after obtaining sufficient knowledge of alleged misrepresentations by an insured constitutes ratification of the policy. . .[m]oreover, an insurer that accepts premiums after learning of facts that it believes entitles it to rescind the policy has waived the right to rescind." *U.S. Life Ins. Co. in City of New York v. Blumenfeld*, 92 A.D.3d 487, 938 N.Y.S.2d 84 (1st Dep't 2012); *See also, Security Mut. Life Ins. Co. of New York v. Rodriguez*, 65 A.D.3d 1, 8, 880 N.Y.S.2d 619 (1st Dep't 2009) ("an insurer's claimed attempt to both accept premiums and reserve its right to rescind is unenforceable for lack of mutuality and timeliness"); *Continental Ins. Co. v. Helmsley Enterprises, Inc.,* 211 A.D.2d 589, 622 N.Y.S.2d 20 (1st Dep't 1995) ("Plaintiff waived its right to seek rescission …when it knowingly accepted premium payments for several months following discovery of the alleged misrepresentations upon which it claimed to have relied when it issued the policies"); *Leading Ins.*

5

*Group Ins. Co., Ltd. v. Xiao Wu Chen*, 150 A.D.3d 977, 978, 55 N.Y.S.3d 299 (2d Dep't 2017)

("The continued acceptance of premiums by an insurer after learning of facts which would allow

for rescission … may constitute waiver of, or estoppel against, the insurer's right to rescind.").

This Court's holding in *Guideone Specialty Mut. Ins. Co. v. Congregation Adas Yereim*,

593 F. Supp. 2d 471, 483 (E.D.N.Y. 2009) is clear on the standard.  In *Guideone*, this Court stated:

> New York law is crystal clear on this point-- when an insurer seeks to rescind a contract *ab initio* based on misrepresentations by the insured, it must promptly disaffirm the contract upon learning of the misrepresentations--and certainly it may not continue to derive benefit under it. The Second Circuit, moreover, has pointedly and categorically stated that [any] action for rescission must be initiated without unreasonable delay. The Circuit's rule applies with even greater vitality in the insurance context due to the nature of the parties' obligations. Simply put, an insured has a compelling need to know whether it is covered under an existing insurance agreement.  An insured is therefore entitled to prompt notice of whether the insurer intends, upon gaining information of an alleged misrepresentation, to continue performance under the contract of insurance.

*Guideone Specialty Mut. Ins. Co.*, 593 F. Supp. 2d at 483 (Internet citations and quotations omitted,

alterations in original); *accord, United States Life Ins. Co. in the City of N.Y. v. Blumenfeld*, 92

A.D.3d 487, 489, 938 N.Y.S.2d 84 (1st Dep't 2012) ([A]n insurer that accepts premiums after

learning of facts that it believes entitles it to rescind the policy has waived the right to rescind.)

Union Mutual tries to side-step its error in failing to timely rescind by asking the Court to

absolve Union Mutual of the knowledge imputed upon it through its agent.  Union's Mutual's

argument, however, is not supported by the facts or the law.  Union Mutual argues that its

inspector's knowledge should not be imputed on Union Mutual because (1) it gave its inspector a

limited "blanket" instructions and the inspector's job was not to count apartment, and (2) the

6

inspector was an independent contractor so the knowledge could not be imputed to Union Mutual. There is simply no authority to support these contentions absolve Union Mutual of knowledge.

"As a general matter, knowledge that an agent acquires in the scope of his agency is imputed to the principal, meaning that the latter is bound by that information even if he never actually received it." *Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 17-cv-1302 (NG) (JO), 2019 U.S. Dist. LEXIS 165587, at *57 (E.D.N.Y. Sep. 23, 2019). Unless there is evidence that the agent acted outside the scope of his agency, such knowledge is imputed to the principal. *Id; see also Seward Park Housing Corp. v. Cohen*, 287 A.D.2d 157, 167, 734 N.Y.S.2d 42, 51 (1st Dep't 2001) ("The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it.") "[T]he imputation of knowledge, and its concomitant responsibility, may not be avoided by the simple expedient of closing one's eyes, covering one's ears, and holding one's breath." *Seward Park Hous. Corp.,* 287 A.D.2d at 168-69.

Plaintiff's first argument that knowledge of the inspector should not be imputed to Union Mutual because of the limited scope of the inspector's engagement is easily disposed on the facts alone. In fact, no imputation of knowledge is required because Union Mutual had <u>actual</u> knowledge of the state of the basement. Indeed, the inspector's report, with photographs of the basement, was contained in Union Mutual's underwriting file.

