UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

FRED LEE and ANN LEE,

                            Plaintiffs,               **MEMORANDUM & ORDER**
                                                      20-CV-3191 (MKB)

             v.

UNION MUTUAL FIRE INSURANCE
COMPANY,

                            Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiffs Fred and Ann Lee commenced this action against Defendant Union Mutual Fire

Insurance Company on June 5, 2020, bringing claims for breach of contract and violation of

section 349 of the New York General Business Law ("GBL").  (Compl. ¶¶ 61–81, annexed to

Notice of Removal as Ex. A, Docket Entry No. 1-1.)  Plaintiffs allege that Defendant wrongfully

refused to cover fire damage at Plaintiffs' property after concluding from a "sham

investigation[]" of the property that Plaintiffs had lied in their application for insurance.  (*Id.* at

¶¶ 10, 14, 74.)

        Plaintiffs move for summary judgment on their breach of contract claim[1] and Defendant

moves for summary judgment as to both claims.[2]  For the reasons set forth below, the Court

---

[1] (Pls.' Mot. for Summ. J. ("Pls.' Mot."), Docket Entry No. 34; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Mem."), annexed to Pls.' Mot. as Ex. 3, Docket Entry No. 34-3; Def.'s Mem. in Opp'n to Pls.' Mot. ("Def.'s Opp'n"), annexed to Pls.' Mot. as Ex. 18, Docket Entry No. 34-18; Pls.' Reply in Supp. of Pls.' Mot. ("Pls.' Reply"), Docket Entry No. 34-19.)

[2] (Def.'s Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 36; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), annexed to Def.'s Mot., Docket Entry No. 36-19; Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Opp'n"), annexed to Def.'s Mot., Docket Entry No. 34-22; Def.'s

grants Plaintiffs' motion for summary judgment on their breach of contract claim and denies

Defendant's motion for summary judgment on Plaintiffs' breach of contract claim.  The Court

also grants Defendant's motion for summary judgment as to Plaintiffs' claim under section 349

of the GBL.

### I.   Background

      Plaintiff Fred Lee has owned the property located at 39-11 27th Street, Long Island City,

New York ("the Property") since July of 2013 and at all times pertinent to this action.  (Pls.'

Resp. to Def.'s 56.1 Stmt. ("Pls.' 56.1 Resp.") ¶ 15, annexed to Def.'s Mot., Docket Entry No.

36-20.)  The Property has a two-bedroom apartment on the first floor, a two-bedroom apartment

on the second floor, and a finished basement.  (*Id.* at ¶¶ 14, 16–17.)  The basement can be

accessed directly from outside the building.  (*Id.* at ¶ 22.)

### a.   Relevant insurance policies

      On June 27, 2017, Plaintiffs completed an application for commercial insurance and

submitted the application to Defendant.  (*Id.* at ¶¶ 23–24; Def.'s Resp. to Pls.' 56.1 Stmt.

("Def.'s 56.1 Resp.") ¶ 4, annexed to Pls.' Mot. as Ex. 17, Docket Entry No. 34-17.)  Plaintiffs

indicated on the application that the Property contained only two apartment units.  (Pls.' 56.1

Resp. ¶¶ 25–26; Def.'s 56.1 Resp. ¶¶ 5–6.)  Defendant issued the requested policy, covering the

period from July 8, 2017 to July 8, 2018 (the "First Policy").  (Pls.' 56.1 Resp. ¶ 23.)  It later

issued a renewal insurance policy to Plaintiffs for the period from July 8, 2018 to July 8, 2019

(the "Second Policy"),[3] (*id.* at ¶ 28), and a second renewal policy covering the period from July

---

Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), annexed to Def.'s Mot., Docket Entry No. 36-
23.)

    [3]  Defendant claims that Plaintiffs applied for renewal and that, on the renewal
application, "[P]laintiffs again represented that [the Property] contained only two apartment

8, 2019 to July 8, 2020 ("the Third Policy"), (*id.* at ¶ 30).  Plaintiffs again represented on the second renewal application that the Property only contained two apartment units.  (*Id.* at ¶ 31.) All three policies include the following language:

> By accepting this policy, you agree:
> a.     The statements in the Declarations are accurate and complete;
> b.     Those statements are based upon representations you made to us; and
> c.     We have issued this policy in reliance upon your representations.