Seeking to avoid the inevitable, Union Mutual also argues that it did not have knowledge of the condition of the basement – while acknowledging, as it must, that its inspector was actually physically in the basement and observed the surroundings – because the inspector's knowledge was not imputed to Union Mutual because the inspector was an independent contractor of Union Mutual. This argument, however, contradicts established law and defies credulity.

7

Here, the principal-agent relationship could not be clearer. Union Mutual performed an inspection of the insured premises in July, 2017 through its designated inspector. *See* SOF ¶ 51; Ex. G. In this regard, Union Mutual's inspector performed that inspection on behalf of Union Mutual in furtherance of Union Mutual's own underwriting process. *Id.* Cutting through Union Mutual's rhetoric and the self-serving designation of Union Mutual's inspection as a "limited one", Union Mutual offers no explanation why the general rule imputing an agent's knowledge to the principal should not be applied here. Indeed, Union Mutual cites no authority that would except the inspector from being an agent of Union Mutual. Instead, without any support, Union Mutual seems to create its own rule that an independent contractor is not an agent, and an independent contractor's knowledge cannot be imputed to the principal.

Union Mutual's warped version of agency-principal law is based on two inapposite cases, one which is a defamation dispute where the definition of an independent contractor is recited (*Cubby v. CompuServe, Inc.,* 776 F. Supp. 135, 144-43 (S.D.N.Y. 1991)), and the other, which contains a general snippet regarding <u>liability</u> of an independent contractor being imputed to a principal based on New Jersey law. *Leach v. Kaykov*, 2011 WL 1240022, *10 (E.D.N.Y. 2011) (Holdings based on New jersey law). Neither case is relevant.

Setting aside that one of the two cases Union Mutual cites is based on New Jersey law and can be summarily ignored, both cases upon which Union Mutual relies address liability of an independent contractor being imputed to the principal for tort, which is entirely distinguishable from the issues here. The issues in those cases do not address the imputation of knowledge. Unlike in the cases upon which Union Mutual relies, the issue here pertains solely to knowledge of an agent being imputed to the principal. The inspector's classification as an employee or independent

8

contractor (which would require a much deeper dive into the relationship between the inspector and Union Mutual) is similarly irrelevant.

Union Mutual cites no authority, and Plaintiff is aware of none, which holds that an independent contractor cannot be an agent of the principal for which it works. Rather, there is a wealth of caselaw holding that a party serving as an independent contractor does not necessarily preclude finding an agent-principal relationship. *Time Warner City Cable v. Adelphi Univ.*, 27 A.D.3d 551, 553, 813 N.Y.S.2d 114, 116 (2nd Dep't 2006); *Kenny v. Fuller*, 87 A.D.2d 183, 191, 450 N.Y.S.2d 551, 557 (2nd Dep't 1982) (Holding "the mere fact that [a party] was designated as an independent contractor under *its* agreement … does not supplant the clear intent to have [that independent contractor] function as the [Principal's] agent vis-a-vis the work to be performed.").

Without any exception to the general rule, which Union Mutual has failed to identify, the "imputation of knowledge from agent to principal" is the "mundane ubiquity of lawful agency relationships" *Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 95 (2d Cir. 2018).[3] Accordingly, the knowledge about the condition of the basement that Union Mutual's inspector obtained during its 2017 inspection is imputed upon Union Mutual as a matter of law.

Thus, since Union Mutual cannot escape its knowledge of the condition of the basement, it is hard to imagine a clearer case for estoppel. The evidence that Union Mutual accepted premiums after it became aware of the purported basis to rescind is irrefutable. The Inspection Report makes clear that the inspector photographed the mechanical room, the two gas meters, the electrical meters, all of which were in the basement. *See* Ex. F. In addition, Union Mutual had actual knowledge of the basement before the Policy was issued in July of 2017. Thus, Union Mutual had the opportunity to walk the property, inspect it, take relevant notes, and photograph

---

[3]     An exception to the long-standing rule of imputing an agent's knowledge to the principal is where the agent has interests adverse to the principal.  There is not the case here, nor is alleged.

the property as a pre-requisite for issuing the Policy. With full knowledge of the existence of the two upstairs apartments and the separate basement, Union Mutual issued the Policy. After the inspection, Plaintiffs were lulled into inactivity and reasonably believed that they had the coverage for the entirety of the Property because Union Mutual approved the risk and issued the Policy *after* the inspection. *See* Ex. A, ¶ 16.