(First Policy 78, annexed to Aff. of James Lambert ("Lambert Aff.") as Ex. 1, Docket Entry No. 36-9; Second Policy 76, annexed to Lambert Aff. as Ex. 2, Docket Entry No. 36-10; Third Policy 76, annexed to Lambert Aff. as Ex. 3, Docket Entry No. 36-11.)[4]

Roundhill Express, LLC ("Roundhill"), "acting as an agent of [Defendant], binds insurance policies on behalf of" Defendant.  (Defs.' 56.1 Resp. ¶ 3.)  Roundhill's underwriting guidelines state that "[e]ach new policy will undergo an inspection within [sixty] days of its effective date."  (Underwriting Guidelines 2, annexed to Pls.' Mot. as Ex. M, Docket Entry No. 34-16.)  On July 11, 2017, Frederick Harper inspected the Property.  (Def.'s 56.1 Resp. ¶¶ 14–15; Lambert Aff. ¶ 77, annexed to Def.'s Mot., Docket Entry No. 36-8; Def.'s 56.1 ¶ 51.) Harper's report from the inspection includes photos of the outside of the building; the stairway; the electric and gas meters; and the building's heating source.  (Inspection Report, annexed to

---

units."  (Def.'s Stmt. of Undisputed Material Facts ("Def.'s 56.1") ¶ 29, Docket Entry No. 36-18.)  Plaintiffs dispute this, claiming that they "did not complete a renewal application, presumed the renewal to be automatic, took no action in connection with the renewal, and did not execute any additional documentation in connection with the renewal."  (Pls.' 56.1 Resp. ¶ 29.)

[4] Because the three policies, the Beltrani Report, the Second Beltrani Report, the Rescission Letter, and Plaintiffs' Reply are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

Pls.' Mot. as Ex. F, Docket Entry No. 34-9; Lambert Aff. ¶¶ 81–82; Pls.' 56.1 Resp. ¶ 49; Defs.' 56.1 Resp. ¶ 17.)

### b. Fire notification, inspection and cancellation of policies

On March 2, 2020, Plaintiffs' agent notified Defendant through Roundhill that a fire had occurred and a claim was being made under the Third Policy. (Pls.' 56.1 Resp. ¶ 6.) Roundhill hired Beltrani Consultants, Inc. ("BCI") to assist in its investigation of the fire. (*Id.* at ¶¶ 7–8.) BCI produced a report signed by Harry Beltrani that stated that in addition to the apartments occupied by tenants on the first and second floors, the Property also had "a full finished basement [with] a separate entrance" that included "a living area, bedroom with a full bath and kitchen area." (BCI Preliminary Report ("Beltrani Report") 3, annexed to Lambert Aff. as Ex. 5, Docket Entry No. 36-13.)[5] On April 15, 2020, BCI again inspected the Property. (Pls.' 56.1 Resp. ¶ 12.) In the report it produced after this second inspection, BCI stated that it had established after its first inspection that there was "a full furnished apartment located in the basement area." (BCI Proposed Adjustment Report ("Second Beltrani Report") 3, annexed to Lambert Aff. as Ex. 6, Docket Entry No. 36-14.) The basement apartment was "not occupied at this time" but it was "clear that at minimal cost, the apartment can be tenant[-]occupied at any time." (*Id.*) The report included a signed statement by Fred Lee, stating that he had owned the building for seven years, that no one had ever lived in the basement, and that he had "never made a structural change to the building or basement." (*Id.* at 4.)

By correspondence dated May 19, 2020, Roundhill, on behalf of Defendant, disclaimed coverage for the March 2, 2020 fire loss and rescinded Plaintiffs' policy. (Disclaimer of

---

[5] Plaintiffs object to the report and its contents as inadmissible hearsay. (Pls.' 56.1 Resp. ¶¶ 9–11.)

Coverage/Notice of Rescission ("Rescission Letter"), annexed to Lambert Aff. as Ex. 8, Docket

Entry No. 36-16.)  The Rescission Letter stated that Plaintiffs had represented on their insurance

application and both renewal applications that the Property "contained only two apartment

units."  (*Id.* at 3.)  However, the investigator had determined that there was also "a full basement

apartment that has a bedroom, living room, kitchen, bathroom, and separate entrance."  (*Id.*)

Thus, Plaintiffs' statement that the Property only had two apartment units was "false and

constitute[d] a material misrepresentation, which [was] a violation of [Plaintiffs'] policy terms."

(*Id.* at 3–4.)  The letter further stated that Defendant "would not have issued this same policy to

[Plaintiffs] had it known that the [Property] had three apartment units and not two."  (*Id.* at 4.)

Defendant therefore "rescind[ed] the current policy of insurance and [Plaintiffs'] two prior

policies *ab initio*."  (*Id.*)

### c.  Supreme court action and removal to the Eastern District of New York

On June 5, 2020, Plaintiffs filed suit in the Supreme Court of the State of New York,

Queens County, alleging that Defendant had "wrongfully denied coverage, refused to make

payment and rescinded the commercial policy in bad faith."  (Compl. ¶ 14.)  Plaintiffs brought

two causes of action, breach of contract and violation of section 349 of the GBL, and sought

damages "believed to be in excess of five hundred thousand dollars . . . along with consequential

damages" for each cause of action.  (*Id.* at ¶¶ 61–81.)  On July 16, 2020, Defendant removed the

action to the Eastern District of New York under diversity jurisdiction.  (Notice of Removal,

Docket Entry No. 1.)