Plaintiffs continued to pay, and Union Mutual continued to accept, premiums from 2017 until after Plaintiffs submitted a claim years later. Indeed, Union Mutual conveniently did not seek to Rescind the policy until after a Claim was submitted in. There is nothing Union Mutual learned or could have learned following its second inspection that it did not or could not have learned during the first inspection performed before the Policy was issued. Furthermore, Plaintiffs were prejudiced by Union Mutual's delay because, had they known Union Mutual's position regarding the basement at the time of the inspection–albeit an untenable position— Plaintiffs could have procured insurance from a different insurer that would have covered the Property without the flimsy excuses now being propounded by Union Mutual.

Based upon Defendant's actual knowledge of the condition of the basement in July, 2017, and casting aside the fact that a finished cellar/basement is not an apartment unit, Union Mutual was required to rescind the Policy, at the latest, within a few months of its underwriting inspection in July 2017. Indeed, the Second Circuit has specifically stated that an insurer "cannot close its eyes to the obvious" then seek to void a contract based on purported misrepresentations in the application. *Variety Homes, Inc. v. Postal Life Ins. Co.*, 287 F.2d 320, 323 (2d Cir. 1961). Union Mutual's failure to timely rescind, and continue to collect premiums, is dispositive.

10

**C.**        **Plaintiffs Failed To Establish There Was An Apartment In The Basement**

Relying solely on the Lambert Affidavit, which includes a self-serving, uncorroborated, and inadmissible report from Union Mutual's own investigator, Union Mutual asks the Court to grant summary judgment and declare that the policy is rescinded.  But, as discussed in greater detail below, the Lambert Affidavit is a sham affidavit contradicted by Mr. Lambert's own testimony and should not be considered, and the investigator's report upon which Union Mutual relies – which is attached to the sham Lambert Affidavit – is inadmissible.   Even if Union Mutual could overcome these evidentiary hurdles, its motion still fails because it had knowledge of the condition of the Basement at the time it wrote the Policy, and Union Mutual's attempt to distance itself from the knowledge of its agent is nonsensical and contrary to established law.  Finally, Union Mutual motion fails because Union Mutual cannot establish a material misrepresentation in the application, and therefore cannot rescind the Policy.  Each issue is addressed in turn.

**1.  Union Mutual's Only Evidence Submitted, The Lambert Affidavit, Should Be Disregarded Based On the Sham Affidavit Doctrine**

As a threshold matter, the Lambert Affidavit[4] must be disregarded because it is a sham affidavit entirety contradicted Mr. Lambert's prior testimony in this case.  Indeed, Mr. Lambert's testimony confirmed that he lacked any personal knowledge regarding the Lees' claim and underwriting of the Policy and cannot rely on his affidavit stating the contrary.  Thus, Mr. Lambert's affidavit, which he states is "made upon [his] own personal knowledge."  Lambert Aff. ¶ 2.

---

[4]        All references in this memorandum of law to the 'Lambert Affidavit" or "Lambert Aff." Refer to the October 22, 2021 affidavit of James Lambert submitted in support of Union Mutual's summary judgment motion.

11

"[I]t is well settled that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (citing *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), cert denied , 474 U.S. 851 (1985); *Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 1982), *cert. denied*, 459 U.S. 858 (1982); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)); *see also Estate of Hamilton v. City of N.Y.*, 627 F.3d 50, 54 (2d Cir. 2010) (Holding that the District Court was correct in refusing to consider affidavits submitted on summary judgment that contradicted the affiants' prior deposition testimony); *accord Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.")  ; *Morris v. I.C. Sys.*, No. 16-cv-1306 (DLI), 2018 U.S. Dist. LEXIS 170993, at *13 (E.D.N.Y. Sep. 30, 2018) (Holding that the Court should afford no weight to a "self-serving and contradictory affidavit").  The sham affidavit doctrine protects the "utility of summary judgment as a means of determining genuine issues of fact" by preventing a litigant from "raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony." *Gilani v. GNOC Corp.*, No. 04-CV-2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *7 (E.D.N.Y. Apr. 25, 2006)

The Lambert Affidavit is the quintessential example of a sham affidavit.  Mr. Lambert was deposed on May 4, 2021, approximately five months prior to signing the Lambert Affidavit. Throughout his deposition, Mr. Lambert confirmed that he did not know anything about the Lees' claim or the Policy, the investigation after the loss, or the reasons that Union Mutual rescinded the Policy.  His testimony foreclosed the possibility of proclaiming any personal knowledge about this

matter. Presumably because they had no other options, Union Mutual submitted the Lambert Affidavit based on Mr. Lambert's "personal knowledge" despite him testifying that he had no personal knowledge about this matter.