### d.  James Lambert's deposition and subsequent affidavit

Plaintiffs deposed James Lambert, President of Roundhill Express, LLC, (Lambert Aff. ¶

1), on May 4, 2021, (Dep. of James Lambert ("Lambert Dep."), annexed to Pls.' Mot. as Ex. D,

Docket Entry No. 34-7).  He testified that Defendant and Roundhill do not have "guidelines . . . which relate to the definition of an apartment unit as the term is utilized in an application for insurance" and that Roundhill does "not draw a distinction between legal or illegal units."  (*Id.* at 33:15–34:11.)  Mr. Lambert was asked what "constitutes the definition of an apartment."  (*Id.* at 34:12–13.)  He replied: "Do you want my definition; do you want the most recent court decision definition?  I mean my definition doesn't really matter here."  (*Id.* at 34:15–17.)  He testified that Roundhill "do[es not] have a definition" of "apartment" but rather "ask[s] how many apartments are there."  (*Id.* at 34:21–22.)  Mr. Lambert stated that he personally "consider[s] places in which people reside to be apartments," but added that his "personal definition is not material here, it's how courts define apartments."  (*Id.* at 34:25–35:4.)  He then clarified that "[i]f it's capable of someone residing there, it's an apartment."  (*Id.* at 35:8–11.)  Mr. Lambert testified that Roundhill does not "interpret the question" about apartment units, "we simply ask the question," (*id.* at 36:13–14), and added that he believed that the number of apartment units in the building is "a fairly clear question," (*id.* at 37:4–6).

       In a subsequent affidavit dated October 22, 2021, Mr. Lambert claimed that "[h]ad Roundhill been accurately advised on the [P]laintiffs' applications that the [Property] . . . actually contained three apartment units, rather than two apartment units, Roundhill would not have issued" the policies that it did to Plaintiffs.  (Lambert Aff. ¶ 69.)  Instead, "[h]igher

premiums would have been charged to insure a three-apartment building than the premiums that were assessed." (*Id.* at ¶ 70.)

On December 3, 2021, Plaintiff moved for summary judgment on its breach of contract claim. (Pls.' Mot.) On December 8, 2021, Defendant moved for summary judgment on the entire action. (Def.'s Mot.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021); *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020). The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences

in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Plaintiffs' motion for summary judgment on their breach of contract claim

#### i.   Defendant's underwriting guidelines

Plaintiffs argue that to establish its right to rescind, an insurer must present (1) "[a]n affidavit or testimony from the insurer's underwriter who testifies that the insurer would not have issued the particular contract if the facts had been disclosed" and (2) "the insurer's underwriting manual, guidelines, or rules." (Pls.' Mem. 3–4.)  Plaintiffs argue that Defendant has not fulfilled the second requirement because it has not presented any "underwriting manuals, guidelines, set of rules, or [] other documentation establishing what [Defendant] would consider an apartment." (*Id.* at 4.)  Rather, Defendant's underwriting agent, James Lambert, "conceded that [Defendant] did not have a definition for 'apartment' or 'apartment unit' for purposes of applying for insurance." (*Id.*)

Defendant argues that "the Program Manager's Agreement entered into between [Defendant] and [Roundhill] . . . provides the underwriting guidelines utilized by Roundhill when issuing commercial package insurance policies through [Defendant]." (Def.'s Opp'n 11.) These guidelines "clearly provide that '[t]he apartment and dwelling liability classes listed above base their premium on the number of living units; with a higher premium being charged for each additional unit.'" (*Id.*)  Defendant argues that this is consistent with Mr. Lambert's testimony that "[i]f it's capable of someone residing there, it's an apartment," regardless of the legality of the space in question. (*Id.* at 10–11.)

"Under New York law, an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations." *U.S. Liab. Ins. Co. v. WW Trading Co.*, 813 F. App'x

636, 638–39 (2d Cir. 2020) (quoting *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*,

540 F.3d 133, 139 (2d Cir. 2008)); *Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, No. 20-

CV-2687, 2021 WL 5986871, at *2 (2d Cir. Dec. 17, 2021) ("Under New York law, 'an

insurance policy issued in reliance on material misrepresentations is void from its inception.'"

(quoting *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77 F.3d 48, 52 (2d Cir.

1996))).  New York law defines a misrepresentation as a false "statement as to past or present

fact, made to the insurer by . . . the applicant for insurance or the prospective insured, at or

before the making of the insurance contract as an inducement to the making thereof."  N.Y. Ins.

Law § 3105(a); *Fid. & Guar. Ins. Underwriters, Inc.*, 540 F.3d at 139; *Jackson v. Travelers Ins.

Co.*, 113 F.3d 367, 370 (2d Cir. 1997).  "The concept of misrepresentation encompasses both

false affirmative statements and the failure to disclose where a duty to disclose exists."