With respect to the underwriting of the Policy, although the Lambert Affidavit makes specific contentions about underwriting, Mr. Lambert testified that he had no personal knowledge about the underwriting process for the Policy, and did not know anyone at Roundhill with personal knowledge. More specifically, the Lambert Affidavit states, in relevant part, as follows:

> One of these questions on the 01 Application asked: "How many apartment units are there?" Ex. 1 20. To which plaintiffs, or their broker/agent on behalf of plaintiffs, answered, on the 01 Application submitted for the 01 Policy "2"

(Lambert Aff., ¶ 19-20)

>     *      *      *

> The property located at 39-11 27th Street, Long Island City, New York 11101 (the "Premises") is the sole designated risk location on the 01 Policy. (…) The 01 Policy was issued in reliance upon the truth of specifically requested information and facts about the Premises that were presented by or on behalf of the plaintiffs to Roundhill and Union Mutual via an Application for Commercial Insurance (the "01 Application"), submitted electronically on June 27, 2017.

(Lambert Aff., ¶ 12-13)

Yet, despite swearing in his affidavit that he had personal knowledge about underwriting the Policy, a few month earlier, he testified at his deposition as follows:

> Q: Did a time come where RoundHill undertook to underwrite a policy for Fred and Ann Lee at 39-11 27th Street in Long Island City, New York?
>
> A: I don't know

(Ex. D., Lambert Tr., 8:15-19)

>     *      *      *

13

Q: Did you have any involvement in the underwriting of the policy issued to Fred and Ann Lee for 39-11 27th Street?

A: I have no specific recollection of that policy …

(Ex. D, Lambert Tr., 8:24-9:4)

\*       \*       \*

Q: Do you know anyone at RoundHill who would have personal knowledge as to the underwriting process performed at or about the time the original Union Mutual policy was issued to Fred and Ann Lee? …

A: [] No employee of RoundHill would have been involved in that process …

(Ex. D, Lambert Tr., 12:17 – 13:2).

Mr. Lambert also testified during his deposition that he had no personal knowledge about the Lees claim.  On this issue, Mr. Lambert testified as follows:

Q: Do you have any personal knowledge of the claim of Fred and Ann Lee?

A: As I sit here today, I have no independent recollection of that claim

(Ex. D, Lambert Tr., 11:1-5)

\*       \*       \*

Q: As you sit here today, do you have any knowledge as to the coverage determination with regard to the claim of Fred and Ann Lee, the date of loss March 2, 2020…

A: I do not have any independent recollection of that.

(Ex. D, Lambert Tr., 14:25 – 15:9)

\*       \*       \*

Q: So as you sit here today, you don't know what the dispute is over?
A: That is correct.

(Ex. D, Lambert Tr., 15:17-19)

\*       \*       \*

14

> Q: If we gave you all the time in the world to sit and review the claim file, your knowledge of this claim would be confined to whatever you read therein; is that correct?
>
> A: I do not have any independent recollection of this claim and if you let me review this claim file, all I would know is what's in the claim file.

(Ex. D, Lambert Tr., 33:5-12).

Mr. Lambert's affidavit also relies on the investigation and concludes that based on the investigation, he concluded that there was a material misrepresentation in the application for the Policy, yet Mr. Lambert testified that he had no personal knowledge about the investigation. Indeed, the Lambert Affidavit states:

> As a result of investigating plaintiffs' claim, we determined the Union Mutual commercial insurance policy plaintiffs are claiming against was issued based upon a material misrepresentation as to the number of residential units in the building to be insured"

(Lambert Aff. ¶ 6).