*Scottsdale Ins. Co. v. Priscilla Props., LLC*, 254 F. Supp. 3d 476, 481 (E.D.N.Y. 2017) (quoting

*Chi. Ins. Co. v. Kreitzer & Vogelman*, No. 97-CV-8619, 2000 WL 16949, at *5 (S.D.N.Y. 2000))

"An applicant for insurance is under no duty to volunteer information where no question plainly

and directly requires it to be furnished," *Vella v. Equitable Life Assurance Soc'y*, 887 F.2d 388,

393 (2d Cir. 1989), and "[a]n answer to an ambiguous question on an application for insurance

cannot be the basis of a claim of misrepresentation . . . where . . . a reasonable person in the

insured's position could rationally have interpreted the question as he did," *Fanger v. Manhattan

Life Ins. Co.*, 709 N.Y.S.2d 622, 624 (App. Div. 2000) (citations omitted); *see also Berger v.

Manhattan Life Ins. Co.*, 805 F. Supp. 1097, 1104 (S.D.N.Y. 1992).  However, "where the

nondisclosure, as to a matter which the insured has not been directly asked, constitutes fraud, the

policy may be voided," *Aetna Cas. & Sur. Co. v. Retail Loc. 906 of AFL-CIO Welfare Fund*, 921

F. Supp. 122, 132 (E.D.N.Y. 1996) (citing *Sebring v. Fidelity-Phenix Fire Ins. Co.*, 255 N.Y.

382, 386 (1931)); *see also First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 117 (2d Cir. 1999) ("[N]ondisclosure of a fact concerning which the applicant has not been asked does not ordinarily void an insurance policy absent an intent to defraud." (quoting *H.B. Singer, Inc. v. Mission Nat l Ins. Co.*, 636 N.Y.S.2d 316, 316 (App. Div. 1996))).

"An insurer may 'avoid any contract of insurance or defeat recovery thereunder' only if a misrepresentation is 'material.'" *Principal Life Ins. Co. v. Locker Grp.*, 869 F. Supp. 2d 359, 363 (E.D.N.Y. 2012) (quoting N.Y. Ins. L. § 3105(b)(1)). "A misrepresentation is 'material' if 'knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.'" *Id.* (quoting N.Y. Ins. L. § 3105(b)(1)); *Vella*, 887 F.2d at 391 ("[W]here there has been a misrepresentation by an insured, the insurance company can avoid liability on the policy by showing that had it known the truth it would not have issued the exact same policy it did issue." (collecting cases)); *Varshavskaya v. Metro. Life Ins. Co.*, 890 N.Y.S.2d 643 (App. Div. 2009). "A single material misrepresentation may suffice," *Scottsdale Ins. Co. v. Bo Steel Grp.*, No. 14-CV-7318, 2018 WL 7223724, at *3 (E.D.N.Y. July 2, 2018), and "[e]ven an innocent misrepresentation, if material, will support rescission," *Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*, No. 16-CV-437, 2018 WL 5622595, at *19 (E.D.N.Y. Mar. 30, 2018) (quoting *Cont'l Cas. Co. v. Marshall Granger & Co.*, 6 F. Supp. 3d 380, 389 (S.D.N.Y. 2014)); *see also Vella*, 887 F.2d at 391 ("So long as a misrepresentation is material, it is no defense to an action for rescission that the misrepresentation was innocently made." (citing *Process Plants Corp. v. Ben. Nat'l Life Ins. Co.*, 385 N.Y.S.2d 308, 310 (App. Div. 1976))).

The materiality determination normally presents an issue of fact for the jury, but "where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." *Mut. Ben. Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30,

32 (2d Cir. 1988) (quoting *Process Plants Corp.*, 385 N.Y.S.2d at 310–11); *Gemini Ins. Co. v. Integrity Contr., Inc.*, No. 17-CV-1151, 2019 WL 1099705, at *3 (S.D.N.Y. Mar. 8, 2019) (same).  "To establish materiality as a matter of law, 'the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show it would not have issued the same policy if the correct information had been disclosed in the application.'"  *Gemini Ins. Co.*, 2019 WL 1099705, at *3 (quoting *Interboro Ins. Co. v. Fatmir*, N.Y.S.2d 343, 345 (App. Div. 2011)).  In addition, "the insurer need not produce evidence of its underwriting policies in order to demonstrate materiality" in "cases where '[c]ommon sense dictates that it is simply impossible to believe that, had the full facts . . . been disclosed,' [the] insurer would have nonetheless issued the same policy, on the same terms."  *Travelers Cas. & Sur. Co. of Am.*, 2018 WL 1508573, at *9 (first alteration in original) (quoting *Cont l Cas. Co. v. Marshall Granger & Co.*, 6 F. Supp. 3d 380, 390 (S.D.N.Y. 2014), *aff'd sub nom. Cont l Cas. Co. v. Boughton*, 695 F. App'x 596 (2d Cir. 2017)); *see also Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir. 1992) ("Where the insurer specifically inquires as to a fact, the insured is thereby on notice that the insurer considers it material . . . .").