Despite stating in his affidavit that he relied on Union Mutual's investigation, and more specifically, the investigation that concluded there was a third apartment at the Premises because there was a stove present, Mr. Lambert testified that he had no personal knowledge about the stove, whether the investigator ever went to the basement of the premises, and that never even spoke to the investigator about the investigation. Mr. Lambert testified, in relevant part, as follows:

> Q: Did you ever speak with [the investigator] Mr. Beltrani as to whether he performed any investigation as to whether that stove was actually connected in the basement of the subject premises?
> A: I have no independent recollection of that.
>
> Q: Do you know if the stove that you're referencing was gas or electric or something else?
> A: I have no independent recollection of that

(Ex. D, Lambert Tr., 54:23- 55:8)

\*    \*    \*

15

Q: Do you know if during that inspection, the inspector was in the basement at the insured location?
A: I do not know.

(Ex. D, Lambert Tr., 56:1-5)

\*        \*        \*

Q: Do you have any recollection of ever speaking with Mr. Beltrani about the claim of the Lees?
A: I have no recollection of that.

(Ex. D, Lambert Tr., 60:20-23)

Despite the Lambert Affidavit stating that based on his investigation he concluded that there was a material misrepresentation int eh application (*See* Lambert Aff. At ¶ 6), he testified that he had no personal knowledge about the reason Union Mutual decided to rescind the Policy and refused to pay for the Lees' Claim.  He testified, in relevant part, as follows:

Q: Did you render coverage determination with regard to the claim of the Lees?
A: I don't have an independent recollection of that, but based on the answer to that question, I would presume that I did.

(Ex. D, Lambert Tr., 47:21-25)

\*        \*        \*

Q: As you sit here today, you do not know what the coverage determination of the Lees' claim was, correct?
A: As I sit here today, I have no independent recollection of the coverage determination here.

(Ex. D, Lambert Tr., 48:25-49:6)

The foregoing crystalizes that Mr. Lambert testified that he had no personal knowledge about this matter.   Yet, the Lambert Affidavit, upon which Union Mutual relies exclusively to support its summary judgment motion, specifically states that Mr. Lambert's contentions therein are based on personal knowledge despite his testimony to the contrary just a few months earlier.  But, it is settled law that the Court should disregard an affidavit that contradicts earlier testimony because "the deposition of a witness will usually be more reliable than his affidavit,

16

since the deponent was either cross-examined by opposing counsel, or at least available to opposing counsel for cross-examination" *Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Boulevard,* No. 10-CV-1595 (ARR)(JMA), 2014 U.S. Dist. LEXIS 57004, at *15 (E.D.N.Y. Apr. 23, 2014)(holding "plaintiff's inability to recall during his deposition testimony directly contradicted his statement in his affidavit and that the affidavit should be disregarded as a result"); *see also Ramos v. Baldor Specialty Foods, Inc.,* 2011 U.S. Dist. LEXIS 66631, at *11 (S.D.N.Y. June 16, 2011)(Recognizing that Courts in the Second Circuit "have rejected such attempts to rely on declarations that contradict the witness's prior deposition testimony and have granted summary judgment even where the purported new evidence would otherwise create a triable issue of fact.")

There is no other evidence that corroborates Mr. Lambert's conflicting affidavit and Defendant's affidavit constitutes a sham affidavit under the doctrine and should be disregarded as a part of Plaintiff's motion for summary judgment which should be granted.

### 2. The Investigator's Report, Which is Union Mutual's Only Evidence Of An Apartment in The Basement, Is Inadmissible Hearsay

Union Mutual seeks a declaration that it is entitled to rescind the Policy because it contends there is an "apartment unit" in the basement at the Premises. Its position, however, is based solely on the report from its investigator Harry Beltrani (the "Beltrani Report"). As discussed below, the Beltrani Report is inadmissible hearsay, and thus, his conclusions cannot be used for the truth of the matter asserted therein.[5]

---

[5] Setting aside the evidentiary issue, Union Mutual is asking the Court to permit Harry Beltrani to be the sole arbiter of what is an "apartment" without offering Mr. Beltrani as an expert, or explaining any of his qualifications to make such a determination.

The statements in the Beltrani report are hearsay because Union Mutual is relying upon the statements therein "to prove the truth of the matter asserted." Fed. R. Evid. 801. Hearsay can only be admissible as a business record if it was "made at or near the time by, or from information transmitted by, a person with knowledge" and it was "the regular practice of [a regularly conducted' business activity to make the" report. Fed R. Evid. 803(6). "In all cases, "the principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994)(quoting *Saks Int'l, Inc. v. M/V Export Champion,* 817 F.2d 1011, 1013 (2d Cir.1987)

In addition, to qualify under the business records exception to the hearsay rule, Union Mutual was required to provide a certification of the custodian of the record. The elements of the certification are fundamental to the admissibility of the evidence, as this Court recently recognized as follows:

> Rule 803(6)....allows business records to be admissible if they are accompanied by a certification of a custodian or other qualified person showing that: (A) "the record was made at or near the time by—or from information transmitted by—someone with knowledge;" (B) "the record was kept in the course of a regularly conducted activity" of the business; and (C) "making the record was a regular practice of that activity."