The affidavit and underwriting guidelines produced by Defendant do not establish its right to rescind because, as discussed below, the meaning of "apartment unit" in Defendant's insurance application is ambiguous.  Since "[a]n answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the position of the insured could have rationally interpreted the question as the insured did," the Court does not consider whether — in the absence of this ambiguity — Lambert's affidavit and Defendant's underwriting

guidelines would be sufficient to establish Defendant's right to rescission.  *GuideOne Specialty Mut. Ins. Co. v. Congregation Bais Yisroel*, 381 F. Supp. 267, 274 (S.D.N.Y. 2005).[6]

### ii.   Ambiguity of the term "apartment"

Plaintiffs argue that "the term 'apartment' or 'apartment unit,' as used in the application for insurance, is ambiguous." (Pls.' Mem. 5.)  They cite to Lambert's testimony that an apartment is a "place[] in which people reside," arguing that "there is no dispute that no one resided in the basement of the Property" and claiming that no one *could* live in the basement because it is "not legally habitable as an apartment or dwelling unit." (*Id.* at 6–8.)  Plaintiffs also cite to Defendants' underwriting guidelines, which state that "the premium is based upon the number of 'living units,'" noting that no one lives or lawfully could live in the basement.  (Pls.' Reply 9–10.)  Because case law holds that "when there is no defined term, that ambiguity must be interpreted in favor of the insured," and because a term in an insurance policy is ambiguous if it is "susceptible to more than one reasonable interpretation," Plaintiffs argue that summary judgment is proper on their breach of contract claim.  (Pls.' Mem. 7–9.)

Defendant argues that "[t]he term 'apartment unit' as used in the policy unambiguously refers to any portion of a property where a person can reside." (Def.'s Opp'n 11.)  It claims that because the insurance application "seeks information related to the physical property to be insured" rather than the legal status of the property, Plaintiffs' argument about the legal habitability of the basement is irrelevant.  (*Id.*)  Defendant cites to Merriam-Webster's definition of an apartment as "a room or set of rooms fitted especially with housekeeping facilities and

---

[6] That is, because a reasonable answer to an ambiguous question cannot constitute a material misrepresentation, it is irrelevant whether Defendant's underwriting guidelines and Lambert's affidavit otherwise establish that Defendant would not have issued the policy that it did to Plaintiffs if it knew about the basement of the Property.

usually leased as a dwelling." (*Id.* at 12). It also points to the photos taken as part of the BCI investigation, showing "a kitchen area with a stove, a bathroom and partitioned living spaces," as well as the repair estimate showing "numerous basement repairs needed" after the fire. (*Id.*) Defendant further argues that the term "apartment" would not be ambiguous to "a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (*Id.* at 13.)

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 220 (2d Cir. 2021) (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)); *Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir. 1999) (same). If the terms are unambiguous, courts should enforce the contract as written. *See Parks Real Estate*, 472 F.3d at 42; *Goldberger*, 165 F.3d at 182 (quoting *Village of Sylvan Beach v. Travelers Indemnity Co.*, 55 F.3d 114, 115 (2d Cir.1995)). However, if the contract is ambiguous, "particularly the language of an exclusion provision," the ambiguity is interpreted in favor of the insured. *See Goldberger*, 165 F.3d at 182 (quoting *Travelers Indemnity Co.*, 55 F.3d at 115); *see also Olin Corp. v. Certain Underwriters at Lloyd s London*, 347 F. App'x 622, 627 (2d Cir. 2009) (same); *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 788 N.Y.S.2d 142, 144 (App. Div. 2004) (citations omitted) ("[I]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer."); *see also Dean v. Tower Ins. Co.*, 19 N.Y.3d 704, 708 (N.Y. 2012) ("[A]mbiguities in an insurance policy are to be construed against the insurer." (alteration in original)). An ambiguity exists where "the terms of an insurance contract could suggest 'more

than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir.2000); *see Glob. Resinsurance Corp. of Am. v. Century Indemnity Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (same).

The insurance application's question about the number of apartment units is ambiguous. "An answer to an ambiguous question cannot be the basis of a claim of misrepresentation where a reasonable person in the position of the insured could have rationally interpreted the question as the insured did." *GuideOne*, 381 F. Supp. 2d at 274 (citing *Fanger*, 709 N.Y.S.2d at 624); *see also Vella*, 887 F.2d at 391–92 (holding that if "any ambiguity exists" in questions on insurance applications, "the construction will obtain most favorable to the insured"); *Sec. Mut. Ins. Co. v. Perkins*, 927 N.Y.S. 2d 189, 190 (App. Div. 2011) ("[A] response to a particular application question will only be held to be a material misrepresentation if the question is 'so plain and intelligible that any applicant can readily comprehend [it],' and any ambiguity will be construed against the insurer."); *Fanger v.*, 709 N.Y.S.2d at 624; *Garcia v. Am. Gen. Life Ins. Co.*, 695 N.Y.S.2d 420, 421 (App. Div. 1999) (holding that the lower court had "properly granted summary judgment to the plaintiff upon its determination that the question was ambiguous and the [insured's] answer was truthful under a reasonable construction thereof"). The insurance application completed by Plaintiffs and subsequently incorporated in Plaintiffs' insurance policies asks only "How many apartment units are there?" (*See* First Policy 5; Second Policy 3; Third Policy 3.) The Court finds that "a reasonable person in the position of [Plaintiffs] could have rationally interpreted the question as [Plaintiffs] did," i.e., as referring only to units that are either occupied or could legally be occupied as apartments. *GuideOne*, 381 F. Supp. 2d at 274;