*United States v. Hunt*, No. 21-CR-86 (PKC), 2021 U.S. Dist. LEXIS 72712, at *33 (E.D.N.Y. Apr. 15, 2021).

Here, Union Mutual failed to set forth any foundation for the admissibility of the Beltrani Report under Rule 803(6) of the Federal Rules of Evidence. The Beltrani Report, which was drafted "solely at the author's discretion raise motivational concerns and lack the reliability and trustworthiness that business records are ordinarily assumed to have." *Westfed Holdings v.*

*United States*, 55 Fed. Cl. 544, 566 (Ct.Cl. 2003) *aff'd in part* 407 F.3d 1352 (Fed. Cir. 2005); *see also*, *Leser v. United States Bank Nat'l Ass'n*, No. 09-CV-2362 (KAM)(MDG), 2012 U.S. Dist. LEXIS 182975, at *13-14 (E.D.N.Y. Dec. 29, 2012) (Stating that there was a lack of foundation when the party offering the record failed to demonstrate that "the record was made at or near the time by -- or from information transmitted by -- someone with knowledge").

The Beltrani Report, which was created by Union Mutual's agent, was created for no other purpose than to afford Union Mutual purported grounds to rescind the Policy by way of introducing Beltrani's opinion as to the basement as an "apartment."   Yet, such a purpose is inherently unreliable because of Union Mutual's apparent motive to use that report to shirk its coverage obligations. *See Potamkin Cadillac Corp.*, 38 F.3d at 632; *see also, Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 507 (S.D.N.Y. 2012) ("We are reluctant to adopt a rule that would permit the introduction into evidence of memoranda drafted in response to unusual or isolated events, particularly where the entrant may have a motive to be less than accurate." (internal citation omitted)); *accord,* Fed. R. Evid. 803, Advisory Committee Note ("Absence of routineness raises lack of motivation to be accurate.")

In addition to the foregoing, Union Mutual cannot escape its agents' admission that an apartment is a "place[] in which people reside,*"* (Ex. D, Lambert Tr. pg. 35 lines 21-25), and there is no dispute that no one resided in the basement of the Property.  *See* Ex. A ¶  18.   The basement is not legally habitable as an apartment or a dwelling unit in the City of New York. There is no legally habitable bedroom, no legal bathroom or kitchen, no kitchenette, stove, oven, microwave or a cooking gas connection, nor does it contain a legal living room.  *See* Ex. A, ¶ 12. It is also undisputed that the basement has only been used for storage purposes.  *See* Ex. A. Notably, the restoration company who performed work at the premises indicated the space and

19

the rooms as storage. *See* Ex. A.

### 3. There Was No Living Unit In The Basement

Even if Union Mutual could rely on the Lambert Affidavit and the Beltrani Report to support its motion, which it cannot, Union Mutual's motion still fails because the record and law establish that there was no living unit in the basement. There is no dispute that the Property is a legal two-family dwelling, and has been used as a two-family dwelling at all times by Plaintiffs. *See* Ex. A. Indeed, Union Mutual has not and does not suggest otherwise, nor is there any evidence that the Property was ever occupied as a three-family dwelling by Plaintiffs. *See* Ex. B.

As a threshold matter, Union Mutual cannot escape its agents' admission that an apartment is a "place[] in which people reside," (Ex. D, Lambert Tr. 35:21-25), and there is no dispute that no one resided in the basement of the Property. *See* Ex. A ¶ 18. In fact, no one could. The basement is not legally habitable as an apartment or a dwelling unit in the City of New York. There is no legally habitable bedroom, no legal bathroom or kitchen, no kitchenette, stove, oven, microwave or a cooking gas connection, nor does it contain a legal living room. *See* Ex. C, ¶ 12. It is also undisputed that the basement has only been used for storage purposes. Notably, the restoration company who performed work at the premises indicated the space and the rooms as storage. *See* Ex. A.