*see also Admiral Ins. Co. v. Brookwood Mgmt. #10, LLC*, No. 16-CV-437, 2018 WL 5622595, at
\*21 (E.D.N.Y. Mar. 30, 2018) (finding ambiguous questions on an insurance application about
prior losses, suits or claims since a reasonably intelligent person in the position of the insured
"could rationally have interpreted those inquiries to pertain only to losses sustained, and claims
or suits against it, related to" a specific project); *Brondon v. Prudential Ins. Co. of Am.*, No. 09-
CV-6166, 2010 WL 4486333, at \*7 (W.D.N.Y. Nov. 9, 2010) (finding ambiguous a question
about whether insurance applicant suffered from heart trouble "because the term 'heart trouble'
is nowhere defined in the application, insurance plan, or summary or plan provisions").

Defendant's arguments to the contrary are unavailing. Defendant argues that "[t]he term
'apartment unit' as used in the policy unambiguously refers to any portion of a property where a
person can reside." (Def.'s Opp'n 11.) It insists, however, that "can reside" bears no relation to
whether a person could *legally* reside in the space and that therefore "Plaintiffs' arguments that
the basement apartment . . . is not 'legally habitable as an apartment or a dwelling unit in the City
of New York' has no bearing on the meaning of the term 'apartment.'" (*Id.*) Defendant instead
seeks to define "apartment" in terms of "the physical layout of the [Property]" and the amenities
it contains, (Def.'s 56.1 Resp. ¶ 28), pointing to the fact that the basement includes "a kitchen
area with a stove, a bathroom, and partitioned living spaces,"[7] (Def.'s Opp'n 12), as well as "its
own independent means of ingress and egress," (*id.* at 7). The Court finds, however, that "a
reasonable person in the position of [Plaintiffs]" could conclude that a basement where no one
resides, no one apparently has ever resided, (*see* Second Beltrani Report 4), and no one legally
*could* reside, (*see* Def.'s 56.1 Resp. ¶ 28), is not an apartment unit solely because of its physical

---

[7] Plaintiffs dispute Defendant's claim that the basement contains a living room and
kitchen area. (Pls.' 56.1 Resp. ¶ 11.) Even assuming that the basement contains both, however,
the Court finds that the term "apartment unit" in the insurance application is ambiguous.

amenities.  *GuideOne*, 381 F. Supp. 2d at 274.  Indeed, this would seem to undermine Defendant's own definitions of "apartment unit" as "any portion of a property where a person *can reside*" and "a living space within a building that *can be occupied by* one or more persons." (Def.'s Opp'n 11, 14 (emphasis added).)

Defendant further argues that "apartment unit" should be read in terms of the physical characteristics of the property rather than its legal status because the application "does not ask about the legal status of the property to be insured" but rather "seeks information related to the physical features of the property."  (Def.'s Opp'n 11.)  The application, however, plainly seeks information of both physical and legal relevance.  (*See* First Policy 5 (asking, among other things, whether there are "ongoing landlord/tenant disputes or eviction proceedings," whether "any payments on mortgages on the building [are] overdue by [three] months or more," and whether there are "any outstanding [Housing Preservation and Development] Class C violations of fire, safety, health, environmental, building or constructions codes").)  In addition, an insurance application is an invitation to a legal relationship, such that it is natural for applicants to construe the application in terms of legal as well as physical constructs.  *See Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 773 (W.D.N.Y. 2017) (noting that although an insurance contract does not give rise to a "special relationship of trust or confidence," it does give rise to a "legal" relationship).

Finally, Defendant relies on the 2021 Merriam-Webster definition of apartment as "a room or set of rooms fitted especially with housekeeping facilities and usually leased as a dwelling."  (Def.'s Opp'n 12.)  However, contract language is only unambiguous where there is "no reasonable basis for a difference of opinion," *Care Travel Co. v. Pan Am. World Airways*, 944 F.2d 983, 988 (2d Cir. 1991) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d

1274, 1277 (2d Cir. 1989)), and the Court cannot assume that all applicants would have the Merriam-Webster definition in mind and not, for example, the Oxford English Dictionary definition of "[a] set of rooms forming one dwelling-place in a building containing a number of these," The Oxford English Dictionary (Dec. 2021), https://www.oed.com/view/Entry/9033; *see Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021) (citing to both the Oxford English Dictionary and the Merriam-Webster Dictionary to define "place").