Section 27-2004(a)(14) of the Housing Maintenance Code of the City of New York, defines "apartment" as "one or more living rooms, arranged to be occupied as a unit separate from all other rooms within a dwelling, with lawful sanitary facilities and a lawful kitchen or kitchenette for the exclusive use of the family residing in such unit." NYC Administrative Code § 27-2004(a)(14). The basement space at the Property, does not comply with the requirements of

20

the code for rooms for living. It does not contain windows in compliance with the law (*see* NYC Administrative Code § 27-2062(a))[6] which is a condition precedent to occupancy or habituality, nor it does not comply with legal natural light requirements. *See* NYC Administrative Code § 27-2062(b); *See also* Ex. P [Picture from Production Bates Stamped 33].

In fact, the "basement" as Union Mutual calls it, is in fact a cellar in that more than half of the height is below grade. *See* Ex. A; *see also* § 27-2004(a)(28) (defining "cellar" as "an enclosed space having more than one-half of its height below the curb level."). In this regard, the Housing Maintenance Code further specifies that a cellar shall not be rented and no member of a family occupying a one or two-family dwelling may use the cellar "for sleeping, eating or cooking purposes, except that a secondary kitchen for accessory cooking may be located in the cellar." NYC Administrative Code § 27-2087. Thus, the presence of cabinets and a sink does not make it an "apartment unit" or "living unit" as the law is clear that secondary kitchen may be located in the cellar anyway.

Accordingly, as a matter of law, the Plaintiffs' cellar space at the Property was not permitted to be rented or occupied for sleeping, eating, or cooking purposes nor was it used for those purposes. Thus, Union Mutual cannot rescind the Policy and its motion fails.

**D.    Union Mutual Cannot Rescind The Policy Because It Cannot Establish Plaintiffs Made a Material Misrepresentation**

Although Union Mutual simply presumes that the number of "apartment units" is material, the presumption is fundamentally flawed because the term "apartment unit" is not in its

---

[6]    Section 27-2062(a) of the Housing Maintenance Code provides that "[e]very living room shall have at least one window open to a street, public place or an open and unobstructed yard, court or other required open space on the same lot as the dwelling." NYC Administrative Code § 27-2062(a).

underwriting guidelines.[7]   After conceding that Roundhill is bound by Union Mutual's underwriting guidelines,  *see* Lambert Aff., ¶ 64, Ex. 9;  SOF ¶ 37, Union Mutual  asserts that the number of "apartment units" is material to the determination of premiums and the issuance of the Policy.  *Id*.  However, Union Mutual's motion fails because Union Mutual's underwriting guidelines refer to "living units" as relevant to the determination of premiums , and not "apartment units."  In this regard, Union Mutual's underwriting guidelines state:

> *The apartment and dwelling liability classes listed above base*
> *their premium on the number of living units;  with a higher*
> *premium being charged for each additional unit.*

*See* Lambert Aff., ¶ 66, Ex. 66  and Defendant's SOF  ¶ 38.


Union Mutual's conflation of the concept of "apartment unit" and "living units" is significant and precludes summary judgment in Union Mutual's favor. Here, there is no assertion that the finished basement is a space that can be lawfully lived in. *See* Ex. A.  In fact, there is no assertion that the basement was designated as a living unit. It is undisputed that there was no human being living in the basement, nor was there ever anyone living there during Plaintiff's ownership of the property.  It is undisputed that the basement was being used for storage only.  In other words, it was not living space, it was a finished basement, considered a cellar under the laws of the State of New York (*see* NYC Administrative Code §27–2087), which could not be lawfully occupied or used for anyone to live there.

---

[7]     Seeking to avoid its coverage obligations by improperly rescinding a policy after an insured has a loss is old habit for Union Mutual.  In fact, just a few months ago,  New York Supreme Court  prevented Union Mutual from shirking its obligations to its insured in a similar case.  *See 463 Saddle Up Tremont LLC v. Union Mut. Fire Ins. Co.*, 2021 N.Y. Misc. LEXIS 3551, 2021 N.Y. Slip Op. 31948 (N.Y. Sup. Ct, Bronx Cty. June 21, 2021).  In *463 Saddle Up Tremont*, the Court held that Union Mutual could not rescind based on a question in an application that was susceptible to more than one meaning. *Id at 8.*  In that case, the Court also noted that certain terms were undefined in the application and it was unclear what was meant by certain terms, and held that "[a]n answer to an ambiguous question on an application for insurance cannot be the basis of a claim of misrepresentation by the insurance company against its insured where a reasonable person in the insured's position could rationally have interpreted the question as he or she did."  *463 Saddle Up Tremont*, 2021 N.Y. Misc. LEXIS 3551 at 8.