Although on a motion for summary judgment the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Lenzi*, 944 F.3d at 107, when the language of an insurance contract is ambiguous, "particularly the language of an exclusion provision, the ambiguity must be interpreted in favor of the insured," *Goldberger*, 165 F.3d at 182. Moreover, "[a]n answer to an ambiguous question on an application for insurance *cannot* be the basis of a claim of misrepresentation by the insurer against its insured where, as here, a reasonable person in the insured's position could rationally have interpreted the question as he did." *Fanger*, 709 N.Y.S.2d at 624 (emphasis added). The Court therefore concludes that because "apartment unit" is ambiguous and a reasonable person in Plaintiffs' position could rationally have interpreted the question to exclude the furnished basement, Defendant cannot meet its burden of showing that its rescission was based on a material misrepresentation. *See First Fin. Ins. Co.*, 193 F.3d at 119 ("The burden is on the insurer to establish that it would have rejected the application if it had known the undisclosed information."). Moreover, because it is undisputed that Defendant rescinded Plaintiffs' policy on the basis of Plaintiffs' alleged material misrepresentation, (*see* Def.'s Opp'n 7–14; Rescission Letter), summary judgment in favor of Plaintiffs is proper. *See GuideOne*, 381 F. Supp. 2d at 272–75 (granting summary judgment for insured "[b]ecause [t]here [w]as [n]o

[m]isrepresentation"); *Brondon*, 2010 WL 4486333, at *6–10 (granting summary judgment for

insured where insurance application question was ambiguous and applicant's answer to that

question therefore could "not be used to rescind the policy that was issued to her").[8]

### c. Defendant's motion for summary judgment as to Plaintiffs' breach of contract and GBL § 349 claims

#### i. Breach of contract

Defendant moves for summary judgment on Plaintiffs' breach of contract claim because

"an insurer may rescind an insurance policy if it was issued in reliance on material

misrepresentations" and "[h]ad [Defendant] known that the [Property] contained three apartment

units and not two, it would not have issued the *same exact* policy to Plaintiffs."  (Def.'s Mem. 7–

14.)

For the reasons discussed above, the Court finds that Defendant cannot meet its burden of

showing that it rescinded the contract based on a material misrepresentation and therefore denies

Defendant's motion for summary judgment on Plaintiffs' breach of contract claim.

The Court briefly notes that its holding is distinguishable from the recent cases Defendant

cites in support of its motion for summary judgment.  (Def.'s Mem. 9–10 (citing

*Konstantakopoulos v. Union Mut. Fire Ins. Co.*, 144 N.Y.S.3d 346 (App. Div. 2021), *866 E.*

*164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-CV-3678, 2017 WL 4444334 (S.D.N.Y. Oct.

3, 2017)).)  In *Konstantakopoulos*, the New York Appellate Division, First Department, affirmed

a grant of summary judgment in favor of the defendant.  144 N.Y.S.3d at 347.  It held that the

defendant had "demonstrated that [the] plaintiff's insurance application contained a material

misrepresentation" where "[t]he underwriter's affidavit and excerpts from the underwriting

---

[8] Because the Court grants summary judgment to Plaintiffs based on the ambiguity of the insurance application question, it does not reach Plaintiffs' argument that Defendant "had actual knowledge of the basement before the Policy was issued in July of 2017."  (Pls.' Mem. 9–11.)

guidelines show that [the] defendant would not have issued the policy if it had known the true nature of the risk, i.e., a four-unit dwelling as opposed to a three-unit dwelling and an ongoing eviction proceeding." *Id.*  There is no indication from the court's decision in *Konstantakopoulos* that whether the fourth unit was an "apartment unit" was ever at issue.  Rather, the plaintiff appears to have challenged only the phrase "eviction proceedings" as ambiguous.  *Id.* *Konstantakopoulos* indicates that if the insurance application question were not ambiguous, the insured's misrepresentation would be material, but it sheds no light on the determinative question of whether the application was ambiguous.

*866 E. 164th Street, LLC* is similarly distinguishable.  In that case, the plaintiff's insurance broker stated on the plaintiff's insurance application that the property to be insured was not vacant and was not undergoing any major renovations.  2017 WL 4444334, at *1.  After the plaintiff submitted a claim for coverage, the defendant investigated the claim and determined that the insured property had been vacant and undergoing major renovations at the time the plaintiff submitted its application.  *Id.* at *2.  The court found that the plaintiff had "failed to raise a genuine dispute of material fact as to the definition of 'vacancy,' whether the [insured property] was vacant on the date of the application, and whether [the insurance broker's] answer to the vacancy question was a misrepresentation."  *Id.* at *5.  Because the misrepresentation was material, the court granted the defendant's motion for summary judgment with respect to the breach of contract claim and denied the plaintiff's cross-motion for summary judgment.  *Id.* at *5–6.  The *866 E. 164th Street* plaintiff's material misrepresentation bears limited relevance to

whether Plaintiffs in *this* case can be shown to have made a material misrepresentation in their application for insurance.

Because the term "apartment unit" in the insurance application was ambiguous, Defendant cannot show that it rescinded the contract based on a material misrepresentation and the Court therefore denies Defendant's motion for summary judgment on Plaintiff's breach of contract claim.[9]

### ii.   GBL § 349 claim

Defendant claims that Plaintiffs' cause of action under section 349 must be dismissed because "the complaint alleges only a private contractual dispute between Plaintiffs and [Defendant]" and "does not allege that [Defendant] engaged in consumer oriented deceptive or misleading practices." (Def.'s Mem. 14.) It argues that in order to succeed on a section 349 claim, "Plaintiffs must plead facts that suggest [Defendant's] acts and practices have a broad impact on consumers at large," which Plaintiffs have not done here. (*Id.* at 14–15.)