While Union Mutual self-servingly asserts that they do not care if the space is leased or held for rent, such apathy is more indicative of bad faith and the assertion is not reflected anywhere in its underwriting guidelines. Rather, "living unit" is both undefined and open for interpretation. Indeed, the term living unit suggests that it would be where someone actually lives, as opposed to an abstract and imprecise vision of what a theoretical "apartment unit" is. It is impossible to conclude as a matter of law that Plaintiff's finished basement is a "living unit" considering that the laws of the City of New York precludes its use as such. NYC Administrative Code § 27-2087.

Based upon the foregoing, at best, there is an ambiguity with regard to the term "living unit", and whether it can be used interchangeably with the term "apartment unit". Although Union Mutual interchangeably uses those terms for purposes of avoiding its coverage obligations, only the term "living unit" is identified in Union Mutual's underwriting guidelines. Here, the term "apartment" and "apartment unit" was transparently injected into this matter solely as a means to avoid coverage. Significantly, both "living unit" and "apartment unit" are undefined in the application and the Policy and, as demonstrated, subject to multiple interpretations which renders those terms ambiguous. Illustrative of the ambiguities is the testimony of Union Mutual's underwriting agent who could not provide a definition of apartment unit, ultimately conceding that a definition is not utilized. *See* Ex. D, Lambert Tr. 34:12-22.

The law is well settled with regard to ambiguity in an insurance policy that ambiguity must be interpreted in favor of the insured. "[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case and that they are subject to no other reasonable interpretation" *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (N.Y. 1984) (internal citations omitted). "[A]mbiguities in an insurance policy are to be construed against the insurer" *Breed v. Insurance*

23

*Co. of N. Am.*, 46 N.Y.2d 351, 353 (N.Y. 1978) (Holding that resolving the ambiguity against the insurer who drafted the contract is the doctrine of *contra preferentem*); *See also*, *Morgan Stanley Grp. v. New England Ins. Co.,* 225 F.3d 270, 276 (2d Cir. 2000). "Ascertaining whether or not a writing is ambiguous is a question of law for the trial court." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993).

The law is equally well settled as to ambiguities in an insurance application. This Court held:

> [B]ecause insurance contracts are inevitably drafted by insurance companies, New York law construes insurance contracts in favor of the insured and resolves all ambiguities against the insurer. This latter rule applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations.

*Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*, No. 16-CV-0437(SJF)(SIL), 2018 U.S. Dist. LEXIS 234894, at *61 (E.D.N.Y. Mar. 30, 2018). The New York Court of Appeals similarly held that "[a]n insurer is held to a strict standard when it is endeavoring to avoid payment on its insurance contract because of answers to inquiries or declarations which it has framed." *Fanger v. Manhattan Life Ins. Co. of New York, N.Y.*, 273 A.D.2d 438, 439, 709 N.Y.S.2d 622 (2d Dep't 2000), *lv. dismissed*, 96 N.Y.2d 754, 725 N.Y.S.2d 279, 748 N.E.2d 1075 (N.Y. 2001); *see also Koloski v. Metro. Life Ins. Co.,* 5 Misc. 3d 1028(A), 1028A, 799 N.Y.S.2d 161, 161 (Sup. Ct. N.Y. County Nov. 3, 2004).

Here, Plaintiffs had no reason to believe that the finished cellar space in his legal two-family dwelling -- never used during their ownership as an apartment, and which lacked the physical characteristics permitting lawful use as an apartment -- should have been listed as an apartment on the application for the Policy. Given Plaintiffs' reasonable perception of the question as pertaining to actual lawful apartment units utilized as such, that conclusion is inescapable.

For these reasons, Plaintiffs' motion for summary judgment fails because it is not entitled to rescind the Policy because there were only two apartments at the Premises.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment in its entirety and declare that the Policy cannot be rescinded.

Dated: Great Neck, New York
November 19, 2021

Respectfully Submitted,

By:_____/s/_____
Scott E. Agulnick (SA1880)
Todd D. Kremin (TK0102)
GREENBLATT AGULNICK KREMIN P.C.
55 Northern Boulevard, Suite 302
Great Neck, New York 11021
Tel: (718) 352-4800
Email: sagulnick@GAKlawfirm.com

*Attorneys for Plaintiffs*

25