Plaintiffs do not respond to Defendant's argument. (*See* Pls.' Opp'n; Def.'s Reply 6.)

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. L. § 349. To assert a claim under section 349, "a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *Chufen Chen v. Dunkin*

---

[9] Because the Court finds that the insurance application contained an ambiguous question, it does not reach the other issues raised by the parties' briefing on Defendant's motion, such as whether Defendant had prior knowledge of the basement, (Def.'s Mem. 10–12), whether the Lambert affidavit is a "sham affidavit," (Pls.' Opp'n 11–17), and whether the Beltrani Report is inadmissible hearsay, (*id.* at 17–20).

*Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (same); *Orlander v. Staples, Inc.*, 802 F.3d 289,

300 (2d Cir. 2015) ("To successfully assert a claim under either section, 'a plaintiff must allege

that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading

and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" (citing

*Koch v. Acker, Merrall & Condit Co.*, 8 N.Y.3d 940, 944 (2012))); *Plavin v. Grp. Health Inc.*, 35

N.Y.3d 1, 10 (2020) ("We have explained that, to state a claim under sections 349 or 350, 'a

plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2)

materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly

deceptive act or practice.'" (quoting *Koch*, 18 N.Y.3d at 941)).

As to the first element, "an act or practice is consumer-oriented when it has 'a broader

impact on consumers at large.'" *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v.*

*Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021) (first quoting *Oswego Laborers' Loc. 214*

*Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); and then citing *N.Y.*

*Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995)), *reh'g denied*, 37 N.Y.3d 1020 (2021); *see*

*also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (same).  "The

'consumer-oriented' requirement may be satisfied by showing that the conduct at issue

'potentially affect[s] similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54,

64 (2d Cir. 2010) (alteration in original) (quoting *Oswego*, 85 N.Y.2d at 25); *Koch v. Greenberg*,

626 F. App'x 335, 340 (2d Cir. 2015) (same).  However, "[p]rivate contract disputes, unique to

the parties, for example, would not fall within the ambit of the statute." *Crawford*, 758 F.3d at

490 (quoting *Oswego*, 85 N.Y.2d at 25); *see Himmelstein*, 37 N.Y.3d at 177 ("[T]he consumer-

oriented element precludes a [section] 349 claim based on '[p]rivate contract disputes, unique to

the parties.'" (quoting *Oswego*, 85 N.Y.2d at 25)).  "[W]hen a plaintiff 'makes only conclusory

allegations of impact on consumers at large, a GBL § 349 claim must be dismissed.'"  *Green v. Cap. One, N.A.*, No. 20-CV-4655, 2021 WL 3810750, at *9 (S.D.N.Y. Aug. 26, 2021) (quoting *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-CV-7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015)).

The Court agrees with Defendant that summary judgment is appropriate as to Plaintiffs' claim under section 349 because "there has been no evidence or testimony presented to prove" that Defendant's conduct has a broader impact on consumers at large.  (Def.'s Mem. 16.) Although the Complaint alleges that Defendant has a "pattern and practice" of conducting "sham investigations . . . calculated to avoid payments to insureds and to deter such insureds from pursuing their proper claims further," (Compl. ¶¶ 72–74), Plaintiffs point to no evidence to this effect, nor does there appear to be any in the record.  "[W]hen a plaintiff 'makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed.'"  *Green*, 2021 WL 3810750, at *9 (quoting *Miller*, 2015 WL 585589, at *8); *see also Wilson*, 625 F.3d at 65 (finding summary judgment in favor of the insurer proper where "any suggestion that [the insurer] has a practice of [committing the alleged misconduct] is unsupported beyond [the insured's] situation in this case"); *866 E. 164th Street*, 2017 WL 4444334, at *6–7 (granting summary judgment for the defendant on section 349 claim where the plaintiff had "set forth no concrete evidence that [the defendant's] conduct was 'consumer-oriented'" and "[i]ts allegations regarding a larger effect on consumers [were] conclusory and speculative at best"); *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 75–76 (E.D.N.Y. 2010) (granting summary judgment for the defendants on section 349 claim where the "plaintiff ha[d] brought forward no evidence from which a reasonable jury could conclude that [the] defendants' actions were

consumer oriented.").  The Court therefore grants summary judgment to Defendant on Plaintiffs'

GBL §349 claim.

## III. Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment as

to their breach of contract claim; denies Defendant's motion for summary judgment as to

Plaintiffs' breach of contract claim; and grants Defendant's motion for summary judgment as to

Plaintiffs' GBL § 349 claim.

Dated:  August 15, 2022
        Brooklyn, New York

SO ORDERED:


                             __s/ MKB_____
                             MARGO K. BRODIE
                             United States District Judge